# EXHIBIT A

K&E 14572765.10

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LAUTH INVESTMENT PROPERTIES, LLC, et al.[1] | ) | Case No. 09-06065-BHL-11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**ALIXPARTNERS, LLP AS RESTRUCTURING ADVISORS FOR**
**THE DEBTORS EFFECTIVE NUNC PRO TUNC TO THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for entry of an order (this "Order") authorizing the Debtors to employ

---

[1] The Debtors in these Chapter 11 Cases are: Lauth Investment Properties, LLC (09-06065); LIP Development, LLC (09-06066); and LIP Investment, LLC (09-06067).

[2] Capitalized terms used herein as defined terms and not otherwise defined shall have those meanings ascribed to them in the Application.

K&E 14572765.10

and retain AlixPartners, LLP ("AlixPartners") as their restructuring advisors effective <u>nunc pro tunc</u> to the Petition Date, pursuant to sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules B-2014 and B-2016; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; the Court having reviewed the Application and the Yerian Declaration; the Court being satisfied based on the representations made in the Yerian Declaration that (a) AlixPartners does not hold or represent an interest adverse to the Debtors' estates and (b) AlixPartners is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; it appearing to the Court that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and good, adequate and sufficient cause has been shown to justify the immediate entry of this order; and after due deliberation and sufficient cause appearing therefor, it is ORDERED that:

    1.    The Application is granted as provided herein.

    2.    The Debtors are authorized to employ and retain AlixPartners as restructuring advisors in accordance with the terms and conditions set forth in that certain engagement letter annexed hereto as **<u>Exhibit 1</u>** (the "<u>Engagement Letter</u>"), effective <u>nunc pro tunc</u> to the Petition Date.

    3.    The indemnification provisions in the Engagement Letter are approved.

    4.    AlixPartners shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' Chapter 11 Cases in

compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, guidelines established by the Office of the U.S. Trustee, and any other applicable procedures and orders of the Court; provided, however, that AlixPartners shall be compensated in accordance with the terms of the Engagement Letter.

5. The interim compensation procedures are approved, allowing AlixPartners to bill the Debtors on a monthly basis and be paid 80% of requested fees and 100% of expenses prior to final Court approval in accordance with Local Rule B-2014-1.

6. If any order is entered in the future finding that a third party has the authority to control the Debtors and/or their direct or indirect subsidiaries, all fees and expenses of AlixPartners incurred prior to the entry of such order shall be payable by the Debtors and otherwise accorded treatment as provided herein as if no order had been entered and such fees and expenses will be subject only to being allowed by the Court as having been reasonably incurred.

7. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

8. Notwithstanding the possible applicability of Rules 6004(h), 7062, 9014 of the Federal Rules of Bankruptcy Procedure or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# # #

Submitted by:

**TAFT STETTINIUS & HOLLISTER LLP**

Jerald I. Ancel
Jeffrey J. Graham
One Indiana Square, Suite 3500
Indianapolis, Indiana  46204
Telephone:    (317) 713-3500
Facsimile:     (317) 713-3699

- and -

**KIRKLAND & ELLIS LLP**
Reed S. Oslan, P.C.
James A. Stempel (admitted *pro hac vice*)
Steven C. Hackney (admitted *pro hac vice*)
Ross M. Kwasteniet (admitted *pro hac vice*)
Arun K. Kurichety (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Proposed Co-Counsel for the Debtors and Debtors in Possession

**EXHIBIT 1**



Chicago  Dallas  Detroit  Düsseldorf  London  Los Angeles  Milan
Munich  New York  Paris  San Francisco  Shanghai  Tokyo  Washington, DC

April 26, 2009


Vernon Back
Executive Vice President
LIP Investments, LLC
401 Pennsylvania Parkway
Indianapolis, IN 46280

Re:     Agreement for Financial Advisory and Consulting Services

Dear Mr. Back:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP, a Delaware limited liability partnership ("AlixPartners") and LIP Investments, LLC, LIP Development, LLC and Lauth Investment Properties, LLC. (collectively, "Lauth" or the "Company") for the engagement of AlixPartners to provide financial advisory and consulting services to the Company. AlixPartners understands that the Company may file for protection under Chapter 11 of the United States Bankruptcy Code at some point in the future. This Agreement (executed May 28, 2009, and made effective as of April 26, 2009) amends and replaces an earlier engagement letter executed by the parties on April 26, 2009, by including additional matters which the parties agreed upon but inadvertently omitted from that earlier engagement agreement.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions.

**OBJECTIVES AND TASKS**

The responsibilities of AlixPartners will be as follows:

- Work with the Company and its team to further identify and implement both short-term and long-term liquidity generating initiatives.

