UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LAUTH INVESTMENT PROPERTIES, LLC, <u>et al.</u>,[1] | ) Case No. 09-06065-BHL-11 |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

**AMENDED MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING
PAYMENT OF WORK FEE TO POTENTIAL DIP LENDER**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

hereby file this motion (the "<u>Motion</u>"), for the entry of an order, substantially in the form of

**Exhibit A**, authorizing the Debtors to pay a work fee to a potential confidential third party lender

("<u>Potential Lender</u>") of debtor-in-possession financing ("<u>DIP Financing</u>").  In support of this

Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105 and 363(b) of

the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>").

## Background

4.      On May 1, 2009 (the "<u>Petition Date</u>"), each of the Debtors filed a petition with the

Court for relief under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>").  The Debtors

---

[1]      The Debtors include:  Lauth Investment Properties, LLC (09-06065); LIP Development, LLC (09-06066); and LIP Investment, LLC (09-06067).

are operating their business and managing their property as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  Other than the alternative request made as

part of the *Motion to Dismiss the Debtors' Chapter 11 Cases and, as an Alternative and Interim*

*Relief, to Appoint a Chapter 11 Trustee* (the "Dismissal Motion"), no request for the appointment

of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been

appointed or designated.  On May 15, 2009, the Court entered an order jointly administering the

Debtors' Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

5.       The Debtors are each affiliates of Lauth Group, Inc. ("Lauth"), a real estate

business conglomerate which has developed over $3 billion worth of real estate projects and

which has over 100 separate subsidiaries and affiliates.

6.       On August 17, 2009, the Court approved interim relief (the "Interim DIP Order")

related to the *Motion of the Debtors for Entry of (a) an Order Approving Marketing Process and*

*Break Up Fee; and (B) Interim and Final Orders (a) Authorizing the Debtors to Obtain*

*Postpetition Financing and (b) Granting Liens and Superpriority Claims* [Docket No. 319] (the

"DIP Motion").[2]

7.       In addition, on August 17, 2009, this Court entered the *Order Authorizing*

*Debtors to File Under Seal Confidential DIP Term Sheet* [Docket No. 382] (the "Seal Motion"),

which order authorized the Debtors to file under seal a confidential third party DIP Financing

term sheet.

### Preliminary Statement

8.       As set forth more fully in the DIP Motion, the Debtors' reply in support of the

DIP Motion [Docket No. 381] and the Seal Motion, over the past several months, the Debtors

---

[2]    As of the time of the filing of the Motion, the Interim DIP Order reflecting the Court's ruling on the DIP Motion
       has not been entered.  The Debtors anticipate that such order will be entered in the near future.

and their advisors have actively solicited proposals for DIP Financing to ensure liquidity to continue the operations of the Debtors' subsidiaries, prevent anticipated cash flow shortages and bridge to an ultimate reorganization or alternative transaction.

9.      Recognizing the Debtors' urgent need for postpetition financing, but hopeful that the Debtors would be able to attract third party financing proposals, several principals of the Debtors, through an entity called LIP Lenders, LLC, (the "DIP Lender") offered to provide a "stalking horse" DIP Financing proposal in an amount up to $15 million on a secured and superpriority basis (the "Stalking Horse DIP Facility").  The Debtors believed that by entering into the Stalking Horse DIP Facility, they could market test the terms of the proposed financing in an effort to obtain the most favorable DIP Financing possible.

10.      The Debtors submit that the Stalking Horse DIP Facility has had the intended effect.  Indeed, upon resolution of the Dismissal Motion, other third party lenders began to express increased interest in providing the Debtors with DIP Financing.  As a result, given the Debtors' intention to obtain DIP Financing on the most favorable terms possible, the Debtors negotiated with the DIP Lender to pare back certain protections.  In this way, the Debtors believed that they could obtain much needed liquidity in the short term, and continue their efforts to pursue more favorable DIP Financing.

