**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LAUTH INVESTMENT PROPERTIES, LLC, et al.,[1] | ) Case No. 09-06065-BHL-11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**DEBTORS' STATEMENT IN SUPPORT OF FINAL DIP ORDER**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
hereby submit this statement (the "Statement") in support of the *Motion of the Debtors for Entry
of (A) an Order Approving Marketing Process and Break Up Fee; and (B) Interim and Final
Order (A) Authorizing the Debtors to Obtain Postpetition Financing and (B) Granting Liens and
Superpriority Claims* [Docket No. 299] (the "Motion"), which motion seeks a final order
approving, among other things, the Debtors' proposed postpetition debtor-in-possession
financing (the "Final DIP Order"), a form of which is being filed contemporaneously herewith.
In support of the Motion, the Debtors respectfully state as follows:

**<u>Introduction</u>**

1.      During the course of the past roughly three months, the Debtors have engaged in
an active and extensive marketing process to obtain debtor-in-possession financing.  Pursuant to
this marketing process, the Debtors proposed to enter into a debtor-in-possession financing

---

[1]   The Debtors in these chapter 11 cases include:  Lauth Investment Properties, LLC (09-06065); LIP
Development, LLC (09-06066); LIP Investment, LLC (09-06067); Brier Creek Medical Associates Two, LLC
(09-12760); Brier Creek Medical Associates, LLC (09-12761); Brier Creek Medical Partners Two, LLC (09-
12762); Brier Creek Medical Partners, LLC (09-12763); Brownsburg Station Partners, LLC (09-12764); MCP
Partners Three, LLC (09-12765); Meridian Medical Associates Two, LLC (09-12766); Meridian Medical
Partners Two, LLC (09-12767); Middleburg Heights Medical Associates, LLC (09-12768); Middleburg Heights
Medical Partners, LLC (09-12769); Moores Chapel Partners, LLC (09-12656); Virginia Beach Medical
Associates, LLC (09-12770); and Virginia Beach Medical Partners, LLC (09-12771).

1

agreement with LIP Lender, LLC (an entity composed of certain principals of the Debtors) ("LIP Lender"), which agreement would provide debtor-in-possession financing in an aggregate amount of $15 million (with a potential commitment of up to $25 million) (the "LIP Lender Agreement"). On August 25, 2009, the Court entered that certain *Interim Order Under 11 U.S.C. §§ 361, 363 and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing and (B) Prescribing Form and Manner of Notice and Setting Time for Final Hearing* [Docket No. 427] (the "Interim DIP Order"). The Interim DIP Order approved the LIP Lender Agreement on an interim basis, and permitted the Debtors to continue their marketing process to try to obtain proposals on better terms than those in the LIP Lender Agreement.

2.     As further described in the *Declaration of Jared Yerian In Support of Debtors' Statement in Support of Final DIP Order*, filed contemporaneously herewith, the Debtors, with the aid of their advisors, continued to canvass the market for potential third-party lenders, including banks, hedge funds and private equity funds. In total, the Debtors approached approximately 40 different potential lenders. Certain of these lenders expressed no interest in providing the Debtors with postpetition financing; however, approximately 23 potential lenders executed confidentiality agreements to obtain additional information regarding the Debtors. Despite making available pertinent information regarding the Debtors' operations and needs for postpetition financing, only one party (the "Confidential Potential Lender") submitted a term sheet regarding a proposed loan (the "Confidential Term Sheet"). As this Court is aware, the Confidential Term Sheet was filed under seal pursuant to that certain *Order Authorizing Debtors to File Under Seal Confidential DIP Term Sheet* [Docket No. 401].

3.       After submitting the Confidential Term Sheet, the Confidential Potential Lender conducted considerable due diligence on the Debtors, their operations and their real estate portfolio.  As part of this diligence process, the Debtors and their advisors met with the Confidential Potential Lender on numerous occasions and provided substantial diligence information.

4.       In connection with its due diligence efforts, the Confidential Potential Lender engaged a group from Colliers International, a respected commercial real estate consulting firm, to analyze the Debtors' operations and to value the Debtors' real estate portfolio.  As a result of these efforts, the Confidential Potential Lender provided the Debtors with a revised term sheet on October 7, 2009, attached hereto as **Exhibit A**, (the "Revised Confidential Term Sheet") which the Debtors propose to file under seal for the reasons set forth in the *Debtors' Motion to File Under Seal Revised Confidential Term Sheet* filed contemporaneously herewith.

5.       During this interim period, the Debtors also continued to negotiate with LIP Lender regarding the terms of the LIP Lender Agreement.  As a result of such negotiations, LIP Lender agreed to amend the LIP Lender Agreement (the "Revised LIP Lender Agreement" and attached hereto as **Exhibit B**) to eliminate the requirement that LIP Lender be granted warrants to acquire 25% of the Debtors' equity post-confirmation.  Instead, LIP Lender has indicated that it may be willing to accept equity in lieu of their 10% exit fee, but any such agreement would be subject to further negotiation between the parties, final documentation and subsequent approval by this Court.

