**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| LAUTH INVESTMENT PROPERTIES, LLC, <u>et al.</u>,[1] | ) Case No. 09-06065-BHL-11 |
| Debtors. | ) Jointly Administered |

**MOTION OF WELLS FARGO AND WACHOVIA BORROWERS FOR
ENTRY OF AN ORDER APPROVING LOAN MODIFICATION TERM SHEET
BETWEEN (A) WELLS FARGO AND WACHOVIA BORROWERS AND
(B) WELLS FARGO BANK, NATIONAL ASSOCIATION AND WACHOVIA BANK,
NATIONAL ASSOCIATION**

The Subject Borrowers (as defined herein) have been in active negotiations with Wells Fargo Bank, National Association ("<u>Wells Fargo</u>") and Wachovia Bank, National Association ("<u>Wachovia</u>" and, together with Wells Fargo, each a "<u>Lender</u>" and, collectively, the "<u>Lenders</u>") for months regarding the restructuring of their underlying mortgage debt. As a result of such negotiations, the Subject Borrowers executed the Loan Modification Term Sheet (as defined herein), which reflects the proposed terms of a restructuring of the Subject Borrowers'

---

[1] The Subject Borrowers include: Brier Creek Medical Associates Two, LLC (09-12760), managing member of Brier Two (as hereinafter defined); Brier Creek Medical Associates, LLC (09-12761), managing member of Brier One (as hereinafter defined); Brier Creek Medical Partners Two, LLC ("<u>Brier Two</u>") (09-12762); Brier Creek Medical Partners, LLC ("<u>Brier One</u>") (09-12763); Brownsburg Station Partners, LLC ("<u>Brownsburg</u>") (09-12764); MCP Partners Three, LLC ("<u>MCP Three</u>") (09-12765); Meridian Medical Associates Two, LLC (09-12766), managing member of Meridian (as hereinafter defined); Meridian Medical Partners Two, LLC ("<u>Meridian</u>") (09-12767); Middleburg Heights Medical Associates, LLC (09-12768), managing member of Middleburg (as hereinafter defined); Middleburg Heights Medical Partners, LLC ("<u>Middleburg</u>") (09-12769); Moores Chapel Partners, LLC ("<u>Moores Chapel</u>") (09-12656); Virginia Beach Medical Associates, LLC (09-12770), managing member of Virginia Beach (as hereinafter defined); and Virginia Beach Medical Partners, LLC ("<u>Virginia Beach</u>") (09-12771). The "<u>Original Debtors</u>" include: Lauth Investment Properties, LLC (09-06065); LIP Development, LLC (09-06066); LIP Investment, LLC (09-06067) (collectively, together with the Subject Borrowers, the "<u>Debtors</u>").

underlying mortgage debt, which the Lenders are willing to submit to this Court for approval, subject to all of the terms and conditions set forth in the Loan Modification Term Sheet.[2]

Accordingly, the Subject Borrowers hereby move the Court, pursuant to this motion (the "Motion"), for the entry of an order, in the form attached hereto as **Exhibit A**, authorizing them to enter into and take all actions necessary to effectuate certain loan amendments related to the underlying mortgage debt on terms consistent in all respects with those set forth on **Exhibit B** attached hereto (the "Loan Modification Term Sheet").  Upon obtaining approval to enter into loan amendments consistent in all respects with the Loan Modification Term Sheet, the Subject Borrowers intend (and are required by the Loan Modification Term Sheet) to move quickly towards confirmation of chapter 11 plans of reorganization and emerge from bankruptcy protection as soon as possible.  Thereafter, the Subject Borrowers and the Lenders intend to consummate transactions, provided that the chapter 11 plans and all related plan documents shall be consistent in all respects with the Loan Modification Term Sheet and acceptable to the Lenders in their sole discretion.[3]  In support of the Motion, the Subject Borrowers respectfully state as follows:

---

[2] The terms and conditions of the Loan Modification Term Sheet include, without limitation, the Lenders' receipt of internal credit approval and execution of final documentation with respect thereto acceptable to the Lenders in their sole discretion, and provided that such terms are incorporated into chapter 11 plans of reorganization (collectively, the "Plan") that are consistent in all respects with the Loan Modification Term Sheet, and that the applicable time frames set forth therein (the "Milestones") are strictly observed, with time being of the essence. However, the Lenders are not in any sense obligated to vote for the Plan, and retain all of their rights in these Chapter 11 Cases, including but not limited to, the right to object to confirmation, to object to any inadequacy in any disclosure statement, to cast a vote in accordance with the Bankruptcy Code, and then only after this Court has approved any required disclosure statements, and that nothing herein shall be construed to mean that the Subject Borrowers have already solicited any vote, nor that any agreement on how to vote has been given, requested, or agreed to.

[3] The Lenders have informed the Subject Borrowers that while they are generally supportive of seeking Court approval of the Loan Modification Term Sheet, this Motion is being submitted prior to any agreement on the exact terms and conditions of the plan(s) and prior to the completion of certain significant disclosures. In the event that such agreement cannot be reached on the terms of the plan(s), or key disclosures have not been completed, the Lenders reserve all rights to object to the Motion and to pursue any rights they may have under applicable law.