- Assist management with the development of the Company's revised business plan, and such other related forecasts as may be required by the bank lenders in connection with negotiations or by the Company for other corporate purposes.

- Assist Company's management and its professionals specifically assigned to sourcing, negotiating and implementing any financing, including DIP and exit financing facilities, in conjunction with the Plan of Reorganization and the overall restructuring.

- Assist the Company's management in developing a restructuring strategy.



Mr. Vernon Back
April 26, 2009
Page 2 of 13

- Assist the Company to develop contingency plans and financial alternatives in the event an out-of-court restructuring cannot be achieved.

- Advise senior management in the negotiation and implementation of restructuring initiatives and evaluation of strategic alternatives.

- Assist in negotiations with stakeholders and their representatives.

- Assist in negotiations with potential acquirers of Company assets.

- Assist in preparing for and filing a Bankruptcy Petition, coordinating and providing administrative support for the proceeding and developing the Company's Plan of Reorganization or other appropriate case resolution, if necessary.

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within APS' areas of expertise.

- Assist as requested in analyzing preferences and other avoidance actions.

- Manage the claims and claims reconciliation processes.

- Assist the Company and its management in developing a short-term cash flow forecasting tool and related methodologies and to assist with planning for alternatives as requested by the Company.

- Assist in preparation required for a Chapter 11 proceeding in the event a Chapter 11 proceeding is necessary.

- Assist in obtaining and presenting information required by parties in interest in the Company's bankruptcy process including official committees appointed by the United States Bankruptcy Court (the "Court") and the Court itself.

- Assist the Company in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of a Disclosure Statement and Plan of Reorganization.

- Assist as requested in managing any litigation that may be brought against the Company in the Court.

- Assist with providing testimony before the Court on matters that are within our areas of expertise, as necessary.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.



Mr. Vernon Back
April 26, 2009
Page 3 of 13

## STAFFING

Jared D. Yerian will be the managing director responsible for the overall engagement. He will be assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

If AlixPartners finds it desirable to augment its professional staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Company; and (iii) the I/C must represent that he/she will not work for the Company or other parties in interest in this case during the time AlixPartners is involved in providing services to the Company.

## TIMING, FEES AND RETAINER

AlixPartners will commence this engagement on or about April 27, 2009 after receipt of a copy of the Agreement executed by the Company accompanied by the Retainer, as set forth on Schedule 1.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

In the event the Company seeks protection under the U.S. Bankruptcy Code, the Company will promptly apply to the Bankruptcy Court to obtain approval of AlixPartners' retention and Retainer nunc pro tunc to the date of filing. AlixPartners acknowledges that its retention and the terms thereof are subject to Court approval.

\*   \*   \*



Mr. Vernon Back
April 26, 2009
Page 4 of 12

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement and wire transfer the amount to establish the Retainer.

We look forward to working with you.

Sincerely yours,

AlixPartners, LLP

Jared D. Yerian
Managing Director

Acknowledged and Agreed to:

LIP INVESTMENTS, LLC
By: _____
Its: _____Manager_____
Dated: ____May 28, 2009_____

LIP DEVELOPMENT, LLC
By: _____
Its: _____CEO_____
Dated: ____May 28, 2009_____

LAUTH INVESTMENT PROPERTIES, LLC
By: _____
Its: _____CEO_____
Dated: ____May 28, 2009_____

LIP-Lauth clean-up 05 28 09



Mr. Vernon Back
April 26, 2009
Page 5 of 13



## SCHEDULE 1

### FEES AND EXPENSES

1.  **Fees:** AlixPartners' fees will be based on the hours worked by AlixPartners personnel at AlixPartners' hourly rates, which are:

    | | |
    |---|---|
    | Managing Directors | $ 685-995 |
    | Directors | $ 510-685 |
    | Vice Presidents | $ 395-505 |
    | Associates | $ 260-365 |
    | Analysts | $ 235-260 |
    | Paraprofessionals | $ 180-200 |

    AlixPartners reviews and revises its billing rates on January 1 of each year.

2.  **Success Fee:** AlixPartners does not seek a Success Fee in connection with this engagement.

3.  **Expenses:** In addition to the fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals, and an administrative fee of 2% of the fees to cover all other indirect administrative costs such as postage, courier, routine black and white copying, telephone, messenger and facsimile charges.

4.  **Break Fee:** AlixPartners does not seek a Break Fee in connection with this engagement.