11.      Pursuant to the Interim DIP Order, the Debtors obtained authorization for Debtor LIP Investment, LLC to obtain postpetition financing on a secured and superpriority basis in the interim amount of $4 million.  Notably, such financing was provided in a lower amount than initially offered, without a break up fee and with a modest expense reimbursement.  Moreover, certain aspects of the DIP Lender's commitment were to become effective only upon entry of a

final order approving the DIP Motion (*i.e.*, the grant of equity warrants and the ability to cross-collateralize various loans of the Debtors' project-level subsidiaries).

12.     With this additional flexibility, the Debtors believe they can operate in the near term and continue their marketing efforts with respect to DIP Financing.  Indeed, as a result of such efforts, the Debtors have obtained a third party DIP Financing proposal from the Potential Lender, which proposal was filed under seal pursuant to the Seal Motion (the "Confidential Term Sheet").

13.     The Debtors believe that the Confidential Term Sheet may constitute a viable DIP Financing option from which they can negotiate more favorable terms than the Stalking Horse DIP Facility; however, the Potential Lender has requested reimbursement for certain reasonable, documented out-of-pocket expenses in connection with conducting additional diligence related to the Confidential Term Sheet in an amount up to $150,000 (the "Work Fee").[3]

**Relief Requested**

14.     By this Motion, the Debtors seek the authority to pay the Work Fee to the Potential Lender to complete the due diligence necessary to negotiate and finalize the terms of the Confidential Term Sheet.  Under the circumstances, the Debtors believe that the relief requested in this Motion is an appropriate exercise of their business judgment and is in the best interests of their estates and creditors.

**Basis for the Relief**

15.     The Debtors seek the relief requested in this Motion pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363 of the Bankruptcy Code provides, in relevant

---

[3]     The Debtors propose to pay $75,000 to the Potential Lender upon entry of an order approving the Motion.  If the Potential Lender's out-of-pocket expenses exceed $75,000, the Debtors shall be authorized to pay the Potential Lender an additional $75,000.  Upon conclusion of the Potential Lender's diligence efforts, any funds remaining after application of the Potential Lender's expenses shall be returned to the Debtors.

4

part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code further empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of the [Bankruptcy Code]."   11 U.S.C. § 105(a). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when the use or disposition of property of the estate should be authorized, courts in this and other circuits, have consistently held that the use and disposition of estate property is appropriate pursuant to section 363(b) of the Bankruptcy Code if the transaction represents the sound or reasonable business judgment of the debtor.  See, e.g., Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991); Comm. of Equity Sec. Holders v. Lionel Corp., (In re Lionel), 722 F.2d 1063, 1070 (2d Cir. 1983); In re Telesphere Commc'ns, Inc., 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994).

16.     If a valid business justification exists for the use of property of the estate, a debtor's decision enjoys a strong presumption that "in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (citations omitted); see generally In re Fleming Packaging Corp., 351 B.R. 626 (Bankr. C.D. Ill. 2006); In re H. King and Assocs., 295 B.R. 246 (Bankr. N.D. Ill. 2003).

17.     Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions.  See Pitt v. First Wellington Canyon Assoc. (In re First Wellington Canyon Assoc.), No. 89-C-593, 1989 WL 106838, *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained

5

discretion"); see also In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions"). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

18.     The Debtors submit that there are substantial business justifications for authorizing the relief requested herein, including those set forth below. First, the Debtors' ability to successfully reorganize hinges on their ability to obtain DIP financing. Without the additional liquidity provided by DIP Financing, the Debtors believe they will be unable, among other things, to negotiate agreements with the lenders to their various project-level subsidiaries, which agreements will be necessary for any comprehensive restructuring. Second, the Debtors believe as a matter of business judgment that payment of the Work Fee to the Potential Lender is necessary to ascertain whether the Confidential Term Sheet represents a more favorable option than the Stalking Horse DIP Facility. Indeed, as reflected in the numerous objections filed in response to the DIP Motion, various parties contended that the Stalking Horse DIP Facility was not on market terms and that the Debtors had not adequately sought other potential third party proposals. The Debtors submit that payment of the Work Fee will further help determine whether the Stalking Horse DIP Facility is the most favorable option available in the market. Though the Debtors believe that the Confidential Term Sheet is not yet an optimal proposal, given the Potential Lender's interest at this time, the Debtors believe that further negotiations may yield a better result. Moreover, the Confidential Term Sheet may provide other attributes such as the potential to convert the DIP Financing into an exit facility upon emergence from the

Chapter 11 Cases.  As such, payment of the Work Fee constitutes a valid exercise of the Debtors'

business judgment.