**A.       The Revised LIP Lender Agreement is More Favorable than the Revised Confidential Term Sheet**

6.       A simple comparison of the Revised LIP Lender Agreement and the Revised Confidential Term Sheet demonstrates that the Revised LIP Lender Agreement, after a thorough

3

K&E 15738305.

marketing process, represents the best and most favorable option with respect to debtor-in-possession financing.

7.      From a pure financial standpoint, the Revised LIP Lender Agreement represents a less expensive option than the Revised Confidential Term Sheet.  Specifically, the Revised LIP Lender Agreement compared to the Revised Confidential Term Sheet contains a much more favorable interest rate (with respect to both non-default and default rates) and a lower closing fee.  The Revised Confidential Term Sheet also provides for a termination fee that may be payable by giving the Confidential Potential Lender up to 25% of the equity in the Debtors upon confirmation of a plan of reorganization.  On the other hand, the Revised LIP Lender Agreement does not provide for any type of termination fee and does not call for LIP Lender to receive any equity in the reorganized Debtors.  Moreover, unlike the Revised LIP Lender Agreement, the Revised Confidential Term Sheet contains numerous requirements and restrictions related to the restructuring of the underlying project-level loans.  As such, the Revised LIP Lender Agreement represents the best postpetition financing option available to the Debtors.

**B.      LIP Lender is Entitled to the "Good Faith" Protection Set Forth in Section 364(e)**

8.      In addition, the Final DIP Order should provide that LIP Lender be afforded the "good faith" protections set forth in section 364(e) of the Bankruptcy Code.  Section 364(e) of the Bankruptcy Code states:

> the reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

4

9.      Wells Fargo Bank N.A. and Wachovia Bank N.A. (collectively, "Wells") assert that LIP Lender should not be afforded the protections set forth in section 364(e) of the Bankruptcy Code.  Specifically, Wells believes that any final order approving the Revised LIP Lender Agreement should not contain a finding that LIP Lender is a "good faith" lender pursuant to section 364 because Wells believes that LIP Lender is extending credit for improper purposes.

10.      To demonstrate that LIP Lender is not acting in good faith, Wells must show that the intended effect of entering into the Revised LIP Lender Agreement is improper.  See In re EDC Holding Co., 676 F.2d 945, 949 (7th Cir. 1982).  Moreover, while what constitutes improper is not entirely clear from the case law, some courts have found lack of good faith in instances where there is collusion between the transacting parties or an attempt to take grossly unfair advantage of other interested parties.  See In re Pan Am Corp., 1992 WL 154200, at *4 (S.D.N.Y. Jun. 18, 1992).

11.      To avoid any appearance of collusion or self-dealing, the Debtors conducted a lengthy and extremely broad DIP marketing process.  Notwithstanding Wells' unfounded accusations, the Debtors and LIP Lender have negotiated in good faith to permit the Debtors to access much needed postpetition financing on terms that are far more favorable than those contained in the Revised Confidential Term Sheet, or any other transaction that could be obtained in the market.  Moreover, Wells has no basis for asserting that LIP Lender's extension of credit will be for some nefarious purpose.  The Debtors have demonstrated the need for postpetition financing and, after extensive marketing, the Revised LIP Lender Agreement represents the best alternative available.

12.      Wells has not articulated a coherent argument for why LIP Lender should be denied a good faith finding.  Wells is presently suing certain of the Debtors' principals on

K&E 15738305.

account of personal guaranties.  Wells is also suing certain of the principals' spouses to attempt to recover assets allegedly transferred from the principals to their spouses.  Wells then tries to argue that the LIP Lender proposal is somehow improper because it is being made by certain of the principals and their spouses.  This is a silly argument.  Wells does not seem to dispute that the principals themselves could, in good faith, make a DIP loan here.  Therefore, even assuming that Wells was ultimately successful in its fraudulent conveyance arguments against the spouses, any fraudulently transferred funds would be returned to the principals, at which point the principals would be free to make the DIP loan.  Therefore, the fact that certain of the principals' spouses are involved in making the DIP loan is entirely irrelevant.

## Conclusion

13.     After scouring the market for several months, allowing certain parties to perform due diligence and ultimately weighing the costs and benefits of various financing proposals, it is clear that the Revised LIP Lender Agreement represents the most favorable postpetition financing option for the Debtors.  Without the financing provided under the Revised LIP Lender Agreement, the Debtors risk jeopardizing their restructuring efforts because they will lack much needed liquidity to continue to fund their operations during the pendency of their chapter 11 cases.  As such, and for the reasons set forth herein and in the Motion, this Court should approve the Final DIP Order.

Respectfully submitted,

Dated:  November 2, 2009          **TAFT STETTINIUS & HOLLISTER LLP**
        Indianapolis, Indiana

/s/ Jeffrey J. Graham
Jerald I. Ancel
Jeffrey J. Graham
One Indiana Square, Suite 3500
Indianapolis, Indiana  46204
Telephone:     (317) 713-3500
Facsimile:      (317) 713-3699

K&E 15738305.

- and -

**KIRKLAND & ELLIS LLP**
Reed S. Oslan, P.C.
James A. Stempel (admitted *pro hac vice*)
Steven C. Hackney (admitted *pro hac vice*)
Ross M. Kwasteniet (admitted *pro hac vice*)
Arun K. Kurichety (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Co-Counsel for the Debtors and Debtors in Possession

1134724-1

K&E 15738305.