16158774-9

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 363(b) and 364 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules B-4001-2 and B-9019-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana (the "Local Rules").

**Background**

4. On May 1, 2009, the Original Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Original Chapter 11 Cases").

5. On August 27, 2009, Moores Chapel filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On August 29, 2009, the Subject Borrowers (with the exception of Moores Chapel) each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (together with the Original Chapter 11 Cases, collectively, the "Chapter 11 Cases").

6. On May 15, 2009, the Court entered an order jointly administering the Original Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). On September 16, 2009, the Court entered an order jointly administering the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

16158774-9

7. As set forth in greater detail below, the Subject Borrowers are parties to various loan agreements with the Lenders (collectively, the "Loan Agreements") under which the Subject Borrowers are borrowers and the Lauth Principals[4] are guarantors along with, in certain instances, Lauth Group, Inc. ("LGI").[5] Given that the current maturity dates for the Loan Agreements have elapsed, the Subject Borrowers currently remain in default with respect to these agreements.

8. The Subject Borrowers and the Lenders have negotiated the Loan Modification Term Sheet, which subject to the terms and conditions, as set forth above, would among other things, extend current maturity dates and waive certain defaults under the relevant loan agreements in exchange for, among other things, cross-collateralizing each of the properties associated with the Subject Borrowers (each a "Property," and collectively, the "Properties"). The Subject Borrowers believe this is a highly favorable outcome and wish to close on this transaction in the near future.

9. Moreover, upon entry of an order approving the relief requested herein, the Subject Borrowers shall be obligated to move quickly towards confirmation of chapter 11 plans of reorganization (the "Subject Borrower Plans") and to emerge from bankruptcy protection as soon as possible. The Subject Borrowers are finalizing the Subject Borrower Plans and a related disclosure statement (the "Disclosure Statement"), and the Subject Borrowers anticipate those documents will be filed with the Court on or around February 22, 2010. The Subject Borrower Plans will provide for the reinstatement and modification of the underlying Lenders' mortgage debt on terms consistent in all respects with those set forth in the Loan Modification Term Sheet.

---

[4] The Lauth Principals include: Robert L. Lauth, Gregory C. Gurnik, Lawrence B. Palmer and Michael S. Curless.

[5] Thomas K. Peck ("Peck"), W. Todd Jensen ("Jensen"), John F. McNaughton ("McNaughton") and Michael J. Jones ("Jones") are also guarantors under certain of the Loan Agreements described below.

No other creditors or interest holders, other than the Lenders, will be impaired under the Subject Borrower Plans

10.    As part of the consideration for the Lenders to deliver the Loan Modification Term Sheet to the Subject Borrowers, the Lenders have requested, and the Subject Borrowers hereby move as part of this Motion that the Court permit the Lenders an additional time to make an election under section 1111(b) of the Bankruptcy Code until at least ten (10) days after the conclusion of the hearing on the Subject Borrowers' disclosure statement (the "Disclosure Statement Hearing").

## The Loan Agreements

11.    Each of the Subject Borrowers previously entered into a Loan Agreement with certain of the Lenders, the key terms of which are summarized in the table below:

| Borrower | Lender | Original Principal | Maturity Date | Guarantors | Outstanding Principal Balance |
|---|---|---|---|---|---|
| **MCP Three** | Wells Fargo | $16,306,035 | June 27, 2009 | Lauth Principals, Peck, Jones | $15,581,113 |
| **Meridian** | Wells Fargo | $13,973,955 | Jan. 24, 2009 | Lauth Principals, Jensen | $8,816,475 |
| **Middleburg** | Wells Fargo | $12,800,000 | Oct. 10, 2008 | Lauth Principals, Jensen | $9,616,106 |
| **Virginia Beach** | Wells Fargo | $11,635,488 | Feb. 2, 2009 | LGI, Lauth Principals, Jensen, McNaughton | $11,514,542 |
| **Brownsburg** | Wells Fargo | $31,300,000 | Nov. 8, 2008 | Lauth Principals | $16,753,985 |
| **Moores Chapel** | Wachovia | $9,582,000 | June 15, 2009 | LGI, Lauth Principals, Peck | $7,532,056[6] |
| **Brier One** | Wachovia | $11,341,990 | June 15, 2009 | LGI, Lauth Principals, Peck | $10,044,623[7] |

---

[6]  This amount assumes that a portion of a prior interest payment in an amount equal to $29,100 has been reallocated to principal by Wachovia at Moores Chapel's request. The existing outstanding principal balance of this loan as of the date hereof is actually $7,561,156. Such reallocation will be effective only upon consummation of the restructuring contemplated by the Loan Modification Term Sheet.