5.  **Retainer:** The Company shall pay AlixPartners a retainer of $500,000 to be applied against Fees and Expenses as set forth in this Schedule and in accordance with Section 2 of the attached General Terms and Conditions. The retainer may be adjusted from time to time to account for the billing cycle.



## SCHEDULE 2

### DISCLOSURES

We know of no fact or situation that would represent a conflict of interest for us with regard to the Company. However, we wish to disclose the following:

- H&F Astro LLC and Hellman & Friedman Capital Associates V, LLC ("H&F Capital"), two private equity investment vehicles managed by Hellman & Friedman LLC ("H&F LLC", and collectively with H&F Astro LLC and H&F Capital, "H&F") own a controlling stake in AlixPartners, which the Debtors engaged post-petition to provide certain advisory services. No material nonpublic information about the Debtors has been furnished by AlixPartners to H&F. AlixPartners' conflict checking system has searched the names of each managing director of H&F LLC and each portfolio company of H&F LLC (the "H&F Conflict Parties") against the list of Potential Parties in Interest, and AlixPartners has determined to the best of its knowledge that there are no resulting disclosures other than as noted herein. However, H&F, its members, affiliated fund entities or affiliates (collectively, the "H&F Entities") may have had, currently have or may in the future have business relationships or connections with the Debtors or other Potential Parties in Interest in matters related to or unrelated to the Debtors or these chapter 11 cases. The engagement will be performed solely by AlixPartners. AlixPartners operates independently of the H&F Entities, and does not share common employees or officers, except that certain H&F LLC managing directors or employees are on the Board of Directors of AlixPartners. AlixPartners' financial performance is not impacted by the success or failure of the H&F Entities. Accordingly, AlixPartners has not undertaken to determine the existence, nature and/or full scope of any business relationships or connections that the H&F Entities may have with the Potential Parties in Interest, the Debtors or these chapter 11 cases, other than with respect to the H&F Conflict Parties. AlixPartners believes it continues to be disinterested and does not hold or represent an interest adverse to the estate with respect to the engagement, regardless of any direct or indirect relationship to or connection any of the H&F Entities may have with the Debtors

- There are three confidential clients of AlixPartners and/or other affiliates of AlixPartners who are lenders and creditors to the Debtors. The confidential clients are current and former AlixPartners, and/or affiliated entities of AlixPartners, clients in matters unrelated to the Debtors.

- Bank of America, a lender to the Debtors, is a current and former client of AlixPartners and/or APS as well as a executory contract counterparty, creditor and lender to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors.

Page 7 of 13

LIP-Lauth clean-up 05 28 09



- Charter One, a lender to the Debtors, is a current AlixPartners and/or APS client in matters unrelated to the Debtors. Charter One Vendor Finance LLC, an affiliate of Charter One, is a creditor to a current AlixPartners and/or APS client in matters unrelated to the Debtors.

- Chase Bank and affiliated entities, lenders to the Debtors, are affiliated with entities that are lenders, shareholders, vendors, bondholders and creditors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors. JPM an affiliated entity of Chase Bank previously employed several current AlixPartners employees.

- CMX, LLC, a creditor to the Debtors, is a vendor to a current APS client in matters unrelated to the Debtors.

- Compass Bank, a lender to the Debtors, is a related party and adverse party to current AlixPartners and/or APS clients in matters unrelated to the Debtors.

- Duke Realty Corporation, a competitor to the Debtors, is a lessor to a current AlixPartners client in matters unrelated to the Debtors. Duke Realty Corporation is a lessee to a former AlixPartners and/or APS client in matters unrelated to the Debtors. A director of a former AlixPartners client sat on the board of Duke Realty Corporation in matters unrelated to the Debtors.

- Ernst & Young, a creditor to the Debtor, is an adverse party, vendor and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors. Ernst & Young is a vendor to AlixPartners and previously employed several current AlixPartners employees. Ernst & Young is a current and former AlixPartners client in matters unrelated to the Debtors.

- FedEx, a creditor to the Debtors, is a current AlixPartners and/or APS client in matters unrelated to the Debtors. FedEx is a vendor and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors. FedEx is the former employer of a current AlixPartners employee, as well as a vendor of AlixPartners.

- First Financial Bank, a lender to the Debtors, is a lender to a current AlixPartners and/or APS client in matters unrelated to the Debtors.

- Flagstar Bank, a lender to the Debtors, was a former AlixPartners client in matters unrelated to the Debtors.

- General Electric Capital and affiliated entities, a lender to the Debtors, are members of a bank group for which AlixPartners performed services, as well as creditors, customers, lenders, vendors, litigation parties, adverse parties, lessors and bondholders of current and former AlixPartners and/or APS clients in matters unrelated to the Debtors. GE is a client-related party to a former AlixPartners client

Page 8 of 13

LIP-Lauth clean-up 05 28 09



in matters unrelated to the Debtors. An affiliate, General Electric Capital Corporation, is the previous employer of a current AlixPartners employee.