19.     The Debtors also believe that payment of a diligence fee to the Potential Lender is

customary under these circumstances and that the amount of the Work Fee is consistent with

amounts normally demanded in the marketplace.   Indeed, courts have regularly approved

payment of work fees to prospective lenders.  See, e.g., In re Movie Gallery, Inc., Case No.

07-33849 (Bankr. E.D. Va. Dec. 4., 2007) (authorizing debtors to pay fees and expenses of

backstop party for proposed rights offering); In re Sea Containers Ltd., Case No. 06-11156

(Bankr. D. Del. Nov. 20, 2007) (authorizing debtors to pay diligence-related fees and expenses

of prospective exit lenders up to $1.5 million); In re Tower Auto., Inc., Case No. 05-10578

(Bankr. S.D.N.Y. Oct. 25, 2006) (authorizing debtors to pay up to $1.0 million in diligence fees

to prospective new-money equity investors); In re Tower Auto., Inc., Case No. 05-10578 (Bankr.

S.D.N.Y. Dec. 21, 2006) (authorizing debtors to pay an additional $1.0 million in diligence fees

to prospective new-money equity investors and to potential replacement DIP lenders); In re

Meridian Auto. Sys.-Composite Operations, Inc., Case No. 05-11168 (Bankr. D. Del. June 13,

2006) (authorizing debtors to pay diligence related fees and expenses of prospective exit lenders

up to $600,000); In re Pliant Corp., Case No. 06-10001 (Bankr. D. Del. May 5, 2006)

(authorizing debtors to pay up to $500,000 in work fees to provide a $700,000 deposit for

expenses to prospective exit lenders); In re ANC Rentals Corp., Case No. 01-11200 (Bankr. D.

Del. Jan 23, 2003) (authorizing debtors to pay diligence fees of prospective postpetition lenders).

Based on the foregoing, the Debtors believe that payment of the Work Fee is reasonable,

appropriate and warranted under the circumstances and is in the Debtors' best interests.

20.     In summary, the potential benefits to the Debtors, their estates and creditors that will result from payment of the Work Fee far outweigh the corresponding costs to the Debtors' estates.   Indeed, payment of the Work Fee will allow the Debtors to confirm that they are obtaining the best DIP Financing available in the market, thereby satisfying the concerns of all parties-in-interest.   As such, the Court should authorize the Debtors, in their discretion, to pay the Work Fee to the Potential Lender to allow it to complete the additional diligence related to the Confidential Term Sheet.

## Notice

21.     The Debtors have provided notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Indiana; (b) the entities listed on the Lists of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agent for the Debtors' prepetition secured lenders; (d) those parties who have requested service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

22.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the

Debtors respectfully request that the Court enter an order, substantially in the form attached

hereto as **Exhibit A**, (a) authorizing the Debtors to pay certain due diligence and work fees to the

Potential Lender and (b) granting such other and further relief as is just and proper.

Dated:  August 25, 2009
        Indianapolis, Indiana

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ Jeffrey J. Graham
Jerald I. Ancel
Jeffrey J. Graham
One Indiana Square, Suite 3500
Indianapolis, Indiana  46204
Telephone:    (317) 713-3500
Facsimile:    (317) 713-3699

- and -

**KIRKLAND & ELLIS LLP**
Reed S. Oslan, P.C. (admitted *pro hac vice*)
James A. Stempel (admitted *pro hac vice*)
Steven C. Hackney (admitted *pro hac vice*)
Ross M. Kwasteniet (admitted *pro hac vice*)
Arun K. Kurichety (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Co-Counsel for the Debtors and Debtors in Possession

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served upon the attached Service List via the United States Bankruptcy Court's electronic transmission service or via first class, postage-paid U.S. mail this 25th day of August, 2009.