[7]  This amount assumes that a portion of a prior interest payment in an amount equal to $30,000 has been reallocated to principal by Wachovia at Brier One's request. The existing outstanding principal balance of this loan as of the date hereof is actually $10,074,623. Such reallocation will be effective only upon consummation of the restructuring contemplated by the Loan Modification Term Sheet.

16158774-9

| Brier Two | Wachovia | $10,375,000 | Oct. 15, 2009 | LGI, Lauth Principals, Peck | $7,087,140[8] |
|---|---|---|---|---|---|
| **Totals** |  | $117,314,468 |  |  | $86,946,040[9] |

12. In addition, each of the Loan Agreements and the amounts loaned thereunder (collectively, the "Loans") is secured by, among other things, a mortgage in favor of the Lenders.

## Loan Modification Term Sheet

13. Prior to filing the Chapter 11 Cases, the Subject Borrowers' original business plan was to sell the Properties in the ordinary course of business at a profit prior to the respective maturity dates of each loan (collectively, the "Loan Maturity Dates"). Due to the recent and unprecedented downturn in the real estate markets, however, the Subject Borrowers were unable to sell the Properties prior to the Loan Maturity Dates for purchase prices that would generate sufficient proceeds to pay the Lenders in full. Therefore, the Subject Borrowers entered into negotiations with the Lenders to modify, among other things, the Loan Agreements consistent in all respects with the Loan Modification Term Sheet attached hereto as **Exhibit B**.

14. More specifically, the Loan Modification Term Sheet provides, among other things, that:[10]

   a. The Loan Maturity Dates are extended to June 29, 2012, with a one year extension option, provided, that, among other things, no Event of Default (as defined in the Loan Modification Term Sheet) has occurred (the "Extended Maturity Date"). All prior maturity dates

---

[8] This amount assumes that a portion of a prior interest payment in an amount equal to $24,490 has been reallocated to principal by Wachovia at Brier Two's request. The existing outstanding principal balance of this loan as of the date hereof is actually $7,111,630. Such reallocation will be effective only upon consummation of the restructuring contemplated by the Loan Modification Term Sheet.

[9] This amount assumes that the reallocations described above have occurred. The total outstanding principal balance of all loans as of the date hereof is actually $87,029,630.

[10] The description of the terms of the Loan Modification Term Sheet herein is a summary. To the extent that the summary set forth herein and the terms of the Loan Modification Term Sheet are inconsistent, the terms of the Loan Modification Term Sheet shall control in all respects.

16158774-9

       and extension options, as applicable, are terminated by the Loan Modification Term Sheet;

b. All obligations under all of the Loan Agreements shall be secured by the Properties securing any of the Loan Agreements, including, without limitation, all of the guarantees (the "<u>Cross-Collateralization</u>");

c. Any default under any of the Loans, individually, shall constitute an Event of Default under the Loans, collectively (the "<u>Cross-Default</u>");

d. Any excess net cash flow from any of the Subject Borrowers will be used to pay the interest of the other Subject Borrowers and the Subject Borrowers will not be able to use any Loan proceeds to pay interest of any of the Loans without the respective Lender's approval (the "<u>Income Cross-Collateralization</u>");

e. The interest rates on all of the Loans will be increased by 0.50% and a loan modification fee of 0.1875% of the aggregate loan commitment will be due at closing;

f. The Original Debtors and LIP Lender, LLC will be added as guarantors of the Loan Agreements pursuant to the Loan Modification Term Sheet and the Lauth Principals will each execute a consent and reaffirmation form reaffirming their obligations to guaranty the Loan Agreements, including additional completion and repayment guaranties set forth in the Loan Modification Term Sheet;

g. The Subject Borrowers will create disbursement accounts at each of the Lenders and deposit an amount equal to an aggregate of $5,401,973 ($4,157,419 for Wells Fargo and $1,244,554 for Wachovia) into such accounts to fund tenant improvements and leasing commissions pursuant to the schedules set forth in the Loan Modification Term Sheet;

h. A sale of any of the Properties must meet certain price targets outlined in the Loan Modification Term Sheet;

i. The Lenders will waive certain defaults under the Loan Agreements;

j. Certain Events of Default, covenants, reporting and documentation requirements, representations and warranties in each of the Loan Agreements will be added, modified and/or amended;

16158774-9

k.  The Subject Borrowers shall have: (i) on or before February 22, 2010, filed the Plan and the Disclosure Statement; (ii) on or before March 31, 2010, obtained confirmation of the Plan and Disclosure Statement from the Court; and (iii) achieved the effective date of the Plan not more than 15 days after the date of confirmation; and

l.  The Lenders' claims will be deemed allowed for all purposes, including in connection with the Subject Borrowers' solicitation of votes on the Plan, in the amounts set forth in the Loan Modification Term Sheet.

### Relief Requested

15. By this Motion, the Subject Borrowers seek entry of an order authorizing them to enter into and take all actions necessary to effectuate the Loan Modification Term Sheet.