- Guaranty Bank, a lender to the Debtors, is a lender, creditor and client related party to current AlixPartners and/or APS clients in matters unrelated to the Debtors. Guaranty Bank was a lender to former AlixPartners and/or APS clients in matters unrelated to the Debtors.

- Huntington Bank, a lender to the Debtors, is a creditor, lessor and lender to former AlixPartners and/or APS clients in matters unrelated to the Debtors. Huntington Bank is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors.

- Key Bank, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors. Key Bank is a former client of AlixPartners through AlixPartners' work for a bank group and is a lender to current and former AlixPartners' clients in matters unrelated to the Debtors. Key Bank is an affiliated entity and adverse party to current AlixPartners clients in matters unrelated to the Debtors.

- M&I Bank and Marshall Ilsley Bank (collectively, "M&I"), lenders to the Debtors, are lender and bondholder to former AlixPartners and/or APS clients in matters unrelated to the Debtors.

- Opus Corporation and affiliated entities, a competitor to the Debtors is a lessor to a current AlixPartners client in matters unrelated to the Debtors.

- Regions Bank, a creditor and lender to the Debtors, is a lender and vendor to former AlixPartners and/or APS clients in matters unrelated to the Debtors. Regions Bank is a vendor, adverse party, and lender to current AlixPartners and/or APS clients in matters unrelated to the Debtors.

- Sun Trust Bank, a creditor and lender to the Debtors, is a creditor, executory contract counter party, lender and vendor to current AlixPartners and/or APS clients in matters unrelated to the Debtor. Sun Trust Bank is a lender, trustee, and bondholder to former AlixPartners and/or APS clients in matters unrelated to the Debtor.

- Travelers Property Casualty Company of America, a creditor to the Debtors, is affiliated with entities that are creditors, bondholders, executory contract counterparties and adverse parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors. An affiliate, St. Paul Travelers, is a vendor to AlixPartners.

- U.S. Bank, a lender and creditor to the Debtors, and affiliated entities, is a vendor, bondholder, indenture trustee, executory contract counterparty, client litigant, directors affiliated company and lender, to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors.

Page 9 of 13

LIP-Lauth clean-up 05 28 09



- Wachovia, a lender to the Debtors, and affiliated entities, are lenders, bondholders, creditors, adverse parties, related parties and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors. Wachovia is a current and former AlixPartners client in matters unrelated to the Debtors.

- Wells Fargo Bank, a lender and creditor to the Debtors, is a former client of AlixPartners through membership in a bank group for which AlixPartners performed services in matters unrelated to the Debtors. Other Wells Fargo Bank affiliated entities are lenders, creditors, lessors, bondholders, indenture trustees and vendors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors. Wells Fargo Bank is a related party to a current AlixPartners client. Wells Fargo is a vendor to AlixPartners in matters unrelated to the Debtors. Wells Fargo Bank is a current and former AlixPartners client in matters unrelated to the Debtors.

- Zurich American Insurance Co., a creditor to the Debtors, is affiliated with entities that are creditors, vendors, executory contract counterparties and adverse parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors. Zurich American Insurance Co. is an insurance provider to current AlixPartners and/or APS clients in matters unrelated to the Debtor.

This Schedule 2 may be updated by AlixPartners from time to time to disclose additional connections or relationships between AlixPartners and the interested parties.

LIP-Lauth clean-up 05 28 09

**AlixPartners, LLP**
**General Terms and Conditions**

These General Terms and Conditions ("Terms") are incorporated into the Agreement between the Company and AlixPartners to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

**Section 1. Company Responsibilities.**

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

**Section 2. Retainer, Billing and Payments.**

**Retainer and Billing.** AlixPartners will submit semi-monthly invoices for services rendered and expenses incurred and will offset such invoices against the Retainer. Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future. Payment will be due upon receipt of the invoices to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be returned to the Company at the termination of the engagement.

**Payments.** All payments to be made by the Company to AlixPartners shall be payable upon receipt of invoice via wire transfer to AlixPartners' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Comerica Bank |
| | ABA #072000096 |
| Receiving Account: | AlixPartners, LLP |
| | A/C #1851-765386 |
| Currency: | USD |

**Section 3. Relationship of the Parties.**

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

Nothing in this agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company or its Board of Directors.