/s/ Jeffrey J. Graham
Jeffrey J. Graham

**1098212-1**

1

**Lauth Investment Properties, LLC, et al.**
**Case No. 09-06065-BHL-11**
**Service List**
**Updated:  08/25/2009**

**U.S. Bankruptcy Court Electronic Service**

| | | |
|---|---|---|
| Alwin, Janice A. | Creditor, Bank of America, N.A. | janice.alwin@bfkn.com |
| Ancel, Jerald I. | Debtors | jancel@taftlaw.com |
| | | ecfclerk@taftlaw.com |
| | | cmiller@taftlaw.com |
| | | docket@taftlaw.com |
| Barrett, William J. | Creditor, Bank of America, N.A. | william.barrett@bfkn.com |
| Burke, Jason R. | Creditor, M&I Marshall & Ilsley Bank | jburke@hopperblackwell.com |
| | f/k/a First Indiana Bank, N.A. | kellis@hopperblackwell.com |
| Carr, James M. | Creditor, LIP Lenders, LLC | james.carr@bakerd.com |
| | | sarah.laughlin@bakerd.com |
| Caruso, Deborah | Creditor, First Financial Bank | dcaruso@daleeke.com |
| | | lharves@daleeke.com |
| Chilcote, Courtney E. | Creditor, LIP Holdings, LLC | cec@hostetler-kowalik.com |
| | | sdw@hostetler-kowalik.com |
| Cline, Fred L. | Creditor, Regions Bank | fcline@dannpecar.com |
| | | dlingenfelter@dannpecar.com |
| | | ccanny@dannpecar.com |
| | | ecf@dannpecar.com |
| Cody, Mark A. | Creditor, Charter One Bank | macody@jonesday.com |
| Cohen, Howard Russell | Creditor, The Huntington National Bank | hcohen@fbtlaw.com |
| | Creditor, The Huntington Real Estate | dacree@fbtlaw.com |
| | Investment Company | |
| Correa, Michaeline | Creditor, Charter One Bank | mcorrea@jonesday.com |
| Donhauser, Linda Vojik | Creditor, Bank of America, N.A. | ldonhauser@milesstockbridge.com |
| Drobny, Stephen Paul | Creditor, Sun Trust Bank | sdrobny@shutts.com |
| | | mvandenbosch@shutts.com |
| Drummond, Mark Alan | U.S. Trustee | mark.drummond@usdoj.gov |
| | | theresa.m.deever@usdoj.gov |
| Graham, Jeffrey J. | Debtors | jgraham@taftlaw.com |
| | | ecfclerk@taftlaw.com |
| | | cmiller@taftlaw.com |
| | | docket@taftlaw.com |
| Hinds, Melissa M. | Creditor, LIP Holdings, LLC | mhinds@jenner.com |
| | | cchilders@jenner.com |
| Hokanson, Jeffrey A. | Creditor, LIP Holdings, LLC | jeff.hokanson@hostetler-kowalik.com |
| | | hkecfbackup@yahoo.com |
| | | dwp@hostetler-kowalik.com |
| Hopper, George W. | Creditor, M&I Marshall & Ilsley Bank | ghopper@hopperblackwell.com |
| | f/k/a First Indiana Bank, N.A. | mroth@hopperblackwell.com |
| Hurley, Ryan M. | Creditor, LIP Lenders, LLC | ryan.hurley@bakerd.com |
| Irving, James R. | Creditor Inland American Charlotte Lender, | jim.irving@dlapiper.com |
| | L.L.C. | |
| Jacobson, Christine K. | Creditor, Charter One Bank | cjacobson@katzkorin.com |
| | | cwright@katzkorin.com |
| | | ddever@katzkorin.com |
| Kenney, Brian Francis | Creditor, Bank of America, N.A. | bkenney@milesstockbridge.com |
| King, Daniel P. | Creditor, The Huntington National Bank | dking@fbtlaw.com |
| | | sgregoire@fbtlaw.com |
| Knauer, James A. | Creditor, Wells Fargo Bank, N.A. | jak@kgrlaw.com |
| | | hns@kgrlaw.com |
| Knoblock, Erick P. | Creditor, First Financial Bank | eknoblock@daleeke.com |