### Basis for Relief

**A. The Proposed Use of Estate Property in Connection with the Loan Modification Term Sheet Is an Exercise of the Subject Borrowers' Sound Business Judgment and Should Be Authorized Pursuant to Section 363 of the Bankruptcy Code.**

16. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when a sale or disposition of property of the estate outside the ordinary course of business should be authorized, courts in this and other circuits, have consistently held that the proposed use or sale of property of the estate is appropriate if the transaction represents the sound or reasonable business judgment of the debtor. See, e.g., Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) (a sale under section 363 of the Bankruptcy Code involves the exercise of fiduciary duties and requires an "articulated business justification"); Comm. of Equity Sec. Holders v. Lionel Corp., (In re Lionel), 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Telesphere Commc'ns, Inc., 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994) (same).

16158774-9

17. If a valid business justification exists for the use of property of the estate, a debtor's decision enjoys a strong presumption that "in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (citations omitted); see generally In re Fleming Packaging Corp., 351 B.R. 626 (Bankr. C.D. Ill. 2006); In re H. King and Assocs., 295 B.R. 246 (Bankr. N.D. Ill. 2003).

18. Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. See Pitt v. First Wellington Canyon Assoc. (In re First Wellington Canyon Assoc.), No. 89-C-593, 1989 WL 106838, *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion"); see also In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions"). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

19. In this case, the decision to extend the Loan Maturity Dates, among other things, in exchange for such things as the Cross-Collateralization and the Cross-Default is based on the Subject Borrowers' sound business judgment. Given the current state of the capital and real estate markets, the current Loan Maturity Dates (which have elapsed), the depressed value of the Properties and the extended timeline for real estate recovery, the Subject Borrowers believe that entering into agreements in strict conformity with the Loan Modification Term Sheet is in the best interest of their estates.

16158774-9

20. By obtaining authorization to enter into agreements consistent in all respects with the Loan Modification Term Sheet, the Subject Borrowers will have the flexibility to choose the appropriate time to sell the Properties or refinance the Loans given their belief that the real estate and/or capital markets will improve dramatically over the course of the next few years. Moreover, based on their financial projections, the Subject Borrowers believe that entering into agreements in strict conformity with the Loan Modification Term Sheet will not overly burden the Subject Borrowers' liquidity position and will offer significant benefits to their estates.

21. In addition, while the Subject Borrowers are allowing, among other things, the Cross-Collateralization, the Cross-Default and an interest rate increase, the Subject Borrowers do not believe such a concession will negatively affect their estates. Indeed, the Properties are already collateral for the Loans. Furthermore, the Subject Borrowers believe they have sufficient liquidity to ensure that an Event of Default will not occur and that the additional grant of collateral, other than what is required by the Term Sheet, for each loan will not be necessary.

**B.   The Subject Borrowers Should Be Permitted to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code**

22. To the extent that the Court considers this Motion a request to obtain postpetition financing, the Subject Borrowers believe that such a request should be granted pursuant to section 364 of the Bankruptcy Code.[11]

    **1.   The Subject Borrowers Were Unable to Obtain Postpetition Credit on an Unsecured Basis and Could Not Obtain More Favorable Postpetition Credit from Any Other Lender**

23. Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit outside the ordinary

---

[11] The Lenders, respectively, reserve all rights with respect to whether this Motion should be viewed as a request to obtain postpetition financing.

16158774-9

course of business and (c) obtaining credit with specialized priority or on a secured basis. For the reasons discussed below, the Subject Borrowers must be able to access postpetition financing on a secured basis pursuant to sections 364(c) and (d) of the Bankruptcy Code.

24. Pursuant to section 364(c), if a debtor cannot obtain postpetition credit on an unsecured basis, a court may authorize such debtor to obtain credit or incur debt that is entitled to superpriority administrative expense status, secured by a senior lien on unencumbered property, or secured by a junior lien on encumbered property. See 11 U.S.C. § 364(c); see also Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 584 (S.D.N.Y. 2001) (superpriority administrative expenses authorized where debtor could not obtain credit as an administrative expense).

25. A debtor seeking financing under section 364(c) of the Bankruptcy Code must make a reasonable effort to seek other sources of unsecured credit, but is granted deference in acting in accordance with its business judgment and, indeed, is not required to seek credit from every possible source. See, e.g., In re Ames Dept. Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (approving financing facility and holding that debtor made reasonable efforts to satisfy the standards of section 364(c) to obtain less onerous terms where debtor approached four lending institutions, was rejected by two and selected the least onerous financing option from the remaining two lenders); see also Bray v. Shenandoah Fed. Sav. & Loan Assoc. (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) ("The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable.").

26. Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga.

1988), aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); see also In re Garland Corp., 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) authorized, after notice and a hearing, upon showing that unsecured credit unobtainable); In re Stanley Hotel, Inc., 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); Ames, 115 B.R. at 37-39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

27. Over the course of the Chapter 11 Cases, the Subject Borrowers and their advisors have repeatedly attempted to locate consolidated postpetition credit to refinance the Properties. The Subject Borrowers have not been able to secure a refinancing commitment, but, subject to all of the terms and conditions set forth in the Loan Modification Term Sheet including, without limitation, Lenders' receipt of internal credit approval and execution of final documentation with respect thereto acceptable to Lenders in their sole discretion, the current Lenders are willing to extend maturity dates on terms in strict conformity with the Loan Modification Term Sheet. In addition, no parties were willing to provide unsecured financing. Thus, the Lenders are the only party to date willing to extend credit on terms feasible in light of existing contractual arrangements.