**Section 4. Confidentiality.**

AlixPartners shall use reasonable efforts to keep confidential all non-public confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither AlixPartners nor its personnel will disclose any Information to any other person or entity. "Information" includes non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Information that AlixPartners reasonably believes is required by law or any regulatory requirement or authority, or to clear client conflicts. AlixPartners may make reasonable disclosures of Information to third parties in connection with the performance of AlixPartners' obligations and assignments hereunder. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of AlixPartners under this Section 4 shall survive the end of any engagement between the parties for a period of two (2) years.

The Company acknowledges that all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval except as required by law.

Because of the nature of the services provided by AlixPartners, from time to time, separate teams of AlixPartners professionals may concurrently represent clients that are adverse to each other, or which may be viewed by clients to be adverse. Despite any such concurrent representation, each AlixPartners team shall strictly preserve all client confidences, and not disseminate such information externally, except pursuant to the terms of this engagement letter, or to any AlixPartners professionals that are currently working for an entity adverse to the Company. The Company agrees that it does not consider such concurrent representation of the Company and any

LIP-Lauth clean-up 05 28 09

**ALIXPARTNERS, LLP**
**GENERAL TERMS AND CONDITIONS**

adversary by separate AlixPartners teams to be inappropriate and, therefore, waives any objections to any such present or future concurrent representation.

**Section 5. Intellectual Property.**

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that AlixPartners has created, acquired or developed prior to the date of this Agreement are, and shall remain, the sole and exclusive property of AlixPartners, and the Company shall not acquire any interest therein. AlixPartners shall be free to use all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that AlixPartners may create or develop in connection with this engagement, subject to its duty of confidentiality to the extent that the same contain information or materials furnished to AlixPartners by the Company that constitute Information referred to in Section 4 above. Except as provided above, all information, reports, materials, software and other work product that AlixPartners creates or develops specifically for the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information referred to in Section 4 above. AlixPartners may retain copies of the Work Product subject to its obligations under Section 4 above.

**Section 6. Framework of the Engagement.**

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

**Section 7. Indemnification and Other Matters.**

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "indemnitees") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. In addition, the Company shall pay the costs of AlixPartners' professional time (AlixPartners' professional time will be reimbursed at AlixPartners' rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which an indemnitee may be required or agree to participate but in which it is not a party. The indemnitees may, but are not required to, engage a single firm of separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates.

AlixPartners is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies with respect to any third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring the third-party product or service.

AlixPartners shall not be liable to the Company except for actual damages resulting from bad faith, self-dealing or intentional misconduct.

**Section 8. Governing Law and Arbitration.**

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Southfield, Michigan under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. In the event the Company files under Chapter 11, the Company and AlixPartners agree that the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with this Agreement, including the indemnification provisions outlined in Section 7, above.

Notwithstanding the foregoing, for any claim relating to the non-payment of fees or expenses due to AlixPartners under this Agreement AlixPartners may in its sole discretion proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

**Section 9. Termination and Survival.**

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any fees and expenses due under the provisions of the Agreement, including Success Fee and Break Fee in accordance with Schedule 1. Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Company for Cause (as defined below) or due to circumstances described in the Success Fee provision in the Agreement, AlixPartners shall remain entitled to the Success Fee(s) that otherwise would be payable for the greater of 12 months from the date of termination or the period of time that that has elapsed from the date of the Agreement to the date of termination. Cause shall mean:

(a) an AlixPartners employee acting on behalf of the Company is convicted of a felony, or

(b) it is determined in good faith by the Board of Directors of the Company after 30 days notice and

**ALIXPARTNERS, LLP**
**GENERAL TERMS AND CONDITIONS**

opportunity to cure, that either (i) an AlixPartners employee is engaging in misconduct injurious to the Company, or (ii) an AlixPartners employee is breaching any of his or her material obligations under this Agreement, or (iii) an AlixPartners employee is willfully disobeying a lawful direction of the Board of Directors or senior management of the Company.

Sections 2, 4, 5, 7, 8, 9, 10 and 11 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

**Section 10. Non-Solicitation of Employees**

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD). The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/ consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that AlixPartners shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation provision. If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Section 11. General.**

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** These Terms, the letter agreement into which they are incorporated and the Schedule(s) to such letter agreement contain the entire understanding of the parties relating to the services to be rendered by AlixPartners and may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several.

**Limit of Liability.** AlixPartners shall not be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. AlixPartners' aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of fees paid to AlixPartners for services on this engagement (the "Liability Cap"). The Liability Cap is the total limit of AlixPartners' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by AlixPartners among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against AlixPartners pursuant to this Agreement exceed the Liability Cap.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.

LIP-Lauth clean-up 05 28 09