| | | |
|---|---|---|
| Koppel, Steven C. | Creditor, Charter One Bank | skoppel@jonesday.com |
| Kuney, David R. | Creditor, Wells Fargo Bank, N.A. | dkuney@sidley.com |
| Levitt, Peter H. | Creditor, Sun Trust Bank | plevitt@shutts.com |
| Marshall, Kurtis A. | Creditor, Wells Fargo Bank, N.A. | kam@kgrlaw.com |
| Matthews, James Michael | Creditor, Irwin Union Bank and Trust | jmatthews@fbtlaw.com |
| | | dacree@fbtlaw.com |
| McCrory, Michael K. | Creditor, Geneva Capital Group and | mmccrory@btlaw.com |
| | Creditor, Geneva Capital Corporation | bankruptcyindy@btlaw.com |
| Mills, Alan K. | Creditor, Salen Bank and Trust Company | alan.mills@btlaw.com |
| | | bragle@btlaw.com |
| | | bankruptcyindy@btlaw.com |
| Moloy, James P. | Creditor, Regions Bank | jmoloy@dannpecar.com |
| | | dlingenfelter@dannpecar.com |
| | | ccanny@dannpecar.com |
| | | ecf@dannpecar.com |
| Neal, Guy S. | Creditor, Wells Fargo Bank, N.A. | |
| Steege, Catherine L. | Creditor, LIP Holdings, LLC | csteege@jenner.com |
| | | mhinds@jenner.com |
| | | thooker@jenner.com |
| U.S. Trustee | | ustpregion10.in.ecf@usdoj.gov |
| Yeager, Joseph H. | Creditor, LIP Lenders, LLC | joseph.yeager@bakerdaniels.com |
| | | jan.davis@bakerd.com |

### Debtor's Attorney's Electronic Mail Service

| | | |
|---|---|---|
| Hackney, Stephen C. | Debtors | stephen.hackney@kirkland.com |
| Harrington, Lee | Creditor, ST CDE IV LLC | lharrington@nixonpeabody.com |
| Horn, Alexander S. B. | Creditor, ST CDE IV LLC | ahorn@nixonpeabody.com |
| Kelly, Gerard D. | Creditor, Wells Fargo Bank, N.A. | gkelly@sidley.com |
| Kurichety, Arun | Debtors | arun.kurichety@kirkland.com |
| Kwasteniet, Ross M. | Debtors | ross.kwasteniet@kirkland.com |
| Marcus, Micah E. | Debtors | micah.marcus@kirkland.com |
| Milione, Victor G. | Creditor, ST CDE IV LLC | vmilione@nixonpeabody.com |
| Nirider, Matthew E. | Debtors | matt.nirider@kirkland.com |
| Pelz, Joel L. | Creditor, LIP Holdings, LLC | jpelz@jenner.com |
| Stempel, James A. | Debtors | james.stempel@kirkland.com |

### Debtor's Attorney's U.S. Mail Service

Baker Barrios Architects, Inc.
Attn: Dawn Sing
189 S. Orange Ave. Suite 1700
Orlando, FL 32801

Allen & Hoshall
Attn: J.C. Nelson
713 S Pear Orchard Rd
Ridgeland, MS 39157

Soiltech Consultants
Attn: Vickie Ross
PO Box 12466
Jackson, MS 39236

Ernst & Young
Attn: Walter Allen
111 Monument Circle Suite 2600
Indianapolis, IN 46204

1031345-1