28. Moreover, the terms of the Loan Modification Term Sheet are fair and reasonable. The potential benefits here are substantial and will enable the Subject Borrowers to maximize their estates for the benefit of all the parties in interest.

### 2. The Relief Requested Is Necessary to Preserve Estate Assets

29. Without the Extended Maturity Dates provided by the Loan Modification Term Sheet, the Subject Borrowers' estates will suffer immense harm because as stated above

16158774-9

the Subject Borrowers are unable to locate alternate financing to support the Properties. Furthermore, as debtors in possession, the Subject Borrowers have a fiduciary duty to protect and maximize their estates' assets.  See In re Mushroom Transp. Co., Inc., 382 F.3d 325, 339 (3d Cir. 2004); Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003).  Authority to obtain postpetition financing pursuant to the Loan Modification Term Sheet allows the Subject Borrowers to do precisely that.  Absent new funding, the Subject Borrowers will be unable to meet certain obligations under the Loan Agreements and their businesses will be substantially and irreparably harmed.  Failure to authorize the Subject Borrowers to enter into transactions consistent with the Loan Modification Term Sheet at this critical juncture in the Chapter 11 Cases could cause the Subject Borrowers to plummet into chapter 7 liquidations, destroying value for all creditor constituencies.

## Waiver of Bankruptcy Rule 6004(h)

30. The Subject Borrowers seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  Based on the reasons set forth herein, ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).  Accordingly, the Subject Borrowers request that an order approving the Motion be effective immediately so that they can proceed expeditiously to implement the terms set forth in the Loan Modification Term Sheet.

## Notice

31. The Subject Borrowers have provided notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Indiana; (b) the entities listed on the Lists of Creditors Holding the 20 Largest Unsecured Claims filed for each of the Subject Borrowers

16158774-9

pursuant to Bankruptcy Rule 1007(d); and (c) those parties appearing in Service List (as that term is defined in the case management procedures approved in the Original Debtors' chapter 11 cases). In light of the nature of the relief requested, the Subject Borrowers respectfully submit that no further notice is necessary.

## No Prior Request

32.     No prior motion for the relief requested herein has been made to this or any other court.

*(Remainder of page left intentionally blank.)*

16158774-9

WHEREFORE, for the reasons set forth herein, the Subject Borrowers respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Subject Borrowers to enter into and take all actions contemplated by the Loan Modification Term Sheet and (b) granting such other and further relief as is just and proper.

Dated: February 19, 2010
Indianapolis, Indiana

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ Jeffrey J. Graham
Jerald I. Ancel
Jeffrey J. Graham
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699

- and -

**KIRKLAND & ELLIS LLP**
Reed S. Oslan, P.C.
James A. Stempel (admitted *pro hac vice*)
Steven C. Hackney (admitted *pro hac vice*)
Ross M. Kwasteniet (admitted *pro hac vice*)
Arun K. Kurichety (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Co-Counsel for the Subject Borrowers

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served upon the attached Service List. via the United States Bankruptcy Court's electronic transmission service, via email transmitted by Debtors' counsel, or via first class, postage-paid U.S. mail this on the 19th day of February, 2010. The method of service is designated on the Service List.

/s/ Jeffrey J. Graham
Jeffrey J. Graham

1194655-1

**Lauth Investment Properties, LLC, et al.**
**Case No. 09-06065-BHL-11**
**Service List**
**Updated:  01/28/2010**

**U.S. Bankruptcy Court Electronic Service**

| | | |
|---|---|---|
| Alwin, Janice A. | Creditor, Bank of America, N.A. | janice.alwin@bfkn.com |
| Ancel, Jerald I. | Debtors | jancel@taftlaw.com |
| | | ecfclerk@taftlaw.com |
| | | krussell@taftlaw.com |
| | | docket@taftlaw.com |
| Barrett, William J. | Creditor, Bank of America, N.A. | william.barrett@bfkn.com |
| Burke, Jason R. | Creditor, M&I Marshall & Ilsley Bank f/k/a First Indiana Bank, N.A. | jburke@hopperblackwell.com kellis@hopperblackwell.com |
| Carr, James M. | Creditor, LIP Lenders, LLC | james.carr@bakerd.com |
| | | sarah.laughlin@bakerd.com |
| Caruso, Deborah | Creditor, First Financial Bank | dcaruso@daleeke.com |
| | | lharves@daleeke.com |
| Caughey, Ben T. | Creditor, Robin S. Lauth and Julie Gurnik | ben.caughey@icemiller.com |
| Chilcote, Courtney E. | Creditor, LIP Holdings, LLC | cec@hostetler-kowalik.com |
| | | sdw@hostetler-kowalik.com |
| Cline, Fred L. | Creditor, Regions Bank | fcline@dannpecar.com |
| | | dlingenfelter@dannpecar.com |
| | | ccanny@dannpecar.com |
| | | ecf@dannpecar.com |
| Cody, Mark A. | Creditor, Charter One Bank | macody@jonesday.com |
| Cohen, Howard Russell | Creditor, The Huntington National Bank | hcohen@fbtlaw.com |
| | Creditor, The Huntington Real Estate Investment Company | dacree@fbtlaw.com |
| Correa, Michaeline | Creditor, Charter One Bank | mcorrea@jonesday.com |
| deLa Cruz, Sheila | Creditors, Bon Secours Hampton Roads Health System, Inc., Bon Secours DePaul Medical Center, Inc. and Bon Secours Surgery Center LLC | sdelacruz@hf-law.com mfalzone@hf-law.com stoboz@hf-law.com |
| Donhauser, Linda Vojik | Creditor, Bank of America, N.A. | ldonhauser@milesstockbridge.com |
| Drobny, Stephen Paul | Creditor, Sun Trust Bank | sdrobny@shutts.com |
| | | mvandenbosch@shutts.com |
| Dunn, Jeremy M. | Creditor, LIP Holdings, LLC | jmd@hostetler-kowalik.com |
| | | sdw@hostetler-kowalik.com |
| Graham, Jeffrey J. | Debtors | jgraham@taftlaw.com |
| | | ecfclerk@taftlaw.com |
| | | krussell@taftlaw.com |
| | | docket@taftlaw.com |
| Hinds, Melissa M. | Creditor, LIP Holdings, LLC | mhinds@jenner.com |
| | | cchilders@jenner.com |
| Hokanson, Jeffrey A. | Creditor, LIP Holdings, LLC | jeff.hokanson@hostetler-kowalik.com |
| | | hkecfbackup@yahoo.com |
| | | dwp@hostetler-kowalik.com |
| Hopper, George W. | Creditor, M&I Marshall & Ilsley Bank f/k/a First Indiana Bank, N.A. | ghopper@hopperblackwell.com mroth@hopperblackwell.com |
| Hurley, Ryan M. | Creditor, LIP Lenders, LLC | ryan.hurley@bakerd.com |
| Irving, James R. | Creditor Inland American Charlotte Lender, L.L.C. | jim.irving@dlapiper.com |
| Jacobson, Christine K. | Creditor, Charter One Bank | cjacobson@katzkorin.com |
| | | cwright@katzkorin.com |
| | | ddever@katzkorin.com |

| | | |
|---|---|---|
| Jewell, John J. | Creditor Duke Energy Indiana, Inc. | jewell@evv-law.net<br>colleen@trimble-jewell.net |
| Kenney, Brian Francis | Creditor, Bank of America, N.A. | bkenney@milesstockbridge.com |
| King, Daniel P. | Creditor, The Huntington National Bank | dking@fbtlaw.com<br>sgregoire@fbtlaw.com |
| Knauer, James A. | Creditor, Wells Fargo Bank, N.A. | jak@kgrlaw.com<br>hns@kgrlaw.com |
| Knoblock, Erick P. | Creditor, First Financial Bank | eknoblock@daleeke.com |
| Koppel, Steven C. | Creditor, Charter One Bank | skoppel@jonesday.com |
| Kuney, David R. | Creditor, Wells Fargo Bank, N.A. | dkuney@sidley.com |
| Levitt, Peter H. | Creditor, Sun Trust Bank | plevitt@shutts.com |
| Marshall, Kurtis A. | Creditor, Wells Fargo Bank, N.A. | kam@kgrlaw.com |
| Matthews, James Michael | Creditor, Irwin Union Bank and Trust | jmatthews@fbtlaw.com<br>dacree@fbtlaw.com |
| McCrory, Michael K. | Creditor, Geneva Capital Group and Creditor, Geneva Capital Corporation | mmccrory@btlaw.com<br>bankruptcyindy@btlaw.com |
| Mills, Alan K. | Creditor, Salen Bank and Trust Company | alan.mills@btlaw.com<br>bragle@btlaw.com<br>bankruptcyindy@btlaw.com |
| Moloy, James P. | Creditor, Regions Bank | jmoloy@dannpecar.com<br>dlingenfelter@dannpecar.com<br>ccanny@dannpecar.com<br>ecf@dannpecar.com |
| Neal, Guy S. | Creditor, Wells Fargo Bank, N.A. | gneal@sidley.com |
| Smila, Mark S. | Creditor Piedmont Piping Mechanical Contracting, Inc. | marksamila@k2d2.com |
| Steege, Catherine L. | Creditor, LIP Holdings, LLC | csteege@jenner.com<br>mhinds@jenner.com<br>thooker@jenner.com |
| U.S. Trustee | | ustpregion10.in.ecf@usdoj.gov |
| Warton, Charles R. | U.S. Trustee | Charles.R.Wharton@usdoj.gov |
| Yeager, Joseph H. | Creditor, LIP Lenders, LLC | joseph.yeager@bakerdaniels.com<br>jan.davis@bakerd.com |

**Debtor's Attorney's Electronic Mail Service**

| | | |
|---|---|---|
| Carpet Concepts, Inc. Attn: Ruth Ann Rheinfrank | Creditor | RRheinfrank@carpetconcepts.net |
| CT Corporation Attn: Tammie Bennett | Creditor | Tammie.Bennett@wolterskluwer.com |
| Duke Energy Carolinas & Midwest Attn: Yvonne C. Crenshaw | Creditor | Yvonne.Crenshaw@duke-energy.com |
| Falzone, Michael P. | Creditor Bon Secours Hampton Roads Health System, Inc., Bon Secours Surgery Center LLC & Bon Secours DePaul Medical Center, Inc. | mfalzone@hf-law.com |
| Hackney, Stephen C. | Debtors | stephen.hackney@kirkland.com |
| Harrington, Lee | Creditor, ST CDE IV LLC | lharrington@nixonpeabody.com |
| Horn, Alexander S. B. | Creditor, ST CDE IV LLC | ahorn@nixonpeabody.com |
| James River Grounds Mgmt. Attn: D. Johnson | Creditor | djohnson@jrgm.com |
| Johnson III, Russell R. | Creditors, Duke Energy Indiana, Inc., Duke Energy Carolinas, LLC and Carolina Power & Light Company d/b/a Progress Energy Carolinas | russj4478@aol.com |
| Kelly, Gerard D. | Creditor, Wells Fargo Bank, N.A. | gkelly@sidley.com |

| | | |
|---|---|---|
| Koorsen Fire & Security, Inc. | Creditor | jkfromme99@koorsen.com |
| Koorsen Fire & Security, Inc. Attn: Kyle Rich | Creditor | ktrich99@koorsen.com |
| Kurichety, Arun | Debtors | arun.kurichety@kirkland.com |
| Kwasteniet, Ross M. | Debtors | ross.kwasteniet@kirkland.com |
| Mainscape, Inc. Attn: Jason Lee | Creditor | jlee@lewiswagner.com |
| Mainscape, Inc. Attn: Richard Blaiklock | Creditor | rblaiklock@lewiswagner.com |
| Major Clean, Inc. | Creditor | tempmajorclean@bellsouth.net |
| Marcus, Micah E. | Debtors | micah.marcus@kirkland.com |
| Masters Architectural Graphics, Inc. dba ASI-Modulex Attn: Cathy Fair | Creditor | cathy.fair@asisignage.com |
| Milione, Victor G. | Creditor, ST CDE IV LLC | vmilione@nixonpeabody.com |
| Nirider, Matthew E. | Debtors | matt.nirider@kirkland.com |
| Organek, Robin H. | Creditor, SunTrust Bank | norganek@shutts.com |
| Pelz, Joel L. | Creditor, LIP Holdings, LLC | jpelz@jenner.com |
| RAM Pavement Services, Inc. Attn: Alice | Creditor | alice@rampavement.com |
| Robin S. Lauth and Julie Gurnik c/o Richard A. Smikle | Parties-in-interest | Richard.smikle@icemiller.com |
| Robin S. Lauth and Julie Gurnik c/o Tabitha Truax-Haynes | Parties-in-interest | tabitha.truax-haynes@icemiller.com |
| SiteStuff, Inc. | Creditor | kristina.seek@sitestuff.com |
| Stempel, James A. | Debtors | james.stempel@kirkland.com |
| The Brickman Group, Ltd. Attn: Sarah Keller | Creditor | Sarah.Keller@brickmangroup.com |
| Virginia Lake Management Attn: Ellen Stace | Creditor | estace@vlmc.net |

**Debtor's Attorney's U.S. Mail Service**

| | | |
|---|---|---|
| Allen & Hoshall<br>Attn: J.C. Nelson<br>713 S Pear Orchard Rd<br>Ridgeland, MS 39157 | American National Skyline of Indiana<br>614 N. Michigan St.<br>Elmhurst, IL 60126-1934 | Angus Systems Group Inc.<br>2050 Marconi Drive, Suite 125<br>Alpharetta, GA 30005 |
| Architectural Glass & Metal Co.<br>63334 East 32nd Court<br>Indianapolis, IN 46226 | AT&T Atlanta GA<br>PO Box 105262<br>Atlanta, GA 30348 | Baker Barrios Architects, Inc.<br>Attn: Dawn Sing<br>189 S. Orange Ave. Suite 1700<br>Orlando, FL 32801 |
| Batteries Plus of Raleigh Inc<br>4907 Atlantic Ave<br>Raleigh, NC 27616 | Bay Disposal, Inc.<br>465 E. Indiana River Road<br>Norfolk, VA 23523 | Busses Lock Service LLC<br>2003 Wake Forest Rd<br>Raleigh, NC 27608 |
| Carmel Utilities<br>PO Box 109<br>Carmel, IN 46082-0109 | CB Richard Ellis Inc.<br>Location Code #2147<br>6000 Feldwood Road, Lockbox #406588<br>College Park, GA 30349-3652 | CBRE Technical Services LLC<br>Dept. 8074<br>Los Angeles, CA 90084-8074 |
| Central Security Systems, Inc.<br>Central Systems & Communications<br>6831 E. 32nd St., Suite 100<br>Indianapolis, IN 46226 | Chardon Laboratories, Inc.<br>Accounts Receivable Dept-1A<br>PO Box 1004<br>Columbus, OH 43216-1004 | Chesapeake Controls, Inc.<br>3900 Holland Boulevard<br>Chesapeake, VA 23323 |
| Cintas Corporation No 2<br>7258 Georgetown Rd<br>Indianapolis, IN 46268 | City of Charlotte<br>Billing Center<br>600 East 4th Street<br>Charlotte, NC 28250-0001 | City of Virginia Beach<br>2401 Courthouse Dr.<br>Virginia Beach, VA 23456 |

| | | |
|---|---|---|
| Cox Communications<br>PO Box 183124<br>Columbus, OH 43218-3124 | Crittenden Services Inc.<br>Commercial Power Sweeping<br>PO Box 6005<br>Suffolk, VA 23433 | CRS Building Automation Sys Inc.<br>801 South Cedar Street<br>Charlotte, NC 28208 |
| Cypress Communications Inc.<br>PO Box 536796<br>Atlanta, GA 30353-6796 | Dodson Bros. Exterminating Co Inc.<br>PO Box 10292<br>Norfolk, VA 23513 | Duncan Supply Co., Inc.<br>PO Box 1627<br>Indianapolis, IN 46206 |
| Ernst & Young<br>111 Monument Circle Suite 2600<br>Indianapolis, IN 46204 | Fikes Fresh Brands, Inc.<br>10080 E. 121st Street, #118<br>Fishers, IN 46037 | GSF Safeway, LLC<br>PO Box 633879<br>Cincinnati, OH 45263 |
| Guardian Property Services Inc.<br>Sweeping Contractors<br>PO Box 50151<br>Indianapolis, IN 46250-0151 | Key West Lock & Safe<br>4291 Holland Road, Suite 113<br>Virginia Beach, VA 23452 | Message Technologies, Inc.<br>PO Box 518<br>Smyrna, GA 30081-0518 |
| Morehead Place LLC<br>PO Box 933764<br>Atlanta, GA 31193-3764 | Nishida Services, Inc.<br>7340 Crossing Place, #100<br>Fishers, IN 46038 | North American Lawn & Landscaping<br>4200 Performance Road<br>Charlotte, NC 28214 |
| Peninsula Cleaning Service, Inc.<br>12610 Patrick Henry Drive, Suite A<br>Newport News, VA 23602 | Piedmont Door Automation LLC<br>578 Griffith Rd<br>Charlotte, NC 28217-3546 | Pinnacle Fire Systems Inc.<br>1013 Classic Rd<br>Apex, NC 27539-4402 |
| Pitney Bowes Credit Corporation<br>PO Box 856460<br>Louisville, KY 40285-6460 | Plymate Inc.<br>819 Elston Drive<br>Shelbyville, IN 46176 | Pro-Cote Inc.<br>PO Box 1042<br>Carmel, IN 46082 |
| Quality Roofing Services Inc<br>7920 Georgetown Road, Suite 400<br>Indianapolis, IN 46268 | Ray's Trash Service Inc.<br>Drawer I<br>Clayton, IN 46118 | SARCOM Inc.<br>Wareforce<br>PO Box 514487<br>Los Angeles, CA 90051-4487 |
| SHA Homes LLC<br>2508 Reliance Avenue<br>Apex, NC 27539 | Shumate Mechanical-Raleigh Inc.<br>5201 Old Poole Road, Suite 110<br>Raleigh, NC 27610 | Signius Investment Corporation<br>4010 W 86th St, Suite D<br>Indianapolis, IN 46268 |
| Soiltech Consultants<br>PO Box 12466<br>Jackson, MS 39236 | Sonitrol of Greater Richmond, Inc.<br>PO Box 5728<br>Glen Allen, VA 23058-5728 | Sprint Nextel –Correspondence<br>Attn: Bankruptcy Department<br>P.O. Box 7949<br>Overland Park, KS 66207-0949 |
| The Budd Group Inc.<br>PO Box 890856<br>Charlotte, NC 28289-0856 | The Plant Factory Interiors, Inc.<br>PO Box 2686<br>Virginia Beach, VA 23450-2686 | Verizon - Dallas, TX<br>PO Box 660720<br>Dallas, TX 75266-0720 |
| Verizon Wireless - PA<br>PO Box 28000<br>Lehigh Valley, PA 18002-8000 | Waste Industries LLC<br>PO Box 580495<br>Charlotte, NC 28258-0495 | |

1031345-1