**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LAUTH INVESTMENT PROPERTIES, LLC, et al.,[1] | ) | Case No. 09-06065-BHL-11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DISCLOSURE STATEMENT FOR WELLS FARGO AND WACHOVIA BORROWERS' JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**IMPORTANT DATES:**

- Voting Deadline by which Ballots must be received:
  March 22, 2010 at 5:00 p.m. (prevailing Eastern Time)

- Deadline by which to file and serve objections to Confirmation of the Plan and Disclosure Statement:
  March 22, 2010 at 5:00 p.m. (prevailing Eastern Time)

- Hearing on Confirmation of the Plan: March 26, 2010 at [____] p.m. (prevailing Eastern Time)

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR PRELIMINARY APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE.**

James A. Stempel (admitted *pro hac vice*)
Ross M. Kwasteniet (admitted *pro hac vice*)
Arun K. Kurichety (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle Drive
Chicago, Illinois 60654-3406
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200

Jerald I. Ancel
Jeffrey J. Graham
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone:   (317) 713-3500
Facsimile:   (317) 713-3699

Co-Counsel to the Subject Borrowers

Dated: February 22, 2010

---

[1]  The Subject Borrowers include: Brier Creek Medical Associates Two, LLC, managing member of Brier Two (as hereinafter defined); Brier Creek Medical Associates, LLC, managing member of Brier One (as hereinafter defined); Brier Creek Medical Partners Two, LLC ("Brier Two"); Brier Creek Medical Partners, LLC ("Brier One"); Brownsburg Station Partners, LLC ("Brownsburg"); MCP Partners Three, LLC ("MCP Three"); Meridian Medical Associates Two, LLC, managing member of Meridian (as hereinafter defined); Meridian Medical Partners Two, LLC ("Meridian"); Middleburg Heights Medical Associates, LLC, managing member of Middleburg (as hereinafter defined); Middleburg Heights Medical Partners, LLC ("Middleburg"); Moores Chapel Partners, LLC ("Moores Chapel"); Virginia Beach Medical Associates, LLC, managing member of Virginia Beach (as hereinafter defined); and Virginia Beach Medical Partners, LLC ("Virginia Beach"). The "Original Debtors" include: Lauth Investment Properties, LLC (09-06065); LIP Development, LLC (09-06066); LIP Investment, LLC (09-06067) (collectively, together with the Subject Borrowers, the "Debtors").

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 PM PREVAILING EASTERN TIME ON MARCH 22, 2010 UNLESS THE SUBJECT BORROWERS EXTEND THE VOTING DEADLINE.  TO BE COUNTED, THE SOLICITATION AGENT MUST <u>ACTUALLY RECEIVE</u> YOUR BALLOT ON OR BEFORE THE APPLICABLE VOTING DEADLINE.

THE SUBJECT BORROWERS PROVIDE NO ASSURANCE THAT THE DISCLOSURE STATEMENT (AND THE EXHIBITS) ULTIMATELY APPROVED IN THESE CHAPTER 11 CASES (A) WILL CONTAIN ANY OF THE TERMS IN THIS CURRENT DOCUMENT OR (B) WILL NOT CONTAIN DIFFERENT, ADDITIONAL, MATERIAL TERMS THAT DO NOT APPEAR IN THIS DOCUMENT.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN AND ANY EXHIBITS ATTACHED HERETO IS <u>HIGHLY SPECULATIVE,</u> AND SUCH DOCUMENTS SHOULD NOT BE RELIED UPON IN MAKING INVESTMENT DECISIONS WITH RESPECT TO (A) THE SUBJECT BORROWERS OR (B) ANY OTHER ENTITIES THAT MAY BE AFFECTED BY THE CHAPTER 11 CASES.

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION AND GENERAL BACKGROUND............................................................1
        A.      PURPOSE AND EFFECT OF THE PLAN ................................................................3
        B.      OVERVIEW OF CHAPTER 11 ..............................................................................4
        C.      SUMMARY OF CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS
                AND EQUITY INTERESTS UNDER THE PLAN ......................................................4
        D.      ENTITIES ENTITLED TO VOTE ON THE PLAN ...................................................9
        E.      SOLICITATION PROCESS....................................................................................12
        F.      VOTING PROCEDURES .......................................................................................12
        G.      DISCLOSURE STATEMENT AND CONFIRMATION HEARING ...........................13
        H.      CONFIRMATION AND CONSUMMATION OF THE PLAN ...................................14
        I.      RISK FACTORS ...................................................................................................14

II.     BACKGROUND TO THESE CHAPTER 11 CASES ......................................................15
        A.      OVERVIEW OF THE DEBTORS' AND SUBJECT BORROWERS' BUSINESSES .................15
        B.      DEBT AND CAPITAL STRUCTURE OF THE SUBJECT BORROWERS .......................18

III.    EVENTS LEADING UP TO CHAPTER 11 CASES ......................................................20
        A.      REASONS FOR FINANCIAL DISTRESS .............................................................20
        B.      DESCRIPTION OF PREPETITION RESTRUCTURING EFFORTS...........................20

IV.     CHAPTER 11 CASES OF THE SUBJECT BORROWERS...........................................21
        A.      INITIAL MOTIONS AND ORDERS.......................................................................21
        B.      OTHER MOTIONS AND PLEADINGS ..................................................................21

V.      SUMMARY OF THE JOINT PLAN............................................................................22
        A.      ADMINISTRATIVE AND PRIORITY CLAIMS.....................................................22
        B.      CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS .................23
        C.      ACCEPTANCE OR REJECTION OF THE PLAN....................................................37
        D.      CONFIRMATION PURSUANT TO SECTION 1129(a)(10) OF THE BANKRUPTCY
                CODE....................................................................................................................37
        E.      SUBJECT BORROWERS' CONTROVERSY CONCERNING IMPAIRMENT ..................38
        F.      MEANS FOR IMPLEMENTATION OF THE PLAN ...............................................38
        G.      PROVISIONS GOVERNING DISTRIBUTIONS .....................................................39
        H.      PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
                DISPUTED CLAIMS ..............................................................................................41
        I.      SETTLEMENT, EXCULPATION AND RELATED PROVISIONS ...........................43
        J.      CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
                THE PLAN ............................................................................................................46
        K.      MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..................47
        L.      RETENTION OF JURISDICTION ..........................................................................48
        M.      MISCELLANEOUS PROVISIONS .........................................................................50

VI.     SOLICITATION AND VOTING PROCEDURES ........................................................51
        A.      RECORD DATE ...................................................................................................51
        B.      VOTING DEADLINE ............................................................................................51
        C.      SOLICITATION PROCEDURES............................................................................52
        D.      VOTING AND TABULATION PROCEDURES .......................................................52

VII.    CONFIRMATION PROCEDURES .............................................................................54
        A.      DISCLOSURE STATEMENT AND CONFIRMATION HEARING ...........................54
        B.      STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN ..............55

     C.       RISK FACTORS ............................................................................................ 57

     D.       CONTACT FOR MORE INFORMATION ................................................... 57

**VIII.**   **PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ........................................................................ 58**

     A.       GENERAL BANKRUPTCY LAW AND PLAN - RELATED CONSIDERATIONS ................ 58

     B.       RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS ................... 60

     C.       DISCLOSURE STATEMENT DISCLAIMER ........................................... 60

     D.       ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ............. 62

**IX.**    **CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ....................... 62**

     A.       GENERAL TAX CONSIDERATIONS .................................................... 62

     B.       RESERVATION OF RIGHTS ............................................................... 64

**X.**     **GLOSSARY OF DEFINED TERMS ................................................................... 65**

**XI.**    **CONCLUSION AND RECOMMENDATION ......................................................... 71**

## EXHIBITS

**Exhibit A**       Subject Borrowers' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code

**Exhibit B**       Signed Disclosure Statement Order (with the Solicitation Procedures attached thereto as Exhibit 1)

**Exhibit C**       Corporate Structure Chart as of the Petition Date

**Exhibit D**       Loan Modification Term Sheet

## I.      INTRODUCTION AND GENERAL BACKGROUND

On August 27, 2009, Moores Chapel Partners, LLC, one of the Subject Borrowers, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. [2]  On August 29, 2009, the Subject Borrowers (with the exception of Moores Chapel Partners, LLC) each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

After a period of ongoing dialogue, the Subject Borrowers have reached an agreement with Wells Fargo Bank, National Association and Wachovia Bank, National Association, the Holders of Secured Claims against the Subject Borrowers.  This agreement is set forth in the Loan Modification Term Sheet attached hereto as **Exhibit D**, which remains subject to all of the terms and conditions set forth therein including, without limitation, the Holders of Secured Claims' receipt of internal credit approval and execution of final documentation with respect thereto acceptable to the Holders of Secured Claims in their sole discretion, and provided that such terms are incorporated into a chapter 11 plan of reorganization that are consistent in all respects with the Loan Modification Term Sheet, and the applicable time frames set forth therein (the "Milestones") are strictly observed, with time being of the essence.

The revised loan terms and loan amendments are the result of extensive negotiations and represent the successful renegotiation of approximately $87 million in outstanding secured obligations.  The terms are beneficial to the Subject Borrowers as well as their estates and creditors.  Further, the Plan provides for 100 percent recovery to all Holders of General Unsecured Claims against and Equity Interests in the Subject Borrowers.  The Holders of Secured Claims are the only Impaired Class under the Plan and, thus, the only Class entitled to vote to accept or reject the Plan, although the Plan seeks to repay in full, over time, the Lenders' Allowed Secured Claims in those amounts shown in the Loan Modification Term Sheet.  All other Classes are Unimpaired and are therefore conclusively presumed to accept the Plan.

The Subject Borrowers submit this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, to Holders of Claims in connection with:  (a) the solicitation of votes to accept or reject the *Subject Borrowers' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, (as the same may be amended from time to time, the "Plan") and (b) the joint hearing to consider final approval of this Disclosure Statement and confirmation of the Plan (the "Disclosure Statement and Confirmation Hearing"), which will be scheduled for on or around March 26, 2010, at **[X:XX  a.m./p.m.]** prevailing Eastern Time (the "Disclosure Statement and Confirmation Hearing Date").  A copy of the Plan is attached hereto as **Exhibit A** and incorporated herein by reference.

The purpose of this Disclosure Statement is to set forth information (a) regarding the history of the Subject Borrowers, their businesses and their chapter 11 cases, (b) concerning the Plan and alternatives to the Plan, (c) advising the Holders of Claims and Equity Interests of their rights under the Plan and (d) assisting the Holders of Claims in making an informed judgment regarding whether they should vote to accept or reject the Plan.

By order dated [_____] (the "Disclosure Statement Order"), the Bankruptcy Court preliminarily approved this Disclosure Statement, in accordance with section 1125 of the Bankruptcy Code, as containing "adequate information" to enable a hypothetical, reasonable investor typical of Holders of Claims against, or Equity Interests in, the Subject Borrowers to make an informed judgment as to whether to accept or reject the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan.

The Disclosure Statement Order sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan, and for filing objections to this Disclosure Statement or confirmation of the Plan, the record date for voting purposes and the applicable standards for tabulating Ballots.  In addition, detailed voting instructions accompany each Ballot.  Each Holder of a Claim entitled to vote on the Plan should read this

---

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings set forth in Section X herein entitled, "Glossary of Defined Terms."  To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the "Glossary of Defined Terms" are inconsistent, the definition included in the Glossary of Defined Terms shall control.

Disclosure Statement, the Plan, the Disclosure Statement Order and the instructions accompanying the Ballot in their entirety before voting on the Plan.  These documents contain important information concerning the classification of Claims and Equity Interests for voting purposes and the tabulation of votes.  **PRELIMINARY APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN**.  No solicitation of votes may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code.  In voting on the Plan, Holders of Claims should not rely on any information relating to the Subject Borrowers and their businesses, other than that contained in this Disclosure Statement, the Plan and all exhibits and appendices hereto and thereto.

**THE MANAGEMENT OF THE SUBJECT BORROWERS BELIEVES THAT THE PLAN PROVIDES FOR THE BEST AVAILABLE RECOVERY TO THE SUBJECT BORROWERS' STAKEHOLDERS.  THE MANAGEMENT OF THE SUBJECT BORROWERS RECOMMENDS THAT HOLDERS OF CLAIMS IN THE VOTING CLASSES VOTE TO ACCEPT THE PLAN.**

**THE SUBJECT BORROWERS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR THE SUBJECT BORROWERS' JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE TO HOLDERS OF CLAIMS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.**

**A GLOSSARY OF DEFINED TERMS UTILIZED IN THE PLAN AND DISCLOSURE STATEMENT IS SET FORTH IN SECTION X OF THIS DISCLOSURE STATEMENT.**

**NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE SUBJECT BORROWERS URGE EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY.  FURTHERMORE, THE BANKRUPTCY COURT'S PRELIMINARY APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.**

**IT IS THE SUBJECT BORROWERS' POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER.  RATHER, HOLDERS OF CLAIMS AND EQUITY INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.**

**NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT.  THE SUBJECT BORROWERS OR THE REORGANIZED SUBJECT BORROWERS MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.**

**THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE SUBJECT BORROWERS' CHAPTER 11 CASES AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE SUBJECT BORROWERS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR**

STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.  FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE MANAGEMENT OF THE SUBJECT BORROWERS EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.  THE SUBJECT BORROWERS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE MANAGEMENT OF THE SUBJECT BORROWERS HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT.  ALTHOUGH THE SUBJECT BORROWERS HAVE USED THEIR REASONABLE BUSINESS JUDGMENTS TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT, HAS NOT BEEN AUDITED.

THE SUBJECT BORROWERS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED.  ALTHOUGH THE SUBJECT BORROWERS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE SUBJECT BORROWERS HAVE NO AFFIRMATIVE DUTY TO DO SO.  HOLDERS OF CLAIMS AND EQUITY INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS FILED.  HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE SUBJECT BORROWERS AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

THE SUBJECT BORROWERS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE SUBJECT BORROWERS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE SUBJECT BORROWERS OR THE VALUE OF THEIR PROPERTIES OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN THE VOTING CLASSES SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN SECTION VIII HEREIN, "PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN."

ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND MADE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

A.      PURPOSE AND EFFECT OF THE PLAN

The primary purpose of the Plan is to maximize the long-term enterprise values of the Subject Borrowers by restructuring the terms and timing of the Subject Borrowers' loan commitments.  The Plan will allow the Subject Borrowers to realize sustainable balance sheets that meet the future operating prospects of the Subject Borrowers and to continue their businesses in the ordinary course.  The Plan provides for the payment of all General Unsecured Claims.

In connection with developing the Plan, the Subject Borrowers negotiated over a period of many months with the Holders of Secured Claims in order to craft terms that would protect the interests of the Holders of Secured Claims while also permitting a viable financial structure for the Subject Borrowers. As a result, the Subject Borrowers and the Holders of Secured Claims entered into the Loan Modification Term Sheet that, among other things, extends the maturity dates for the Subject Borrowers' loan obligations and waives certain existing defaults with respect to such obligations. The Subject Borrowers intend to seek Court approval of the Loan Modification Term Sheet in the near future. The terms of the Loan Modification Term Sheet, moreover, are reflected in the Plan. The Loan Modification Term Sheet remains subject to all of the terms and conditions set forth therein including, without limitation, the Holders of Secured Claims' receipt of internal credit approval.

**B.**     **OVERVIEW OF CHAPTER 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for similarly situated creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the bankruptcy petition date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession."

Consummating a plan is the principal objective of a chapter 11 case. The Bankruptcy Court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code. Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

Prior to soliciting acceptances of a proposed chapter 11 plan, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the chapter 11 plan. This Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code.

**C.**     **SUMMARY OF CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS AND EQUITY INTERESTS UNDER THE PLAN**

**THE FOLLOWING CHART IS A SUMMARY OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS AND THE POTENTIAL DISTRIBUTIONS UNDER THE PLAN. THE AMOUNTS SET FORTH BELOW ARE ESTIMATES ONLY. ANY ESTIMATES OF CLAIMS OR EQUITY INTERESTS IN THIS DISCLOSURE STATEMENT MAY VARY FROM THE FINAL AMOUNTS ALLOWED BY THE BANKRUPTCY COURT. AS A RESULT OF THE FOREGOING AND OTHER UNCERTAINTIES WHICH ARE INHERENT IN THE ESTIMATES, THE ESTIMATED RECOVERIES IN THIS DISCLOSURE STATEMENT MAY VARY FROM THE ACTUAL RECOVERIES RECEIVED. IN ADDITION, THE ABILITY TO RECEIVE DISTRIBUTIONS UNDER THE PLAN DEPENDS UPON THE ABILITY OF THE SUBJECT BORROWERS TO OBTAIN CONFIRMATION OF THE PLAN AND MEET THE CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN, AS DISCUSSED IN THIS DISCLOSURE STATEMENT. THE RECOVERIES SET FORTH BELOW ARE PROJECTED RECOVERIES ONLY AND MAY CHANGE BASED UPON CHANGES IN THE AMOUNT OF ALLOWED CLAIMS AS WELL AS OTHER FACTORS RELATED TO THE SUBJECT BORROWERS' BUSINESS OPERATIONS AND GENERAL ECONOMIC CONDITIONS. REFERENCE SHOULD BE MADE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN FOR A COMPLETE DESCRIPTION OF THE CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS AGAINST AND EQUITY INTERESTS IN THE SUBJECT BORROWERS.**

## SUMMARY OF EXPECTED RECOVERIES

| Class | Type of Claim or Equity Interest | Treatment of Claim/Equity Interest | Projected Recovery Under the Plan |
|---|---|---|---|
| A-2 | General Unsecured Claims against Brier Creek Medical Associates Two, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter**.** | 100% |
| A-4 | Equity Interests in Brier Creek Medical Associates Two, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| B-2 | General Unsecured Claims against Brier Creek Medical Associates, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| B-4 | Equity Interests in Brier Creek Medical Associates, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| C-1 | Secured Claims against Brier Creek Medical Partners Two, LLC | Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein.  If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling. | 100% |
| C-2 | General Unsecured Claims against Brier Creek Medical Partners Two, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| C-3 | Intercompany Claims against Brier Creek Medical Partners Two, LLC | Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter. | 100% |
| C-4 | Equity Interests in Brier Creek Medical Partners Two, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |

5

## SUMMARY OF EXPECTED RECOVERIES

| Class | Type of Claim or Equity Interest | Treatment of Claim/Equity Interest | Projected Recovery Under the Plan |
|---|---|---|---|
| D-1 | Secured Claims against Brier Creek Medical Partners, LLC | Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein. If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling. | 100% |
| D-2 | General Unsecured Claims against Brier Creek Medical Partners, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| D-3 | Intercompany Claims against Brier Creek Medical Partners, LLC | Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter. | 100% |
| D-4 | Equity Interests in Brier Creek Medical Partners, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| E-1 | Secured Claims against Brownsburg Station Partners, LLC | Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein. If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling. | 100% |
| E-2 | General Unsecured Claims against Brownsburg Station Partners, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| E-3 | Intercompany Claims against Brownsburg Station Partners, LLC | Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter. | 100% |
| E-4 | Equity Interests in Brownsburg Station Partners, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |

## SUMMARY OF EXPECTED RECOVERIES

| Class | Type of Claim or Equity Interest | Treatment of Claim/Equity Interest | Projected Recovery Under the Plan |
|---|---|---|---|
| F-1 | Secured Claims against MCP Partners Three, LLC | Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein. If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling. | 100% |
| F-2 | General Unsecured Claims against MCP Partners Three, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| F-3 | Intercompany Claims against MCP Partners Three, LLC | Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter. | 100% |
| F-4 | Equity Interests in MCP Partners Three, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| G-2 | General Unsecured Claims against Meridian Medical Associates Two, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| G-4 | Equity Interests in Meridian Medical Associates Two, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| H-1 | Secured Claims against Meridian Medical Partners Two, LLC | Each holder of an Allowed Secured Claim shall be treated as set forth on Exhibit B attached to the Plan, and all terms in Exhibit B are incorporated by reference herein. If any inconsistency exists between the terms and provisions of Exhibit B and those of any part of the Plan, then the terms and provisions of Exhibit B shall be controlling. | 100% |
| H-2 | General Unsecured Claims against Meridian Medical Partners Two, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| H-3 | Intercompany Claims against Meridian Medical Partners Two, LLC | Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter. | 100% |

## SUMMARY OF EXPECTED RECOVERIES

| Class | Type of Claim or Equity Interest | Treatment of Claim/Equity Interest | Projected Recovery Under the Plan |
|---|---|---|---|
| H-4 | Equity Interests in Meridian Medical Partners Two, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| I-2 | General Unsecured Claims against Middleburg Heights Medical Associates, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| I-4 | Equity Interests in Middleburg Heights Medical Associates, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| J-1 | Secured Claims against Middleburg Heights Medical Partners, LLC | Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein. If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling. | 100% |
| J-2 | General Unsecured Claims against Middleburg Heights Medical Partners, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| J-3 | Intercompany Claims against Middleburg Heights Medical Partners, LLC | Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter. | 100% |
| J-4 | Equity Interests in Middleburg Heights Medical Partners, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| K-1 | Secured Claims against Moores Chapel Partners, LLC | Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein. If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling. | 100% |
| K-2 | General Unsecured Claims against Moores Chapel Partners, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |

## SUMMARY OF EXPECTED RECOVERIES

| Class | Type of Claim or Equity Interest | Treatment of Claim/Equity Interest | Projected Recovery Under the Plan |
|-------|----------------------------------|-----------------------------------|------------------------------------|
| K-3 | Intercompany Claims against Moores Chapel Partners, LLC | Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter. | 100% |
| K-4 | Equity Interests in Moores Chapel Partners, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| L-2 | General Unsecured Claims against Virginia Beach Medical Associates, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| L-4 | Equity Interests in Virginia Beach Medical Associates, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |
| M-1 | Secured Claims against Virginia Beach Medical Partners, LLC | Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein. If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling. | 100% |
| M-2 | General Unsecured Claims against Virginia Beach Medical Partners, LLC | Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter. | 100% |
| M-3 | Intercompany Claims against Virginia Beach Medical Partners, LLC | Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter. | 100% |
| M-4 | Equity Interests in Virginia Beach Medical Partners, LLC | On the Effective Date, all Class 4 Equity Interests shall be reinstated and remain unaltered. | 100% |

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the foregoing classification (as set forth in Article II of the Plan).

## D.    ENTITIES ENTITLED TO VOTE ON THE PLAN

Under the Bankruptcy Code, not all holders of claims against and equity interests in a debtor are entitled to vote on a chapter 11 plan. Holders of Claims that are Unimpaired by the Plan are deemed to accept the Plan under section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote on the Plan.

The Classes of Claims and Equity Interests classify Claims and Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or an Equity Interest to be classified in a particular Class only to the extent that the Claim or the Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim or Equity Interest qualifies within the description of a different Class.

## SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| A-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| A-4 | Equity Interests | Unimpaired | Deemed to Accept |
| B-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| B-4 | Equity Interests | Unimpaired | Deemed to Accept |
| C-1 | Secured Claims | Impaired | Entitled to Vote |
| C-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| C-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| C-4 | Equity Interests | Unimpaired | Deemed to Accept |
| D-1 | Secured Claims | Impaired | Entitled to Vote |
| D-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| D-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| D-4 | Equity Interests | Unimpaired | Deemed to Accept |
| E-1 | Secured Claims | Impaired | Entitled to Vote |
| E-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| E-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| E-4 | Equity Interests | Unimpaired | Deemed to Accept |
| F-1 | Secured Claims | Impaired | Entitled to Vote |
| F-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| F-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| F-4 | Equity Interests | Unimpaired | Deemed to Accept |
| G-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| G-4 | Equity Interests | Unimpaired | Deemed to Accept |
| H-1 | Secured Claims | Impaired | Entitled to Vote |
| H-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |

**SUMMARY OF STATUS AND VOTING RIGHTS**

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| H-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| H-4 | Equity Interests | Unimpaired | Deemed to Accept |
| I-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| I-4 | Equity Interests | Unimpaired | Deemed to Accept |
| J-1 | Secured Claims | Impaired | Entitled to Vote |
| J-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| J-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| J-4 | Equity Interests | Unimpaired | Deemed to Accept |
| K-1 | Secured Claims | Impaired | Entitled to Vote |
| K-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| K-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| K-4 | Equity Interests | Unimpaired | Deemed to Accept |
| L-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| L-4 | Equity Interests | Unimpaired | Deemed to Accept |
| M-1 | Secured Claims | Impaired | Entitled to Vote |
| M-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| M-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| M-4 | Equity Interests | Unimpaired | Deemed to Accept |

The following sets forth the Classes that are entitled to vote on the Plan and the Classes that are not entitled to vote on the Plan:

- The Subject Borrowers **ARE** soliciting votes to accept or reject the Plan from Holders of Claims in Class C-1, D-1, E-1, F-1, H-1, J-1, K-1 and M-1 (the "Voting Classes"), because Allowed Claims in the Voting Classes are Impaired under the Plan and are expected to receive distributions under the Plan. Accordingly, Holders of Allowed Claims in the Voting Classes have the right to vote to accept or reject the Plan.

- The Subject Borrowers are **NOT** seeking votes from the Holders of General Unsecured Claims in Classes A-2, B-2, C-2, D-2, E-2, F-2, G-2, H-2, I-2, J-2, K-2, L-2 and M-2 because those Class, and the Claims of any Holders in those Class, are Unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Classes A-2, B-2, C-2, D-2, E-2, F-2, G-2, H-2, I-2, J-2, K-2, L-2 and M-2 are deemed to have accepted the Plan.

- The Subject Borrowers are **NOT** seeking votes from the Holders of Intercompany Claims in Classes C-3, D-3, E-3, F-3, H-3, J-3, K-3 and M-3 because those Classes, and the Claims of any Holders in those Classes, are Unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Classes C-3, D-3, E-3, F-3, H-3, J-3, K-3 and M-3 are deemed to have accepted the Plan.

- The Subject Borrowers are **NOT** seeking votes from the Holders of Equity Interests in Classes A-4, B-4, C-4, D-4, E-4, F-4, G-4, H-4, I-4, J-4, K-4, L-4 and M-4 because those Classes, and the Claims of any Holders in those Classes, are Unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Classes A-4, B-4, C-4, D-4, E-4, F-4, G-4, H-4, I-4, J-4, K-4, L-4 and M-4 are deemed to have accepted the Plan.

For a detailed description of the Classes of Claims and the Classes of Equity Interests, as well as their respective treatment under the Plan, please refer to Article III of the Plan.

## E.    SOLICITATION PROCESS

### 1.    Solicitation Agent

The Subject Borrowers will act as the solicitation agent in connection with the solicitation of votes to accept or reject the Plan (the "Solicitation Agent").

### 2.    Solicitation Package

Holders of Claims in each Class will receive certain documents and materials regarding the solicitation of votes to accept or reject the Plan (collectively, the "Solicitation Package"). The Solicitation Package for Holders of Claims in the Voting Classes will contain copies of the Disclosure Statement Order (with the Solicitation Procedures attached as **Exhibit 1** thereto), the preliminarily approved form of this Disclosure Statement (together with the Plan), the Disclosure Statement and Confirmation Hearing Notice, a cover letter from the Subject Borrowers, substantially in the form of the **Exhibit F** attached to the Motion, and such other materials as the Court may direct. Holders of Claims (other than Secured Claims) and Equity Interests will receive copies of the Non-Voting Status Notice, the Disclosure Statement and Confirmation Hearing Notice and such other materials as the Court may direct.

## F.    VOTING PROCEDURES

### 1.    Record Date

**The Record Date is February 22, 2010.** The Record Date is the date on which the following will be determined: (a) which Holders of Claims are entitled to vote to accept or reject the Plan and receive the Solicitation Package in accordance with the Solicitation Procedures; and (b) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of a Claim.

### 2.    Voting Deadline

**The Voting Deadline shall be at 5:00 p.m. prevailing Eastern Time on March 22, 2010.** To be counted as votes to accept or reject the Plan, all Ballots, as applicable, must be properly executed, completed and delivered according to their applicable ballot instructions by: (a) first class mail as directed on each Ballot; (b) overnight courier; or (c) personal delivery, so that they are **actually received** no later than the Voting Deadline by the Solicitation Agent. The Ballots will clearly indicate the appropriate return address. Ballots should be sent to:

<div style="border:1px solid black; padding:10px;">

**BALLOTS**

---

Ballots must be **actually received** by the Solicitation Agent by the Voting Deadline, by using the envelope provided to:

Kirkland & Ellis, LLP
300 North LaSalle Drive
Chicago, Illinois 60654
Attn: Ross M. Kwasteniet and Arun Kurichety

If you have any questions on the procedures for voting on the Plan, please contact Counsel to the Subject Borrowers at the address set forth above.

</div>

**IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED UNLESS THE SUBJECT BORROWERS DETERMINE OTHERWISE.**

ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM, BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR ANY BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN, WILL NOT BE COUNTED.

EACH HOLDER OF A CLAIM MUST VOTE ALL OF ITS CLAIMS WITHIN A PARTICULAR CLASS EITHER TO ACCEPT OR REJECT THE PLAN AND MAY NOT SPLIT SUCH VOTES. BY SIGNING AND RETURNING A BALLOT, EACH HOLDER OF A CLAIM WILL CERTIFY TO THE BANKRUPTCY COURT AND THE SUBJECT BORROWERS THAT NO OTHER BALLOTS WITH RESPECT TO SUCH CLAIM HAVE BEEN CAST OR, IF ANY OTHER BALLOTS HAVE BEEN CAST WITH RESPECT TO SUCH CLASS OF CLAIMS, SUCH OTHER BALLOTS INDICATED THE SAME VOTE TO ACCEPT OR REJECT THE PLAN.

IT IS IMPORTANT TO FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON EACH BALLOT WHEN SUBMITTING A VOTE.

FOR FURTHER INFORMATION AND INSTRUCTIONS ON VOTING TO ACCEPT OR REJECT THE PLAN, SEE SECTION VI, HEREOF ENTITLED "SOLICITATION AND VOTING PROCEDURES."

**G.      DISCLOSURE STATEMENT AND CONFIRMATION HEARING**

Section 1128(a) of the Bankruptcy Code requires the bankruptcy court, after notice, to hold a hearing on confirmation of a plan filed under chapter 11 of the Bankruptcy Code. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the plan. Section 1125(b) of the Bankruptcy Code requires the bankruptcy court, after notice and a hearing, to approve a disclosure statement as containing "adequate information." The hearing requirements of sections 1128 and 1125 with respect to the Plan and Disclosure Statement will be satisfied at a single joint Disclosure Statement and Confirmation Hearing.

**1.      Disclosure Statement and Confirmation Hearing Date**

**The Disclosure Statement and Confirmation Hearing will commence on March 26, 2010 at [X:XX a.m./p.m.] prevailing Eastern Time**, before the Honorable Basil H. Lorch III, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Indiana, [Room 310 of the United States Courthouse, 46 E. Ohio Street, Indianapolis, IN 46204]. The Disclosure Statement and Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court at the Disclosure Statement and Confirmation Hearing or at any subsequent adjourned Disclosure Statement and Confirmation Hearing. The Bankruptcy Court, in its discretion and prior to the Disclosure Statement and

13

Confirmation Hearing, may put in place additional procedures governing the Disclosure Statement and Confirmation Hearing. The Plan may be modified, if necessary, prior to, during, or as a result of the Disclosure Statement and Confirmation Hearing, without further notice to parties in interest.

2.      **Disclosure Statement and Plan Objection Deadline**

**The Disclosure Statement and Plan Objection Deadline is March 22, 2010 at 5:00 p.m. prevailing Eastern Time**. All Disclosure Statement and Plan Objections must be filed with the Bankruptcy Court and served on the Subject Borrowers and certain other parties in accordance with the Disclosure Statement Order on or before the Disclosure Statement and Plan Objection Deadline. In accordance with the Disclosure Statement and Confirmation Hearing Notice filed with the Bankruptcy Court, Plan Objections or requests for modifications to the Plan, if any, must:

- be in writing;

- conform to the Bankruptcy Rules and the Local Bankruptcy Rules;

- state the name and address of the objecting Entity and the amount and nature of the Claim or Equity Interest of such Entity;

- state with particularity the basis and nature of the Plan Objection and, if practicable, a proposed modification to the Plan that would resolve such Plan Objection; and

- be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** by the notice parties identified in the Disclosure Statement and Confirmation Hearing Notice on or prior to the Plan Objection Deadline.

The Subject Borrowers' proposed schedule will provide Entities sufficient notice of the Disclosure Statement and Plan Objection Deadline, as required by Bankruptcy Rule 2002(b). The Subject Borrowers believe that the Disclosure Statement and Plan Objection Deadline will afford the Bankruptcy Court, the Subject Borrowers and other parties in interest reasonable time to consider the Disclosure Statement and Plan Objections prior to the Disclosure Statement and Confirmation Hearing.

> **THE BANKRUPTCY COURT WILL NOT CONSIDER DISCLOSURE STATEMENT AND PLAN OBJECTIONS UNLESS THEY ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.**

**H.      CONFIRMATION AND CONSUMMATION OF THE PLAN**

It will be a condition to Confirmation of the Plan that all provisions, terms and conditions of the Plan are approved in the Confirmation Order unless otherwise satisfied or waived pursuant to the provisions of Article IX.C of the Plan. Following Confirmation, the Plan will be consummated on the Effective Date.

**I.      RISK FACTORS**

**PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN SECTION VIII HEREIN ENTITLED, "PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN."**

## II.    BACKGROUND TO THESE CHAPTER 11 CASES

### A.    OVERVIEW OF THE DEBTORS' AND SUBJECT BORROWERS' BUSINESSES

#### 1.    Summary of the Debtors' and Subject Borrowers' Businesses

The Subject Borrowers, along with their debtor and non-debtor affiliates (collectively, "Lauth" or the "Company") are privately-held limited liability companies managing commercial properties for use in office, industrial, healthcare and retail applications in the United States.  LIP Investment, LLC, a Delaware limited liability company, is a holding company for all of the Subject Borrowers and certain non-Debtor affiliates.  The Company is one of the largest commercial real estate development companies in the country and, as of 2008, was ranked as the 13th largest real estate developer in the United States as well as one of the top 100 contractors in the country.  The Company is currently developing or managing approximately 42 vertical projects and 21 land parcels over approximately 80 separate subsidiaries (each a "Project," and collectively, the "Project Entities") spread across 35 states.  Currently, the Company employs approximately 37 employees, none of which are represented by a labor union.

The Company has completed many high-profile projects including some of the nation's most innovative corporate headquarters, healthcare facilities, national distribution centers and lifestyle retail centers.  The Company is vertically integrated and offers a variety of services to its customers, including planning, design, construction, feasibility analysis, financing, property management, environmental services and project recovery through its ProjectRescue Services offering.

The Company also provides services that cover every aspect of the construction of a Project from beginning to end, including conceptual and project cost estimating, sub-contractor qualification and selection, value engineering, permit procurement, local code compliance, bidding and contract negotiation, job site safety, sequencing and scheduling, cost control and accountability, quality assurance and punch-list and warranty follow-up.  In connection with each Project, the Company assigns a project executive to provide overall direction to the Project team, ensure all costs and schedules are met, monitor productivity and quality and make sure the right sub-contractors are in place.  The Company's design-build process provides a competitive advantage by combining master planners, architects, engineers, site analysis experts, cost estimators, and construction experts into one team, under one contract.  The Company also allows customers to track the progress of its Projects through ProjectLink™, its web-based project management system and ProjectView™, its proprietary software for viewing real-time project images.

In addition, the Company provides Project management services once construction has been substantially completed.  The Company works closely with building owners to create plans that achieve cost efficiencies and improve tenant retention.  The Company's property management advantages include:

- expertise in office, industrial, retail and healthcare property management;

- established relationships with both local and national service providers and contractors;

- a team approach to executing ownership, investor and partnership strategies;

- operational benchmarking which focuses on the tracking and executing of efficiently run assets;

- a focused approach to financial reporting, asset planning, budgeting and analysis; and

- exemplary levels of customer and tenant service and relations.

As of the petition dates, the Subject Borrowers had the following total assets, total liabilities and net revenues:

| Subject Borrower | Total Assets | Total Liabilities[3] | Net Revenue |
|---|---|---|---|
| Brier Creek Medical Partners, LLC | $10,354,159 | $10,365,218 | $768,665 |
| Brier Creek Medical Partners Two, LLC | $7,710,703 | $7,858,792 | $42,206 |
| Brownsburg Station Partners, LLC | $13,061,235 | $19,373,672 | $399,040 |
| MCP Partners Three, LLC | $19,088,856 | $16,485,905 | $1,447,377 |
| Meridian Medical Partners Two, LLC | $9,700,741 | $9,996,590 | $23,552 |
| Middleburg Heights Medical Partners, LLC | $6,967,257 | $10,821,407 | - |
| Moores Chapel Partners, LLC | $7,594,625 | $8,954,504 | $279,767 |
| Virginia Beach Medical Partners, LLC | $14,634,138 | $12,455,727 | $1,452,150 |

## 2. Overview of the Subject Borrowers

As discussed above, the Debtors are currently involved in the development, construction and management of numerous Projects which can be divided into a variety of categories. Among them are the Subject Borrowers, which are described in the table below:

| Subject Borrower | Project Category | Square Feet | % Occupied |
|---|---|---|---|
| Brier Creek Medical Partners Two LLC | Medical Office | 51,170 | 8.2% |
| Brier Creek Medical Partners, LLC | Medical Office | 60,074 | 74% |
| Brownsburg Station Partners, LLC | Retail | 41,662 | 71.6% |
| MCP Partners Three, LLC | Office | 135,292 | 87.8% |
| Meridian Medical Partners Two, LLC | Medical Office | 84,054 | 1.9% |
| Middleburg Heights Medical Partners, LLC | Medical Office | 73,284 | 0.0% |
| Moores Chapel Partners, LLC | Retail | 52,445 | 71.2% |
| Virginia Beach Medical Partners, LLC | Medical Office | 84,478 | 79.9% |

## 3. Corporate History

The Company was founded in 1977 as a small Indianapolis property manager known as Ernst-Eaton & Associates, Inc. In 1982, Robert L. Lauth, Jr. joined the Company and began to expand its line of services to include office, industry, and healthcare development and formed Lauth Construction, which is now licensed as a general contractor in 49 states. In the early 1980's, the Company grew beyond its retail property management portfolio to become a fully integrated property developer of high-end retail, office, industrial and healthcare industry properties. The Company later added a commercial brokerage division to its business. In the early 1990s, the Company decided to shed its brokerage and instead focus almost exclusively on its development and construction business. In 1992, the Company obtained its first out-of-state development project in Orlando, Florida. In the ensuing fifteen years, the Company expanded to assume a national footprint — as of the petition date, the Company owns and/or manages projects in 35 states.

More recently, the Company's revenue growth matched its geographic expansion. The Company's gross revenues doubled in 2004 and again in 2005, with gross revenues increasing to $591 million annually by 2006. By 2006, the Company's size and complexity had grown to a point where it required a more refined corporate structure. At the same time, equity and debt investors were clamoring for the opportunity to participate in the profits. As a result, the Company engaged in a corporate reorganization that would allow it to accommodate and put to use new capital infusions. The resulting structure took the form of a traditional corporate tree. Lauth Investment Properties,

---

3    Total Liabilities include loan balances outstanding as of the petition dates.

Inc. was left as the top-level holding company and a number of mid-level holding companies were created to provide platforms to support structured debt, and the Company's various developments, the Project Entities, were placed in individual special purpose entities holding debt secured by the entity's development projects.

In conjunction with its strategic reorganization, the Company engaged in extensive negotiations with a wide variety of potential investors. In 2007, after analyzing competing offers and extensive negotiations, the Company entered into a complex preferred equity investment arrangement with Inland American Real Estate Trust, Inc. ("Inland") that made up to $250 million in capital available for use in developing new projects as part of the Company's national strategy (the "Preferred Equity Investment"). Eighteen of the Company's pre-existing building projects, including the Subject Borrowers, and thirteen parcels of land, with an estimated cost of $391 million and an estimated equity value of $88 million were contributed to LIP Investment, LLC. In addition, eight of the Company's pre-existing building projects, with an estimated cost of $120 million and an estimated equity value of $32 million were contributed to LIP Holdings, LLC, an entity created by an affiliate of Inland and Lauth Investment Properties, LLC to facilitate the Preferred Equity Investment.

### 4.    Clients

The Subject Borrowers' clients include, among others, physicians, primary care centers, surgery centers, medical associations, restaurants and retail chains, including household names such as Lowe's Home Centers, Kohl's and Claire's Boutiques

### 5.    Government Regulation

The Company and the Subject Borrowers are subject to certain United States federal, state and local provincial safety, labor, zoning and environmental laws and regulations regarding the construction of various Projects. In the ordinary course of business, the Company requires permits and other authorizations from various local authorities to conduct its operations. In addition, the Environmental Protection Agency (the "EPA") and similar state and local agencies may regulate the Company's operations and activities, including, but not limited to, construction materials and associated waste. The Subject Borrowers do not anticipate that future expenditures for compliance with such laws and regulations will have a material adverse effect on the Subject Borrowers' financial positions, results of operations or competitive positions. The Subject Borrowers cannot give any assurance, however, that compliance with such laws and regulations, or compliance with other laws and regulations that may be enacted in the future, will not have an adverse effect on the Subject Borrowers' financial positions, results of operations or competitive positions.

### 6.    Directors, Executive Officers and Management Team

As of the date hereof, set forth below are the executive officers of the Company and each officer's position therein.

| Name | Position |
| --- | --- |
| Robert L. Lauth, Jr. | Chairman & Chief Executive Officer, Lauth Group, Inc. |
| Gregory C. Gurnik | Vice Chairman, Lauth Group, Inc. |
| Michael S. Curless | President, Lauth Group, Inc. |
| Larry B. Palmer | Treasurer & Chief Accounting Officer, Lauth Group, Inc. |
| Vernon C. Back | Executive Vice President, Lauth Group, Inc. |

Set forth below is a brief description of the business experience of the executive officers listed above.

*Robert L. Lauth, Jr., Chairman & Chief Executive Officer, Lauth Group, Inc.* Mr. Lauth joined the Company in 1982 and has served as Lauth Group, Inc.'s Chairman & Chief Executive Officer since 1995.

Mr. Lauth began his career as a sales associate at F.C. Tucker Company before spending ten years at an Indianapolis based full-service commercial real estate firm where he served as Executive Vice President.  Mr. Lauth has 37 years of experience in virtually all aspects of the commercial real estate industry.  He earned a degree in Computer Technology from Purdue University.

*Gregory C. Gurnik, Vice Chairman, Lauth Group, Inc*.  Mr. Gurnik has served as President of Lauth Group, Inc. from 1996 to 2009 and has been with the Company since 1986.  Previously, Mr. Gurnik served as a Vice President at Lee Corporation.  Mr. Gurnik began his career working at A.M. Higley building a nuclear power plant outside of Cleveland, Ohio.  Mr. Gurnik earned his bachelor's degree in civil engineering from Purdue University and has 33 years of real estate and construction experience.

*Michael S. Curless, President, Lauth Group, Inc*.  Mr. Curless joined the Company in 2000 as Executive Vice President and was promoted to President in 2009.  Prior to joining Lauth, Mr. Curless served as Marketing Director at Trammell Crow Company, a financial analyst with General Electric and First Vice President at ProLogis Trust, the world's largest owner and developer of distribution space.  Mr. Curless obtained his undergraduate and Masters of Business Administration degrees from Indiana University and has 20 years of real estate experience.

*Larry B. Palmer, Treasurer & Chief Accounting Officer, Lauth Group, Inc*.  Mr. Palmer joined the Company in 1988 as Chief Financial Officer, a post he held until 2005 when he took his current position as Treasurer and Chief Accounting Officer.  Previously, Mr. Palmer served as Vice President of Community Hospitals of Indiana.  Prior to that, Mr. Palmer was an auditor and Tax Supervisor at Ernst & Young.  Mr. Palmer earned a degree in math and business from Ball State University, is a Certified Public Accountant and has 21 years of industry experience.

*Vernon C. Back, Executive Vice President, Lauth Group, Inc.*  Mr. Back provides executive oversight of the Company's day-to-day operations and reviews ongoing financial matters of the Company.  Prior to joining the Company, Mr. Back was Senior Counsel for Thompson Inc., a worldwide consumer products and services company, responsible for mergers, acquisitions, venture capital investments, business development and strategic collaboration. Prior thereto, Mr. Back was an attorney for Eli Lilly and Company supporting Information Technology, e-commerce and the eLilly Venture Capital Fund.  In addition, Mr. Back also was in the Lilly Environmental, Health and Safety Legal Group.  Prior thereto, as an attorney with Krieg DeVault LLP, Mr. Back concentrated his legal practice in general corporate matters, mergers and acquisitions securities law, corporate finance and financial institutions.  Prior to law school, Mr. Back, as a Certified Public Accountant, served at Arthur Andersen as a Senior Accountant.

### 7.      Other Matters

Certain of the Company's current and former officers personally guarantee debt related to certain of the Subject Borrowers.  Pursuant to certain contribution agreements that, in effect, formed the Original Debtors, LIP Investment, LLC assumed all such personal guarantee obligations.

## B.      DEBT AND CAPITAL STRUCTURE OF THE SUBJECT BORROWERS

### 1.      Summary of Prepetition Indebtedness

As of the petition date, the Subject Borrowers were parties to certain loans, secured by the respective commercial properties of each such borrower, with Wells Fargo Bank, National Association ("Wells Fargo") and Wachovia Bank, National Association ("Wachovia").

The Subject Borrowers who were parties to loan agreements with Wells Fargo are:

a)      Brownsburg Station Partners, LLC, under that certain Loan Agreement dated November 8, 2006 in the original principal amount of approximately $31.3 million. As of the petition date, the outstanding principal amount due was approximately $16.8 million.

b)      MCP Partners Three, LLC, under that certain Loan Agreement dated June 27, 2006 in the original principal amount of approximately $18.9 million. As of the petition date, the outstanding principal amount due was approximately $15.6 million.

c)      Meridian Medical Partners Two, LLC, under that certain Loan Agreement dated January 24, 2007 in the original principal amount of approximately $16.0 million. As of the petition date, the outstanding principal amount due was approximately $8.8 million.

d)      Middleburg Heights Medical Partners, LLC, under that certain Loan Agreement dated October 10, 2006 in the original principal amount of approximately $12.8 million. As of the petition date, the outstanding principal amount due was approximately $9.6 million.

e)      Virginia Beach Medical Partners, LLC, under that certain Loan Agreement dated February 2, 2006 in the original principal amount of $13.8 million. As of the petition date, the outstanding principal amount due was approximately $11.5 million

As of the petition dates, the total principal amount of the prepetition secured indebtedness of the Subject Borrowers owed to Wells Fargo was approximately $62.3 million.

The Subject Borrowers who were parties to loan agreements with Wachovia are:

a)      Brier Creek Medical Partners, LLC, under that certain Construction Loan Agreement, as modified, originally dated June 21, 2006 in the original principal amount of approximately $10.5 million. As of the petition date, the outstanding principal amount due was approximately $10.1 million.

b)      Brier Creek Medical Partners Two, LLC, under that certain Construction Loan Agreement dated October 13, 2006 in the original principal amount of approximately $10.4 million. As of the petition date, the outstanding principal amount due was $7.1 million.

c)      Moores Chapel Partners, LLC, under that certain Construction Loan Agreement, as modified, originally dated June 2, 2006, in the original principal amount of $8.5 million. As of the petition date, the outstanding principal amount due was $7.5 million.

The total principal amount of the prepetition secured indebtedness of the Subject Borrowers owed to Wachovia was approximately $24.7 million.

The Subject Borrowers do not dispute any of the Secured Claims and have agreed to stipulate to the validity, first lien priority and amount of such Claims, in the full amounts set forth in the Loan Modification Term Sheet and to permit such Claims to be the Allowed Lenders' Claims, as such term is defined herein and in the Plan.

2.      **Pre-Petition Equity**

The Subject Borrowers are majority or wholly-owned, direct or indirect subsidiaries of LIP Investment, LLC. A depiction of the ownership and debt structure of the Subject Borrowers as of the petition date is attached hereto as **Exhibit C**.

## III.   EVENTS LEADING UP TO CHAPTER 11 CASES

### A.   REASONS FOR FINANCIAL DISTRESS

The Subject Borrowers find themselves in their current circumstances as a result of a series of unprecedented events arising in the real estate financial market.  Beginning in 2007, the U.S. capital market deteriorated significantly due to rising sub-prime residential mortgage defaults and the deterioration in value of certain residential mortgage-backed securities.  The failures of Fannie Mae and Freddie Mac, followed by the government rescue of AIG and the bankruptcy of Lehman Brothers on September 15, 2008, brought the commercial real estate finance markets to a virtual shutdown that was not anticipated by even the most senior economists.

Despite its well-established portfolio and sound management, the Company was not immune to this credit crisis.  The secured lenders for the Project Entities began demanding lower debt-to-equity ratios on many of the respective outstanding credit facilities.  This forced LIP Development, LLC to borrow more heavily against a Mezzanine Loan from LIP Holdings, LLC (the "Mezzanine Loan") to lower the Project Entities' loan balances, which, in turn, increased LIP Development, LLC's interest obligations under the Mezzanine Loan.  The Company then saw its sales of developed real estate stop as businesses cut back their expansion plans, leading to a reduction in demand for the Company's new developments.

Eventually, LIP Development, LLC was unable to make its interest payment on the Mezzanine Loan.  As a result, on December 31, 2008, rather than paying the entire interest payment to LIP Holdings, LLC on the Mezzanine Loan, LIP Development, LLC was only able to pay a potion of the interest expense, triggering an Event of Default under the Mezzanine Loan in January 2009.  At the time of the Event of Default, LIP Holdings, LLC, the entity co-managed by the Company and Inland, took no action under the Mezzanine Loan and did not declare a default.  Instead, initially, the Company and Inland attempted to weather the economic downturn and preserve the value of the Project Entities by obtaining additional funding for the Debtors through loans from LIP Development, LLC and the Company's principals and by negotiating concessions with the respective lenders for the Project Entities.

In August 2009, Wachovia initiated a state foreclosure action against Moores Chapel Partners, LLC, one of the Subject Borrowers.  To forestall such action, the Company was forced to file a chapter 11 petition on behalf of Moores Chapel Partners, LLC.  Anticipating further foreclosure and/or receivership actions by Wells Fargo and Wachovia, the Company filed chapter 11 petitions on behalf of the other Subject Borrowers.

### B.   DESCRIPTION OF PREPETITION RESTRUCTURING EFFORTS

Beginning in November 2008, the Company attempted to restructure its operations and the loans for each of the Project Entities to reduce the burden of such loan payments on the Company's cash flow outside of bankruptcy.  Specifically, the Company transformed from a buy/develop/lease/sell business model with respect to the Project Entities to an almost purely leasing and asset management-based business model.  In connection with this shift, the Company reduced its employee headcount by over approximately 90% and significantly cut other costs.  Ultimately, the Company was unable to reduce the respective Project Entity's loan payments by a sufficient amount.  This resulting strain on liquidity coupled with the disruption and confusion caused by Inland as described above, forced the Debtors to file for emergency bankruptcy protection on the petition date.

In April 2009, the Company retained AlixPartners, LLP ("Alix") as its restructuring advisor to assist the Company's management in its restructuring efforts and initiatives.  Specifically, since the respective petition dates, Alix has assisted the Company in (a) stabilizing operations, (b) meeting bankruptcy related reporting requirements including, but not limited to, filing monthly operating reports, (c) conducting the postpetition financing marketing process and closing on such financing and (d) negotiating settlements with the respective Project Entity lenders.

## IV.    CHAPTER 11 CASES OF THE SUBJECT BORROWERS

### A.    INITIAL MOTIONS AND ORDERS

Soon after their petition date, the Original Debtors filed a number of motions and applications (collectively, the "Initial Motions") seeking certain emergency relief.  The purpose of such Initial Motions was to ensure that the Debtors were able to transition into the chapter 11 process with as little disruption to their business as possible and to function smoothly while their chapter 11 cases are pending.  Within a few days of the petition date, the Bankruptcy Court entered several orders (the "Initial Orders"), to, among other things: (i) continue use of the Debtors' existing cash management system, bank accounts and business forms; (ii) grant the use of cash collateral; and (iii) enforce the automatic stay.  Certain Initial Orders were made applicable to the Subject Borrowers' chapter 11 cases pursuant to Bankruptcy Court order on September 16, 2009.

#### 1.    Joint Administration

To facilitate, among other things, noticing, claims processing and voting-related matters, the Bankruptcy Court entered an Initial Order granting certain relief including authorization for the joint administration of the Debtors' in their chapter 11 cases [Docket Nos. 60, 61].

#### 2.    Stabilizing Operations

As more fully described below, since any interruption of the Debtors' businesses, even for a brief period, would negatively impact the Debtors' operations, revenues and profits, soon after the petition date, the Debtors filed a number of Initial Motions to ensure a stabilization of operations.

##### a)    Cash Management System

By this Initial Motion, the Debtors requested entry of an order authorizing the Debtors to continue using their existing cash management system, bank accounts and business forms.  This relief allowed the Subject Borrowers to avoid administrative inefficiencies by maintaining the Debtors' cash management system.  The Bankruptcy Court entered an Initial Order granting the Debtors' request to, among other things, maintain their cash management system [Docket No. 63].

##### b)    Use of Cash Collateral

Soon after their petition date, the Debtors filed a motion requesting interim and final authorization to use cash collateral held by Marshall & Ilsley Bank ("M&I").  Pursuant to Bankruptcy Court order, the Debtors received authority to use such cash collateral and granted adequate protection to M&I.  In addition, soon after their petition dates, the Subject Borrowers filed a motion requesting authority to use cash collateral held by Wells Fargo and Wachovia.  The Bankruptcy Court entered an order authorizing the Subject Borrowers' use of the Wells Fargo and Wachovia cash collateral on September 25, 2009 [Docket No. 544].

### B.    OTHER MOTIONS AND PLEADINGS

In addition to the Initial Motions, the Debtors also filed several other significant motions related to the Debtors' postpetition financing as well as certain retention and procedural motions.

#### 1.    Employment and Compensation of Advisors

To assist the Debtors in carrying out their duties as debtors in possession and to otherwise represent the Debtors' interests in their chapter 11 cases, the Debtors filed motions seeking authorization to retain and employ certain advisors.  The Bankruptcy Court entered orders granting the retention of the following advisors:  (a) Alix as restructuring advisors to the Debtors [Docket No. 267]; (b) Kirkland & Ellis LLP, as general reorganization and bankruptcy counsel to the Debtors [Docket No. 273]; and (c) Taft Stettinuis & Hollister, LLP, as co-counsel to the Debtors [Docket No. 195].

2.      **Motions to Extend Exclusivity**

Under the Bankruptcy Code, a debtor has the exclusive right to file and solicit acceptance of a plan or plans of reorganization or liquidation for an initial period of 120 days from the date on which the debtor filed for voluntary relief. If a debtor files a plan within this exclusive period, then the debtor has the exclusive right for 180 days from the commencement date to solicit acceptances to the plan. During these exclusive periods, no other party in interest may file a competing chapter 11 plan. However, a court may extend these periods "for cause" upon request of a party in interest.

On December 10, 2009, the Subject Borrowers filed a motion seeking to extend their exclusive period to file a plan of reorganization through and including January 31, 2010 and their exclusive period to solicit acceptance of such plan through March 31, 2010 [Docket No. 663]. The Bankruptcy Court granted this motion on November 18, 2009 [Docket No. 707]. On January 22, 2010, the Debtors (including the Subject Borrowers) filed a motion seeking to further extend their exclusive period to file a plan of reorganization through and including March 31, 2010 and their exclusive period to solicit acceptance of such plan through May 31, 2010 [Docket No. 766]. The Bankruptcy Court granted this motion on November 18, 2009 [Docket No. 818].

3.      **Motion to Obtain Postpetition Financing**

On July 21, 2009, the Debtors filed a motion requesting interim and final authorization to enter into a postpetition secured financing facility (the "DIP Facility"). The Bankruptcy Court granted interim and final relief to enter into the DIP Facility [Docket Nos. 427, 621] (collectively, the "DIP Orders"). Pursuant to the DIP Orders, the Debtors received authority to enter into that certain Secured Debtor-In-Possession Credit and Security Agreement, dated as of August 25, 2009, by and between LIP Lender, LLC (the "DIP Lender") and LIP Investment, LLC (as amended, modified, ratified, extended, renewed, restated or replaced, the "DIP Credit Agreement"). Pursuant to the DIP Facility, the DIP Lender agreed to provide a term loan up to an aggregate principal amount of $15,000,000 on a final basis subject to the terms and conditions of the DIP Credit Agreement. The DIP Facility specified that the proceeds from such facility would be used to fund working capital needs and general corporate purposes relating to postpetition operations in accordance with an approved budget.

4.      **Motion to Pay Prepetition Tenant Obligations**

On September 9, 2009, the Debtors filed a motion to honor tenant obligations, authorizing the Debtors to incur additional debt under existing credit facilities and authorizing financial institutions to honor related checks and transfers. The Bankruptcy Court entered an order approving the motion on September 16, 2009. This order allowed the Debtors to satisfy prepetition tenant obligations in the ordinary course of business through cash payments or renegotiating, modifying and/or amending leases. This order also authorized the Debtors to incur additional debt up to the full committed principal amount under their respective credit facilities for any purposes permitted thereunder with the consent of the respective lender.

## V.      SUMMARY OF THE JOINT PLAN[4]

### A.      ADMINISTRATIVE AND PRIORITY CLAIMS

1.      **Administrative Claims**

Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, in full and final satisfaction, settlement, release and discharge of and in exchange for each Administrative Claim, each Holder of such Administrative Claim will be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

---

[4]    The following summary is qualified in its entirety by reference to the Plan. In the event of any inconsistency between the summary provided herein and the Plan, the Plan shall control in all respects.

2.      Priority Tax Claims

Except to the extent that a Holder of a Priority Tax Claim agrees to a less favorable treatment or has been paid by the Subject Borrowers prior to the Effective Date, in full and final satisfaction, settlement, release and discharge of and in exchange for each Priority Tax Claim, each Holder of such Priority Tax Claim will be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

B.      CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

1.      Summary

All Claims and Equity Interests, other than Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in Article III of the Plan for all purposes, including voting, Confirmation and distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes.  A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.   The classification of Claims and Equity Interests against the Subject Borrowers pursuant to the Plan is as follows:

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| A-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| A-4 | Equity Interests | Unimpaired | Deemed to Accept |
| B-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| B-4 | Equity Interests | Unimpaired | Deemed to Accept |
| C-1 | Secured Claims | Impaired | Entitled to Vote |
| C-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| C-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| C-4 | Equity Interests | Unimpaired | Deemed to Accept |
| D-1 | Secured Claims | Impaired | Entitled to Vote |
| D-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| D-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| D-4 | Equity Interests | Unimpaired | Deemed to Accept |
| E-1 | Secured Claims | Impaired | Entitled to Vote |
| E-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| E-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| E-4 | Equity Interests | Unimpaired | Deemed to Accept |

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| F-1 | Secured Claims | Impaired | Entitled to Vote |
| F-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| F-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| F-4 | Equity Interests | Unimpaired | Deemed to Accept |
| G-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| G-4 | Equity Interests | Unimpaired | Deemed to Accept |
| H-1 | Secured Claims | Impaired | Entitled to Vote |
| H-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| H-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| H-4 | Equity Interests | Unimpaired | Deemed to Accept |
| I-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| I-4 | Equity Interests | Unimpaired | Deemed to Accept |
| J-1 | Secured Claims | Impaired | Entitled to Vote |
| J-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| J-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| J-4 | Equity Interests | Unimpaired | Deemed to Accept |
| K-1 | Secured Claims | Impaired | Entitled to Vote |
| K-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| K-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| K-4 | Equity Interests | Unimpaired | Deemed to Accept |
| L-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| L-4 | Equity Interests | Unimpaired | Deemed to Accept |
| M-1 | Secured Claims | Impaired | Entitled to Vote |
| M-2 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| M-3 | Intercompany Claims | Unimpaired | Deemed to Accept |
| M-4 | Equity Interests | Unimpaired | Deemed to Accept |

2.       **Treatment of Claims and Equity Interests.**

   a)      <u>Class A-2 -  General Unsecured Claims against Brier Creek Medical Associates Two, LLC</u>

(i)     *Classification*:  Class A-2 consists of all General Unsecured Claims that may exist against the Brier Creek Medical Associates Two, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)   *Voting*: Class A-2 is Unimpaired, and Holders of Class A-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class A-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

b)      <u>Class A-4 - Equity Interests against Brier Creek Medical Associates Two, LLC</u>

(i)     *Classification*:  Class A-4 consists of all Equity Interests in Brier Creek Medical Associates Two, LLC.

(ii)    *Treatment*:  On the Effective Date, all Class A-4 Equity Interests shall be reinstated and remain unaltered.

(iii)   *Voting*: Class A-4 is Unimpaired, and Holders of Class A-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class A-4 Equity Interests are not entitled to vote to accept or reject the Plan.

c)      <u>Class B-2 -  General Unsecured Claims against Brier Creek Medical Associates Two, LLC</u>

(i)     *Classification*:  Class B-2 consists of all General Unsecured Claims that may exist against Brier Creek Medical Associates, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)   *Voting*:  Class B-2 is Unimpaired, and Holders of Class B-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class B-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

d)      <u>Class B-4 - Equity Interests in Brier Creek Medical Associates Two, LLC</u>

(i)     *Classification*:  Class B-4 consists of all Equity Interests in Brier Creek Medical Associates, LLC.

(ii)    *Treatment*:  On the Effective Date, all Class B-4 Equity Interests shall be reinstated and remain unaltered.

(iii)    *Voting*:  Class B-4 is Unimpaired, and Holders of Class B-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class B-4 Equity Interests are not entitled to vote to accept or reject the Plan.

e)    <u>Class C-1 -  Secured Claims against Brier Creek Medical Partners Two, LLC</u>

(i)    *Classification*:  Class C-1 consists of all Secured Claims that may exist against Brier Creek Medical Partners Two, LLC.

(ii)    *Treatment*:  Each Holder of an Allowed Secured Claim shall be treated as set forth on **<u>Exhibit B</u>** attached to the Plan, and all terms in **<u>Exhibit B</u>** are incorporated by reference herein.  If any inconsistency exists between the terms and provisions of **<u>Exhibit B</u>** and those of any part of the Plan, then the terms and provisions of **<u>Exhibit B</u>** shall be controlling.

(iii)    *Voting*:  Class C-1 is Impaired, and Holders of Class C-1 Secured Claims are deemed entitled to vote to accept or reject the Plan.

f)    <u>Class C-2 -  General Unsecured Claims against Brier Creek Medical Partners Two, LLC</u>

(i)    *Classification*:  Class C-2 consists of all General Unsecured Claims that may exist against Brier Creek Medical Partners Two, LLC.

(ii)    *Treatment*:  Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:  Class C-2 is Unimpaired, and Holders of Class C-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class C-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

g)    <u>Class C-3 - Intercompany Claims against Brier Creek Medical Partners Two, LLC</u>

(i)    *Classification*:  Class C-3 consists of all Intercompany Claims that may exist against Brier Creek Medical Partners Two, LLC.

(ii)    *Treatment*:  Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated as set forth by the Subject Borrowers on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:    Class C-3 is Unimpaired, and Holders of Class C-3 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class C-3 Intercompany Claims are not entitled to vote to accept or reject the Plan.

h)    <u>Class C-4 - Equity Interests in Brier Creek Medical Partners Two, LLC</u>

(i)    *Classification*:  Class C-4 consists of all Equity Interests in Brier Creek Medical Partners Two, LLC.

(ii)    *Treatment*:  On the Effective Date, all Class C-4 Equity Interests shall be reinstated and remain unaltered.

(iii)    *Voting*:  Class C-4 is Unimpaired, and Holders of Class C-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class C-4 Equity Interests are not entitled to vote to accept or reject the Plan.

i)    <u>Class D-1 -  Secured Claims Brier Creek Medical Partners, LLC</u>

(i)    *Classification*:  Class D-1 consists of all Secured Claims that may exist against Brier Creek Medical Partners, LLC.

(ii)    *Treatment*:  Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein.  If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling.

(iii)    *Voting*:  Class D-1 is Impaired, and Holders of Class D-1 Secured Claims are deemed entitled to vote to accept or reject the Plan.

j)    <u>Class D-2 -  General Unsecured Claims against Brier Creek Medical Partners, LLC</u>

(i)    *Classification*:  Class D-2 consists of all General Unsecured Claims that may exist against Brier Creek Medical Partners, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:  Class D-2 is Unimpaired, and Holders of Class D-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class D-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

k)    <u>Class D-3 - Intercompany Claims against Brier Creek Medical Partners, LLC</u>

(i)    *Classification*:  Class D-3 consists of all Intercompany Claims that may exist against Brier Creek Medical Partners, LLC.

(ii)    *Treatment*:  Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated as set forth by the Subject Borrowers on the later of the Effective Date or the date on which such Intercompany Claim

27

becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter.

(iii)     *Voting*:  Class D-3 is Unimpaired, and Holders of Class D-3 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class D-3 Intercompany Claims are not entitled to vote to accept or reject the Plan.

l)     Class D-4 - Equity Interests in Brier Creek Medical Partners, LLC

(i)     *Classification*:  Class D-4 consists of all Equity Interests in Brier Creek Medical Partners, LLC.

(ii)     *Treatment*:  On the Effective Date, all Class D-4 Equity Interests shall be reinstated and remain unaltered.

(iii)     *Voting*:  Class D-4 is Unimpaired, and Holders of Class D-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class D-4 Equity Interests are not entitled to vote to accept or reject the Plan.

m)     Class E-1 -  Secured Claims against Brownsburg Station Partners, LLC

(i)     *Classification*:  Class E-1 consists of all Secured Claims that may exist against Brownsburg Station Partners, LLC.

(ii)     *Treatment*:  Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein.  If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling.

(iii)     *Voting*:  Class E-1 is Impaired, and Holders of Class E-1 Secured Claims are deemed entitled to vote to accept or reject the Plan.

n)     Class E-2 -  General Unsecured Claims against Brownsburg Station Partners, LLC

(i)     *Classification*:  Class E-2 consists of all General Unsecured Claims that may exist against Brownsburg Station Partners, LLC.

(ii)     *Treatment*:  Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)     *Voting*:  Class E-2 is Unimpaired, and Holders of Class E-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class E-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

o)    Class E-3 - Intercompany Claims against Brownsburg Station Partners, LLC

    (i)    *Classification*:  Class E-3 consists of all Intercompany Claims that may exist against Brownsburg Station Partners, LLC.

    (ii)    *Treatment*:  Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated as set forth by the Subject Borrowers on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter.

    (iii)    *Voting*:    Class E-3 is Unimpaired, and Holders of Class E-3 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class E-3 Intercompany Claims are not entitled to vote to accept or reject the Plan.

p)    Class E-4 - Equity Interests in Brownsburg Station Partners, LLC

    (i)    *Classification*:  Class E-4 consists of all Equity Interests in Brownsburg Station Partners, LLC.

    (ii)    *Treatment*:  On the Effective Date, all Class E-4 Equity Interests shall be reinstated and remain unaltered.

    (iii)    *Voting*:  Class E-4 is Unimpaired, and Holders of Class E-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class E-4 Equity Interests are not entitled to vote to accept or reject the Plan.

q)    Class F-1 -  Secured Claims against MCP Partners Three, LLC

    (i)    *Classification*:  Class F-1 consists of all Secured Claims that may exist against MCP Partners Three, LLC.

    (ii)    *Treatment*:  Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein.  If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling.

    (iii)    *Voting*:  Class F-1 is Impaired, and Holders of Class F-1 Secured Claims are deemed entitled to vote to accept or reject the Plan.

r)    Class F-2 -  General Unsecured Claims against MCP Partners Three, LLC

    (i)    *Classification*:  Class F-2 consists of all General Unsecured Claims that may exist against MCP Partners Three, LLC.

    (ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on

the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*: Class F-2 is Unimpaired, and Holders of Class F-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class F-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

s)    Class F-3 - Intercompany Claims against MCP Partners Three, LLC

(i)    *Classification*: Class F-3 consists of all Intercompany Claims that may exist against MCP Partners Three, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated as set forth by the Subject Borrowers on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:    Class F-3 is Unimpaired, and Holders of Class F-3 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class F-3 Intercompany Claims are not entitled to vote to accept or reject the Plan.

t)    Class F-4 - Equity Interests in MCP Partners Three, LLC

(i)    *Classification*: Class F-4 consists of all Equity Interests in MCP Partners Three, LLC.

(ii)    *Treatment*: On the Effective Date, all Class F-4 Equity Interests shall be reinstated and remain unaltered.

(iii)    *Voting*: Class 4 is Unimpaired, and Holders of Class F-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class F-4 Equity Interests are not entitled to vote to accept or reject the Plan.

u)    Class G- 2 -  General Unsecured Claims against Meridian Medical Associates Two, LLC

(i)    *Classification*: Class G-2 consists of all General Unsecured Claims that may exist against Meridian Medical Associates Two, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:  Class G-2 is Unimpaired, and Holders of Class G-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class G-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

v)    <u>Class G-4 - Equity Interests in Meridian Medical Associates Two, LLC</u>

(i)    *Classification*:  Class G-4 consists of all Equity Interests in Meridian Medical Associates Two, LLC.

(ii)    *Treatment*:  On the Effective Date, all Class G-4 Equity Interests shall be reinstated and remain unaltered.

(iii)    *Voting*:  Class G-4 is Unimpaired, and Holders of Class G-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class G-4 Equity Interests are not entitled to vote to accept or reject the Plan.

w)    <u>Class H-1 -  Secured Claims against Meridian Medical Partners Two, LLC</u>

(i)    *Classification*:  Class H-1 consists of all Secured Claims that may exist against Meridian Medical Partners Two, LLC.

(ii)    *Treatment*:  Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein.  If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling.

(iii)    *Voting*:  Class H-1 is Impaired, and Holders of Class H-1 Secured Claims are deemed entitled to vote to accept or reject the Plan.

x)    <u>Class H-2 -  General Unsecured Claims against Meridian Medical Partners Two, LLC</u>

(i)    *Classification*:  Class H-2 consists of all General Unsecured Claims that may exist against Meridian Medical Partners Two, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:  Class H-2 is Unimpaired, and Holders of Class H-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class H-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

y)    <u>Class H-3 - Intercompany Claims against Meridian Medical Partners Two, LLC</u>

(i)    *Classification*:  Class H-3 consists of all Intercompany Claims that may exist against Meridian Medical Partners Two, LLC.

31

(ii)     *Treatment*:  Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated as set forth by the Subject Borrowers on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:    Class H-3 is Unimpaired, and Holders of Class H-3 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class H-3 Intercompany Claims are not entitled to vote to accept or reject the Plan.

z)     Class H-4 - Equity Interests in Meridian Medical Partners Two, LLC

(i)     *Classification*:  Class 4 consists of all Equity Interests in Meridian Medical Partners Two, LLC.

(ii)    *Treatment*:  On the Effective Date, all Class H-4 Equity Interests shall be reinstated and remain unaltered.

(iii)    *Voting*:  Class H-4 is Unimpaired, and Holders of Class H-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 4 Equity Interests are not entitled to vote to accept or reject the Plan.

aa)    Class I-2 -  General Unsecured Claims against Middleburg Heights Medical Associates, LLC

(i)     *Classification*:  Class I-2 consists of all General Unsecured Claims that may exist against Middleburg Heights Medical Associates, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:  Class I-2 is Unimpaired, and Holders of Class I-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class I-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

bb)    Class I-4 - Equity Interests in Middleburg Heights Medical Associates, LLC

(i)     *Classification*:  Class I-4 consists of all Equity Interests in Middleburg Heights Medical Associates, LLC.

(ii)    *Treatment*:  On the Effective Date, all Class I-4 Equity Interests shall be reinstated and remain unaltered.

(iii)   *Voting*:  Class I-4 is Unimpaired, and Holders of Class I-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class I-4 Equity Interests are not entitled to vote to accept or reject the Plan.

cc)   Class J-1 -  Secured Claims against Middleburg Heights Medical Partners, LLC

(i)   *Classification*:  Class J-1 consists of all Secured Claims that may exist against Middleburg Heights Medical Partners, LLC.

(ii)   *Treatment*:  Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein.  If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling.

(iii)   *Voting*:  Class J-1 is Impaired, and Holders of Class J-1 Secured Claims are deemed entitled to vote to accept or reject the Plan.

dd)   Class J-2 -  General Unsecured Claims against Middleburg Heights Medical Partners, LLC

(i)   *Classification*:  Class J-2 consists of all General Unsecured Claims that may exist against Middleburg Heights Medical Partners, LLC.

(ii)   *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)   *Voting*:  Class J-2 is Unimpaired, and Holders of Class J-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class J-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

ee)   Class J-3 - Intercompany Claims against Middleburg Heights Medical Partners, LLC

(i)   *Classification*:  Class J-3 consists of all Intercompany Claims that may exist against Middleburg Heights Medical Partners, LLC.

(ii)   *Treatment*:  Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated as set forth by the Subject Borrowers on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter.

(iii)   *Voting*:  Class J-3 is Unimpaired, and Holders of Class J-3 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class J-3 Intercompany Claims are not entitled to vote to accept or reject the Plan.

ff)     Class J-4 - Equity Interests in Middleburg Heights Medical Partners, LLC

(i)     *Classification*:  Class J-4 consists of all Equity Interests in Middleburg Heights Medical Partners, LLC.

(ii)    *Treatment*:  On the Effective Date, all Class J-4 Equity Interests shall be reinstated and remain unaltered.

(iii)   *Voting*:  Class J-4 is Unimpaired, and Holders of Class J-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class J-4 Equity Interests are not entitled to vote to accept or reject the Plan.

gg)     Class K-1 -  Secured Claims against Moores Chapel Partners, LLC

(i)     *Classification*:  Class K-1 consists of all Secured Claims that may exist against Moores Chapel Partners, LLC.

(ii)    *Treatment*:  Each Holder of an Allowed Secured Claim shall be treated as set forth on **Exhibit B** attached to the Plan, and all terms in **Exhibit B** are incorporated by reference herein.  If any inconsistency exists between the terms and provisions of **Exhibit B** and those of any part of the Plan, then the terms and provisions of **Exhibit B** shall be controlling.

(iii)   *Voting*:  Class K-1 is Impaired, and Holders of Class K-1 Secured Claims are deemed entitled to vote to accept or reject the Plan.

hh)     Class K-2 -  General Unsecured Claims against Moores Chapel Partners, LLC

(i)     *Classification*:  Class K-2 consists of all General Unsecured Claims that may exist against Moores Chapel Partners, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)   *Voting*:  Class K-2 is Unimpaired, and Holders of Class K-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class K-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

ii)     Class K-3 - Intercompany Claims against Moores Chapel Partners, LLC

(i)     *Classification*:  Class K-3 consists of all Intercompany Claims that may exist against Moores Chapel Partners, LLC.

(ii)    *Treatment*:  Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated as set forth by the Subject Borrowers on the later of the Effective Date or the date on which such Intercompany Claim

34

becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:  Class K-3 is Unimpaired, and Holders of Class K-3 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class K-3 Intercompany Claims are not entitled to vote to accept or reject the Plan.

jj)    Class K-4 - Equity Interests in Moores Chapel Partners, LLC

(i)    *Classification*:  Class K-4 consists of all Equity Interests in Moores Chapel Partners, LLC.

(ii)    *Treatment*:  On the Effective Date, all Class K-4 Equity Interests shall be reinstated and remain unaltered.

(iii)    *Voting*:  Class K-4 is Unimpaired, and Holders of Class K-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class K-4 Equity Interests are not entitled to vote to accept or reject the Plan.

kk)    Class L-2 -  General Unsecured Claims against Virginia Beach Medical Associates, LLC

(i)    *Classification*:  Class L-2 consists of all General Unsecured Claims that may exist against Virginia Beach Medical Associates, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:  Class L-2 is Unimpaired, and Holders of Class L-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class L-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

ll)    Class L-4 - Equity Interests in Virginia Beach Medical Associates, LLC

(i)    *Classification*:  Class L-4 consists of all Equity Interests in Virginia Beach Medical Associates, LLC.

(ii)    *Treatment*:  On the Effective Date, all Class L-4 Equity Interests shall be reinstated and remain unaltered.

(iii)    *Voting*:  Class L-4 is Unimpaired, and Holders of Class L-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class L-4 Equity Interests are not entitled to vote to accept or reject the Plan.

mm)   <u>Class M-1 -  Secured Claims against Virginia Beach Medical Partners, LLC</u>

(i)    *Classification*:  Class 1 consists of all Secured Claims that may exist against Virginia Beach Medical Partners, LLC.

(ii)    *Treatment*:  Each Holder of an Allowed Secured Claim shall be treated as set forth on **<u>Exhibit B</u>** attached to the Plan, and all terms in **<u>Exhibit B</u>** are incorporated by reference herein.  If any inconsistency exists between the terms and provisions of **<u>Exhibit B</u>** and those of any part of the Plan, then the terms and provisions of **<u>Exhibit B</u>** shall be controlling.

(iii)    *Voting*:  Class M-1 is Impaired, and Holders of Class M-1 Secured Claims are deemed entitled to vote to accept or reject the Plan.

nn)   <u>Class M-2 -  General Unsecured Claims against Virginia Beach Medical Partners, LLC</u>

(i)    *Classification*:  Class M-2 consists of all General Unsecured Claims that may exist against Virginia Beach Medical Partners, LLC.

(ii)    *Treatment*: Except to the extent a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:  Class M-2 is Unimpaired, and Holders of Class M-2 Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class M-2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

oo)   <u>Class M-3 - Intercompany Claims against Virginia Beach Medical Partners, LLC</u>

(i)    *Classification*:  Class M-3 consists of all Intercompany Claims that may exist against Virginia Beach Medical Partners, LLC.

(ii)    *Treatment*:  Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Intercompany Claim shall be reinstated as set forth by the Subject Borrowers on the later of the Effective Date or the date on which such Intercompany Claim becomes an Allowed Intercompany Claim or as soon as reasonably practicable thereafter.

(iii)    *Voting*:  Class M-3 is Unimpaired, and Holders of Class M-3 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class M-3 Intercompany Claims are not entitled to vote to accept or reject the Plan.

pp)   <u>Class M-4 - Equity Interests in Virginia Beach Medical Partners, LLC</u>

(i)    *Classification*:  Class M-4 consists of all Equity Interests in Virginia Beach Medical Partners, LLC.

(ii)     *Treatment*:  On the Effective Date, all Class M-4 Equity Interests shall be reinstated and remain unaltered.

(iii)    *Voting*:  Class M-4 is Unimpaired, and Holders of Class M-4 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class M-4 Equity Interests are not entitled to vote to accept or reject the Plan.

**3.      Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Subject Borrowers' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**4.      Discharge of Claims**

Pursuant to section 1141(c) of the Bankruptcy Code, all Claims and Equity Interests that are not expressly provided for and preserved in the Plan shall be extinguished upon the Effective Date.  Upon the Effective Date, the Subject Borrowers and all property dealt with in the Plan shall be free and clear of all such claims and interests, including, without limitation, liens, security interests and any and all other encumbrances, other than the Claims, liens, encumbrances, mortgages, security interests and other rights of the Holders of Secured Claims.

**C.      ACCEPTANCE OR REJECTION OF THE PLAN**

**1.      Presumed Acceptance of Plan**

Classes A-2, A-4, B-2, B-4, C-2, C-3, C-4, D-2, D-3, D-4, E-2, E-3, E-4, F-2, F-3, F-4, G-2, G-4, H-2, H-3, H-4, I-2, I-4, J-2, J-3, J-4, K-2, K-3, K-4, L-2, L-4, M-2, M-3 and M-4 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**2.      Voting Classes**

Classes C-1, D-1, E-1, F-1, H-1, J-1 and M-1 are Impaired under the Plan, and Holders of Claims in Classes C-1, D-1, E-1, F-1, H-1, J-1 and M-1 as of the Record Date are entitled to vote to accept or reject the Plan.

**3.      Acceptance by Impaired Classes of Claims**

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims entitled to vote to accept or reject the Plan has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

**4.      Deemed Rejection of Plan**

There are no impaired classes that will receive no distribution under the Plan.  Therefore, there is no class that is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**D.      CONFIRMATION PURSUANT TO SECTION 1129(a)(10) OF THE BANKRUPTCY CODE**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.

E.   **SUBJECT BORROWERS' CONTROVERSY CONCERNING IMPAIRMENT**

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

F.   **MEANS FOR IMPLEMENTATION OF THE PLAN**

   1.   **Sources of Consideration for Plan Distributions**

Cash distributions under the Plan shall be funded from operations and the DIP Facility.

   2.   **Corporate Existence**

The Subject Borrowers shall continue to exist after the Effective Date as separate corporate entities or limited liability companies, with all the powers of corporations or limited liability companies pursuant to the applicable law in the jurisdiction in which the respective Subject Borrower is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents in the case of a limited liability company) in effect prior to the Effective Date.

   3.   **Vesting of Assets in the Reorganized Debtor**

Except as otherwise provided herein or in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of each Estate (including, without limitation, Causes of Action) shall vest in each respective Reorganized Subject Borrower, free and clear of all liens, Claims, charges or other encumbrances. Except as may be provided herein, on and after the Effective Date, each Reorganized Subject Borrower may operate its business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

   4.   **Restructuring Transactions**

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Subject Borrowers shall take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, certificates of incorporation, operating agreements, bylaws or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of the Plan; and (3) all other actions that the Reorganized Subject Borrowers determine is necessary or appropriate, including all documents necessary to effectuate the Loan Modification Term Sheet.

   5.   **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Subject Borrowers and the managers, officers and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Subject Borrowers, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

   6.   **Exemption from Certain Taxes and Fees**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or

agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) any restructuring transaction authorized by Article IV.E of the Plan; or (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

### 7.      Preservation of Rights of Action

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, the Reorganized Subject Borrowers shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the petition date, and the Reorganized Subject Borrowers' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Subject Borrowers may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Subject Borrowers. No Entity may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against them as any indication that the Subject Borrowers or Reorganized Subject Borrowers, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Subject Borrowers or Reorganized Subject Borrowers have released any Person or Entity on or prior to the Effective Date, the Subject Borrowers or Reorganized Subject Borrowers, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Subject Borrowers expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Notwithstanding any other provision in this Plan, the Subject Borrowers shall not retain any cause of action against any Holder of Secured Claims and, as required under the Loan Modification Term Sheet, all such claims shall be forever released and discharged.

## G.      PROVISIONS GOVERNING DISTRIBUTIONS

### 1.      Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter, except in the cases of Administrative Claims and Priority Tax Claims, which Claims shall be paid in the ordinary course of business), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VI of the Plan. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### 2.      Disbursing Agent

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Subject Borrowers as Disbursing Agent or such other Entity designated by the Reorganized Subject Borrowers as a Disbursing Agent on the Effective Date. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by

the Bankruptcy Court.  In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Subject Borrowers.

      **3.**      **Rights and Powers of Disbursing Agent**

            a)      <u>Powers of the Disbursing Agent</u>

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

            b)      <u>Expenses Incurred On or After the Effective Date</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Subject Borrowers.

      **4.**      **Distributions on Account of Claims Allowed After the Effective Date**

            a)      <u>Payments and Distributions on Disputed Claims</u>

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

            b)      <u>Special Rules for Distributions to Holders of Disputed Claims</u>

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Subject Borrowers or the Reorganized Subject Borrowers, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

      **5.**      **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

            a)      <u>Delivery of Distributions in General</u>

Except as otherwise provided herein, the Reorganized Subject Borrowers shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Subject Borrowers' books and records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Reorganized Subject Borrowers; and provided, further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

            b)      <u>Cash Distributions</u>

No payment of Cash less than $100 shall be made to any holder of an Allowed Claim unless a request therefor is made in writing.

            c)      <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at

which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Subject Borrowers (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Equity Interest in property shall be discharged and forever barred.

**6.      Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Reorganized Subject Borrowers shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Subject Borrowers and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Subject Borrowers reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

**7.      Setoffs**

The Subject Borrowers and the Reorganized Subject Borrowers may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights, and Causes of Action of any nature that the Subject Borrowers or the Reorganized Subject Borrowers may hold against the Holder of any such Allowed Claim, other than any Claim against any of the Holders of Secured Claims, in which case the Subject Borrowers shall have no right of setoff, recoupment or withholding.  In the event that any such claims, equity interests, rights, and Causes of Action of any nature that the Subject Borrowers or the Reorganized Subject Borrowers may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Subject Borrowers may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Subject Borrowers or the Reorganized Subject Borrowers may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the non allowance of any Claim under the Plan shall constitute a waiver or release by the Subject Borrower or the Reorganized Subject Borrowers of any such claims, equity interests, rights and Causes of Action that the Subject Borrowers or the Reorganized Subject Borrowers may possess against any such Holder, except as specifically provided in the Plan.

**H.      PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

**1.      Resolution of Disputed Claims**

a)      Allowance of Claims

After the Effective Date, the Reorganized Subject Borrowers shall have and shall retain any and all rights and defenses that the Subject Borrowers had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan and other than the Claims of the Holders of Secured Claims, which shall be deemed the Allowed Lenders' Claims for all purposes in the amounts set forth in the Loan Modification Term Sheet, plus any additional amounts, which may be due and owing under applicable law.  Except as expressly provided in the Plan or

in any order entered in the Chapter 11 Cases before the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.  All settled claims approved before the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

Pursuant to the Loan Modification Term Sheet, the Subject Borrowers have agreed as follows:

> [Subject] Borrowers further acknowledge that the amounts shown in the "Existing Outstanding" column in the chart in the "Facility Amount" section above with respect to [Subject] Borrowers, plus the amount of any advance of loan proceeds, any protective advance or any other advance to or for the benefit of the applicable [Subject] Borrower after the date hereof as contemplated in the "Facility Amount" section above, plus all other amounts which may be allowed under applicable law, including but not limited to accrued or unpaid interest (pre-petition and post-petition and including any default interest), fees, expenses, attorney fees and costs, shall be deemed to be Allowed Claims (as defined in the Bankruptcy Code) against each of the respective Borrowers by each applicable Lender in the [Subject] Borrowers' existing Chapter 11 bankruptcy proceedings, and that there are no offsets, recoupment, defenses, counterclaims, or avoidance claims against such allowed claims, and that [Subject] Borrowers do not intend to (and shall not) file any objection to such allowed claims nor to seek any form of recharacterization or subordination of such claims under any theory at law or in equity.

b)    Prosecution of Objections to Claims

After the Confirmation Date but before the Effective Date, the Subject Borrowers, and after the Effective Date until the Claims Objection Bar Date, the Reorganized Subject Borrowers, shall have the exclusive authority, except as otherwise provided by the Bankruptcy Court, to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; provided, however, that allowance of any Claims of "insiders" as defined under section 101(31) of the Bankruptcy Code shall be permitted solely upon order of the Bankruptcy Court.  From and after the Effective Date, the Reorganized Subject Borrowers may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court; provided, however, that any settlement or compromise related to any Disputed Claim of an "insider" as defined under section 101(31) of the Bankruptcy Code shall be permitted solely upon order of the Bankruptcy Court  The Reorganized Subject Borrowers shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

c)    Claims Estimation

Before the Effective Date, the Subject Borrowers, and after the Effective Date, the Reorganized Subject Borrowers may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Subject Borrowers or the Reorganized Subject Borrowers have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

d)        Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Subject Borrowers, and any Claim that has been amended may be adjusted thereon by the Reorganized Subject Borrowers, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

e)        Deadline to File Objections to Claims

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

**2.        Disallowance of Claims**

All Claims of any Entity, other than the Allowed Lenders' Claims, from which property is sought by the Subject Borrowers or the Reorganized Subject Borrowers under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Subject Borrowers or the Reorganized Subject Borrowers allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if (i) the Entity, on the one hand, and the Subject Borrowers or the Reorganized Subject Borrowers, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (ii) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.  Notwithstanding any other provision in the Plan, with respect to the Holders of Secured Claims, the Subject Borrowers have waived and forever relinquished any assertion of any right to recover property under section 522(f), 522(h), 542, 543, 544, 547, 548, 549, 550, 553 or 724 of the Bankruptcy Code, or any applicable or analogous or similar state law provision providing for the avoidance of obligations incurred or transfers made

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED FOR PURPOSES OF DISTRIBUTION OR ANY OTHER TREATMENT UNDER THE PLAN AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS, ON OR BEFORE THE DATE OF THE CONFIRMATION HEARING, SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER.**

**3.        Amendments to Claims**

On or after the Effective Date, except as otherwise provided herein, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Subject Borrowers, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**I.        SETTLEMENT, EXCULPATION AND RELATED PROVISIONS**

**1.        Compromise and Settlement**

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments under the Plan, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of

all Allowed Claims and their respective distributions and treatments hereunder are settled, compromised, terminated and released pursuant hereto.

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Subject Borrowers, their estates and all Holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

Pursuant to the Loan Modification Term Sheet, each Subject Borrower (and each guarantor of Secured Claims against the Subject Borrowers (each, a "Guarantor")), jointly and severally, and on behalf of itself and each Person or other Entity (including, without limitation, any former, current, or future employee, officer, agent, attorney, board member, member, manager, shareholder, parent, subsidiary, partnerships, joint venture, other affiliate, spouse, relative, heir, beneficiary, legal representative, creditor, successor or assign) who or that may assert or may attempt to assert any claim by or otherwise belonging to such party, through such party, or otherwise on behalf of such party (including, without limitation, on any derivative basis) (collectively, the "Borrower Related Parties"), hereby releases the Holders of Secured Claims and each of their former, current, and/or future subsidiaries, parents, partnerships, joint ventures, other affiliates, officers, directors, employees, attorneys, agents (including consultants), assigns, heirs, executors, administrators, legal representatives, predecessors, successors and assigns (collectively, the "Lender Related Parties"), from any and all claims relating in any manner whatsoever arising from or otherwise relating to:  (1) the Subject Borrowers' loans from the Holders of Secured Claims (the "Loans"); (2) the documents executed in connection with any of the Loans or in connection herewith; (3) any transactions contemplated or undertaken thereunder or hereunder; (4) the Projects; (5) any Subject Borrower's or any Guarantor's credit relationship with the Holders of Secured Claims; and (6) any related matters; which, in the case of any of the foregoing, has existed at any time on or prior to the closing date of the transactions set forth in the Loan Modification Term Sheet (the "Closing Date"), including any such claim which relates or may relate in any manner whatsoever to any facts in existence on or prior to the Closing Date, all as more specifically set forth in the documentation executed in connection with the closing of the transactions contemplated by the Loan Modification Term Sheet.

The Confirmation Order shall contain findings of fact and conclusions of law, acceptable to the Holders of Secured Claims, in their sole discretion, which shall provide that (1) each of the Subject Borrowers and each of the Original Debtors are receiving both direct and indirect benefit from the transactions contemplated by the Loan Modification Term Sheet, and (2) the loan modifications, transfers, obligations, granting of liens, extensions, and cross-collateralization as contemplated or required by the Loan Modification Term Sheet are (a) supported by reasonably equivalent value, (b) made in exchange for valuable consideration and (c) shall not be subject to avoidance or amendment under any section of Chapter 5 of the Code, including 547, 548, 549 and 550, whether by any party in these Chapter 11 Cases, by any creditor, or future creditor, by any trustee, and in any subsequent bankruptcy proceeding of any of the Subject Borrowers or the current or any other subsequent bankruptcy proceeding of any of the Original Debtors (except, in the case of the Original Debtors, to the extent the Loan Modification Term Sheet expressly provides that it shall not constitute an Event of Default under the loan documents if any of the obligations of any of the Original Debtors are not fully reinstated, or any Holder of Secured Claims' contractual rights with respect to the obligations of any of the Original Debtors are altered in any way, in connection with the bankruptcy of any of the Original Debtors), and to the extent permitted by 28 U.S.C. § 1334 shall preclude any party from asserting any action to avoid as a preference, fraudulent conveyance or other avoidable transaction under either state or federal law.

In accordance with the provisions of the Plan, including Article VII thereof, and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Subject Borrowers may, in its sole and absolute discretion, compromise and settle Claims against it and (2) the Reorganized Subject Borrowers may, in its respective sole and absolute discretion, compromise and settle Causes of Action against other Entities.

**2.      Exculpation**

**The Exculpated Parties shall neither have, nor incur any liability to any Entity for any postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing,**

disseminating, implementing, administering, confirming, or effecting the Consummation of the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Subject Borrowers; **provided, however,** that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; **provided further,** that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; and **provided further, however,** that this Exculpation shall not in any way pertain to the obligations of any Guarantor to the Holders of Secured Claims, or to any obligations of any Subject Borrowers to the Holders of Secured Claims, and that nothing in the Plan shall cause any such party to be released, discharged or exculpated from any liability to any Holder of Secured Claims.

3.      Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, AND IN THE LOAN MODIFICATION TERM SHEET, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS (OTHER THAN THE HOLDERS OF SECURED CLAIMS), EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES THAT (1) HAVE BEEN DISCHARGED PURSUANT TO ARTICLE III.D OF THE PLAN OR (2) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VII.B OF THE PLAN (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN ARTICLE VII.B OF THE PLAN), ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM:  (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO DISCHARGED OR EXCULPATED (OR THE PROPERTY OR ESTATES OF ANY ENTITY SO DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY ENTITY SO DISCHARGED OR EXCULPATED (OR THE PROPERTY OR ESTATES OF ANY ENTITY SO DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST ANY ENTITY SO DISCHARGED OR EXCULPATED (OR THE PROPERTY OR ESTATES OF ANY ENTITY SO DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY ENTITY SO DISCHARGED OR EXCULPATED (OR THE PROPERTY OR ESTATES OF ANY ENTITY SO DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR EQUITY INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO DISCHARGED OR EXCULPATED (OR THE PROPERTY OR ESTATES OF ANY ENTITY SO DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES SETTLED PURSUANT TO THE PLAN.

NOTWITHSTANDING THE FOREGOING OR ANY OTHER PROVISION IN THE PLAN TO THE CONTRARY, NEITHER THE INJUNCTION, RELEASE, EXCULPATION OR DISCHARGE SHALL IN ANY WAY RELEASE, COMPROMISE, SETTLE OR OTHERWISE MODIFY THE RIGHTS OR REMEDIES OF THE HOLDERS OF SECURED CLAIMS WITH RESPECT TO ANY GUARANTEE AGREEMENTS EXECUTED IN FAVOR OR EITHER THE HOLDERS OF SECURED CLAIMS BY ANY PARTY IN CONNECTION WITH

ANY OF THE LOANS MADE BY EITHER THE HOLDER OF SECURED CLAIMS, NOR ENJOIN, STAY OR AFFECT THE PENDING CIVIL PROCEEDINGS TO ENFORCE CERTAIN OF SUCH GUARANTEE AGREEMENTS, NOR ANY FUTURE ACTION TO ENFORCE ANY SUCH GUARANTEE AGREEMENTS, IT BEING EXPRESSLY UNDERSTOOD THAT THE PLAN DOES NOT WAIVE, RELINQUISH, MODIFY, MODIFY, RELEASE OR OTHERWISE EFFECT THE LIABILITY OF ANY GUARANTOR IN CONNECTION WITH ANY OF THE SUBJECT BORROWERS' OBLIGATIONS.

### 4.     Setoffs

Except as otherwise provided in the Plan, each Reorganized Subject Borrower pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may set off against any Allowed Claim or Equity Interest, other than the Allowed Lenders' Claims, and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any distribution is made on account of such Allowed Claim or Equity Interest), any Claims, rights and Causes of Action of any nature that such Subject Borrowers or Reorganized Subject Borrowers, as applicable, may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such Claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by such Reorganized Subject Borrower of any such Claims, rights, and Causes of Action that such Reorganized Subject Borrower may possess against such Holder.  In no event shall any Holder of Claims or Equity Interests be entitled to setoff any Claim or Equity Interest against any Claim, right or Cause of Action of the Subject Borrowers or Reorganized Subject Borrowers, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise. Notwithstanding the foregoing, nothing in Article VII.D of the Plan shall permit or authorize the exercise of any setoff or recoupment right by the Subject Borrowers as against the Holders of Secured Claims and the Allowed Lenders' Claims.

## J.     CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### 1.     Conditions Precedent to Confirmation

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved or waived pursuant to the provisions of Article IX.C of the Plan.

### 2.     Conditions Precedent to Consummation

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

(a)  The Confirmation Order shall be a Final Order in form and substance acceptable to the Subject Borrowers and to the Holders of Secured Claims in their sole discretion, including but not limited to the provisions set forth in Article VII of the Plan, and including that the Court approve the execution of guaranty agreements by the Original Debtors as required under the Loan Modification Term Sheet, that the existing guarantors reaffirm and modify their guaranty obligations to the extent required to do so as set forth in the Loan Modification Term Sheet, and that all monetary contributions required by the Subject Borrowers to be made in connection with the closing of the transactions contemplated by the Loan Modification Term Sheet, are timely and fully made as and when required thereunder.

(b)  The Plan, including any amendments, modifications, or supplements thereto shall be acceptable to the Subject Borrowers and to the Holders of Secured Claims in their sole discretion, and shall be consistent in all respects with the Loan Modification Term Sheet, except to the extent otherwise agreed in writing by the Holders of Secured Claims.

(c)  That the applicable guarantors and other applicable parties shall have executed and delivered all tolling agreements and other agreements as required by the Loan Modification Term Sheet and the Holders of Secured Claims shall have completed all depositions and received all other discovery to the extent required under the Loan Modification Term Sheet.

(d)  All actions, documents, certificates, tolling agreements, and other agreements necessary to implement the Plan and the Loan Modification Term Sheet shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws, and that such documentation shall be fully executed by all applicable parties, including any applicable guarantors, the Original Debtors and, if applicable, LIP Lender LLC.

(e)  The Effective Date shall be conditioned upon execution and delivery of definitive loan documents pursuant to the Loan Modification Term Sheet, unless waived as provided herein.

(f)  Unless otherwise agreed to in writing by the Holders of Secured Claims in their sole discretion, the transactions contemplated by the Plan and the Loan Modification Term Sheet shall have been consummated on or before April 30, 2010.

### 3.        Waiver of Conditions

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in Article IX of the Plan may be waived only by consent of the Subject Borrowers and in writing by the Holders of Secured Claims.

### 4.        Effective Date

The Effective Date shall be the first Business Day upon which all of the conditions specified in Article IX.B of the Plan have been satisfied or waived.  The Effective Date shall occur on or before fifteen (15) days after the Confirmation Date, but in no event later than April 30, 2010, unless all required parties agree otherwise.

### 5.        Effect of Non-Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur on or before April 30, 2010, with time being of the essence, and unless otherwise agreed to in writing by the Holders of Secured Claims, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Subject Borrowers; (2) prejudice in any manner the rights of the Subject Borrowers, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Subject Borrowers, any Holders or any other Entity in any respect

## K.      MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### 1.        Modification and Amendments

Except as otherwise specifically provided herein, the Subject Borrowers reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan, provided that any such modification must be consistent in all respects with the Loan Modification Term Sheet and approved by the Holders of Secured Claims in writing in their sole discretion. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Subject Borrowers expressly reserve their rights to alter, amend, or modify materially the Plan with respect to such Subject Borrowers, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article IX of the Plan.  Notwithstanding any other provision in the Plan, no modification may be made without the prior written consent of the Holders of Secured Claims, nor shall any such modification vary, alter, or impair the rights of any Holder of Secured Claims under the Loan Modification Term Sheet, and shall

be consistent in all respects with such Loan Modification Term Sheet. The Subject Borrowers expressly agree not to seek Confirmation of this Plan, or any modification of this Plan, under section 1129(b) of the Bankruptcy Code with respect to the Allowed Lenders' Claims, nor with respect to any mortgage, deed of trust or any Secured Claim. For the avoidance of doubt, if this Plan is not confirmed by the Court, all parties reserve their rights, including, without limitation, the Subject Borrowers' rights to propose plan(s) of reorganization pursuant to section 1129(b) of the Bankruptcy Code and the Holders of Secured Claims' right to oppose any such plan(s).

> **2.      Effect of Confirmation on Modifications**

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019 provided that such modifications are consistent in all respects with the Loan Modification Term Sheet and are approved by the Holders of Secured Claims in writing in their sole discretion.

> **3.      Revocation or Withdrawal of the Plan**

The Subject Borrowers reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Subject Borrowers revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests) and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of such Subject Borrowers or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Subject Borrowers or any other Entity.

**L.      RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests (unless such Claim has been previously Allowed or is Allowed pursuant to the Plan);

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

4.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Subject Borrower that may be pending on the Effective Date;

5.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.        enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.        enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.        resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.       issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.       resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the discharge, exculpation and other provisions contained in Article VII of the Plan and enter such orders as may be necessary or appropriate to implement such injunctions and other provisions;

12.       resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid pursuant to Article III of the Plan;

13.       enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.       determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.       adjudicate any and all disputes arising from or relating to distributions under the Plan;

16.       consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.       determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.       hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.       hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.       hear and determine all disputes involving the existence, nature, or scope of the Subject Borrowers' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

21.       enforce all orders previously entered by the Bankruptcy Court;

22.       hear any other matter not inconsistent with the Bankruptcy Code; and

23.       enter an order concluding or closing the Chapter 11 Cases.

### M.    MISCELLANEOUS PROVISIONS

#### 1.    Immediate Binding Effect

Subject to Article IX.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Subject Borrowers, the Reorganized Subject Borrowers, and any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, discharges and injunctions described in the Plan, and each Entity acquiring property under the Plan.

#### 2.    Additional Documents

On or before the Effective Date, the Subject Borrowers may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan; provided, however, that any such agreement and other documents are consistent in all respects with the Loan Modification Term Sheet.  The Subject Borrowers or Reorganized Subject Borrowers, as applicable, and all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

#### 3.    Payment of Statutory Fees

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases is converted, dismissed, or closed, whichever occurs first.

#### 4.    Dissolution of Committees

On the Effective Date, the Committees, if any, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases.

#### 5.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Subject Borrower with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Subject Borrower with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

#### 6.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

#### 7.    Service of Documents

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Subject Borrowers shall be served on:

LIP Investment, LLC  
Attn:  Vernon C. Back  
401 Pennsylvania Parkway  
Indianapolis, Indiana  46280

Kirkland & Ellis LLP  
Attn:  Ross Kwasteniet and Arun Kurichety  
300 North LaSalle Drive  
Chicago, Illinois 60654-3406

After the Effective Date, the Subject Borrowers may, in their sole discretion, notify Entities that, in order to continue to receiving documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Subject Borrowers are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**8. Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**9. Entire Agreement**

Except as otherwise indicated, the Plan supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

**10. Nonseverability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Subject Borrowers' consent; and (3) nonseverable and mutually dependent.

## VI.    SOLICITATION AND VOTING PROCEDURES

### A.    RECORD DATE

**The Record Date is February 22, 2010.** The Record Date is the date on which the following will be determined: (a) which Holders of Claims (including, to the extent applicable, holders of bonds, debentures, notes and other securities) are entitled to vote to accept or reject the Plan and receive the Solicitation Package in accordance with the Solicitation Procedures; and (b) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of a Claim.

### B.    VOTING DEADLINE

**The Voting Deadline shall be at 5:00 p.m. prevailing Eastern Time on March 22, 2010.** To be counted as votes to accept or reject the Plan, all Ballots, as applicable, must be properly executed, completed and delivered according to their applicable ballot instructions by: (a) first class mail as directed on each Ballot; (b) overnight courier; or (c) personal delivery, so that they are **actually received** no later than the Voting Deadline by the Solicitation Agent. The Ballots will clearly indicate the appropriate return address. Ballots should be sent to:

<table>
<tr><td>

**BALLOTS**

Ballots must be **actually received** by the Solicitation Agent by the Voting Deadline, by using the envelope provided to:

        Kirkland & Ellis, LLP
        300 North LaSalle Drive
        Chicago, Illinois 60654
        Attn: Ross M. Kwasteniet and Arun Kurichety

If you have any questions on the procedures for voting on the Plan, please contact Counsel to the Subject Borrowers at the address set forth above.

</td></tr>
</table>

**C.      SOLICITATION PROCEDURES**

      **1.      Solicitation Package**

      Holders of Claims in each Class will receive certain documents and materials regarding the solicitation of votes to accept or reject the Plan (collectively, the "Solicitation Package"). The Solicitation Package for Holders of Claims in Classes C-1, D-1, E-1, F-1, H-1, J-1, K-1 and M-1 will contain copies of the Disclosure Statement Order (with the Solicitation Procedures attached as **Exhibit 1** thereto), the preliminarily approved form of this Disclosure Statement (together with the Plan), the Disclosure Statement and Confirmation Hearing Notice, a cover letter from the Subject Borrowers, substantially in the form of the **Exhibit F** attached to the Motion, and such other materials as the Court may direct. Holders of Claims or Equity Interests in Classes A-2, A-4, B-2, B-4, C-2, C-3, C-4, D-2, D-3, D-4, E-2, E-3, E-4, F-2, F-3, F-4, G-2, G-4, H-2, H-3, H-4, I-2, I-4, J-2, J-3, J-4, K-2, K-3, K-4, L-2, L-4, M-2, M-3 and M-4 will receive copies of the Non-Voting Status Notice, the Disclosure Statement and Confirmation Hearing Notice and such other materials as the Court may direct.

      **2.      Distribution of the Solicitation Package**

      The following Entities shall be served the Disclosure Statement, the Plan, and the Disclosure Statement and Confirmation Hearing Notice: (a) the Office of the United States Trustee for the Southern District of Indiana, Indianapolis Division; (b) the Securities and Exchange Commission; and (d) any other entities on the Service List (as defined in the *Order Establishing Case Management Procedures* [Docket No. 274]).

      **3.      Publication of Confirmation Hearing Notice**

      The Subject Borrowers shall publish a modified version of the Disclosure Statement and Confirmation Hearing Notice, which will contain, among other things, the Plan Objection Deadline, the Voting Deadline and the date that the Disclosure Statement and Confirmation Hearing is first scheduled, in the *Indianapolis Business Journal* and the *Indianapolis Star* to provide notification to those Entities that may not receive notice by mail, on or before March 11, 2010.

**D.      VOTING AND TABULATION PROCEDURES[5]**

      **1.      Who May Vote**

      Only the Holders of Claims in Classes C-1, D-1, E-1, F-1, H-1, J-1, K-1 and M-1 are entitled to vote to accept or reject the Plan.

---

[5]    Unless otherwise defined herein, capitalized terms in this section VI.D shall have the meanings set forth in the Solicitation Procedures.

2. **General Ballot Tabulation**

The following voting procedures and standard assumptions will be used in tabulating Ballots:

a.     except as otherwise provided herein or unless waived by the Subject Borrowers, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Subject Borrowers shall reject such Ballot as invalid and, therefore, decline to count it in connection with Confirmation;

b.     the Solicitation Agent will date and time-stamp all Ballots when received.   The Solicitation Agent shall retain all original Ballots and an electronic copy of the same for a period of six years after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court;

c.     an original executed Ballot is required to be submitted by the Entity submitting such Ballot.  Delivery of a Ballot to Solicitation Agent by facsimile, email or any other electronic means shall not be valid;

d.     pursuant to Local Bankruptcy Rule B-3018-1(a), the Subject Borrowers shall File a certified Balloting Report with the Bankruptcy Court no later than three calendar days prior to the Disclosure Statement and Confirmation Hearing;

e.     the method of delivery of Ballots to Solicitation Agent is at the election and risk of each Holder of a Claim in the Voting Classes.  Except as otherwise provided herein, such delivery will be deemed made only when Solicitation Agent actually receives the originally executed Ballot;

f.     if multiple Ballots are received from the same Holder of a Claim with respect to the same Claim prior to the Voting Deadline, the latest-dated valid Ballot received prior to the Voting Deadline will supersede and revoke any prior dated Ballot;

g.     Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any such votes.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, if a Holder has multiple Claims within the same Class, the Subject Borrowers may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes;

h.     a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity must indicate such capacity when signing and, if required or requested by its agent, the Clerk of the Court, the Subject Borrowers or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder;

i.     the Subject Borrowers, subject to contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting;

j.     neither the Subject Borrowers, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification;

k.     unless waived by the Subject Borrowers, subject to contrary order of the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

l.      in the event a designation for lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected by such Claim;

m.     subject to any contrary order of the Bankruptcy Court, the Subject Borrowers reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Subject Borrowers, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules;

n.      if a Claim has been estimated or otherwise Allowed for voting purposes by an order of the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a), such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Bankruptcy Court for voting purposes only and not for purposes of allowance or distribution;

o.      if an objection to a Claim is Filed, such Claim shall be treated in accordance with the Solicitation Procedures set forth herein; and

p.      the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any Ballot cast by any Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan; or (e) any Ballot submitted by any Entity not entitled to vote pursuant to the Solicitation Procedures as set forth herein.

**3.      Forms of Notices to Unimpaired Classes:**

Certain Holders of Claims and Equity Interests that are not entitled to vote because they are unimpaired or are otherwise deemed to accept the Plan under section 1126(f) of the Bankruptcy Code, will receive only the Disclosure Statement and Confirmation Hearing Notice and the Non-Voting Status Notice.  The Non-Voting Status Notice will instruct such Holders how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

## VII.    CONFIRMATION PROCEDURES

## A.    DISCLOSURE STATEMENT AND CONFIRMATION HEARING

The Disclosure Statement and Confirmation Hearing will commence on or around March 26, 2010 at **X:XX a.m./p.m.**] prevailing Eastern Time.

The Disclosure Statement and Plan Objection Deadline is March 22, 2010 at 5:00 p.m. prevailing Eastern Time.

All objections to the Plan must be filed with the Bankruptcy Court and served on the Subject Borrowers and certain other parties in accordance with the Disclosure Statement Order on or before the Disclosure Statement and Plan Objection Deadline.

The Subject Borrowers' proposed schedule will provide Entities sufficient notice of the Disclosure Statement and Plan Objection Deadline, as required by Bankruptcy Rule 2002(b).  The Subject Borrowers believe that the Disclosure Statement and Plan Objection Deadline will afford the Bankruptcy Court, the Subject Borrowers and other parties in interest reasonable time to consider the Disclosure Statement and Plan Objections prior to the Disclosure Statement and Confirmation Hearing.

> **THE BANKRUPTCY COURT WILL NOT CONSIDER PLAN OBJECTIONS UNLESS THEY ARE TIMELY–SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.**

**Disclosure Statement and Plan Objections must be served on all of the following parties:**

| | |
|---|---|
| KIRKLAND & ELLIS LLP<br>James A. Stempel<br>Ross M. Kwasteniet<br>Arun Kurichety<br>300 North LaSalle Street<br>Chicago, Illinois 60654 | TAFT STETTINUIS & HOLLISTER, LLP<br>Jerald I. Ancel<br>Jeffrey J. Graham<br>One Indiana Square, Suite 3500<br>Indianapolis, Indiana 46204 |
| *Co-Counsel to the Subject Borrowers* | |
| CLERK OF THE BANKRUPTCY COURT<br>United States Bankruptcy Court for the Southern District of Indiana<br>Kevin P. Dempsey, Clerk<br>Office of the Bankruptcy Court<br>P.O. Box 44978<br>Indianapolis, IN 46244 | OFFICE OF THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF INDIANA<br>Charles R. Wharton<br>Office of the United States Trustee<br>101 W. Ohio Street, Suite 1000<br>Indianapolis, IN 46204 |

B.    **STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Subject Borrowers believe that: (1) the Plan satisfies or will satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (2) the Subject Borrowers have complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (3) the Plan has been proposed in good faith. Specifically, in addition to others, as applicable, the Subject Borrowers believe that the Plan satisfies or will satisfy the applicable Confirmation requirements of section 1129 of the Bankruptcy Code set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Subject Borrowers, as the Plan proponents, will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- Either each Holder of an Impaired Claim has accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Subject Borrowers were liquidated on that date under chapter 7 of the Bankruptcy Code, including pursuant to section 1129(b) of the Bankruptcy Code for Equity Interests deemed to reject the Plan.

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not Impaired under the Plan.

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Subject Borrowers or any successors thereto under the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

**1.      Best Interests of Creditors Test/Liquidation Analysis**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7 of the Bankruptcy Code.  To make these findings, the bankruptcy court must:  (a) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if the debtor's chapter 11 case was converted to a chapter 7 case and the assets of such debtor's estate were liquidated; (b) determine the liquidation distribution that each non-accepting holder of a claim or an equity interest would receive from such liquidation proceeds under the priority scheme dictated under chapter 7; and (c) compare such holder's liquidation distribution to the distribution under the plan that such holder would receive if the plan were confirmed and consummated.

In chapter 7 cases, unsecured creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid fully or any such payment is provided for:  (a) holders of secured claims (to the extent of the value of their collateral); (b) holders of priority claims; (c) holders of unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of equity interests.

In light of the fact that the Plan (a) provides for payment in full, on the Effective Date (except as otherwise provided), for all Holders of Allowed Claims, (b) provides that all Equity Interests will be reinstated and remain unaltered on the Effective Date and (c) embodies the terms of the Loan Modification Term Sheet, each Holder of a Claim or Equity Interest shall receive under the Plan not less than the value such Holder would receive or retain if the Subject Borrowers were liquidated under chapter 7 of the Bankruptcy Code.

**2.      Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the plan of reorganization is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor to the debtor (unless such liquidation or reorganization is proposed in the plan of reorganization).

The Subject Borrowers believe that they will be able to make all payments required pursuant to the Plan and that confirmation of the Plan is not likely to be followed by additional liquidation or the need for further reorganization.

**3.      Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.  A class is "impaired" unless the plan:  (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. For a class of impaired equity interests to accept a plan, section 1126(d) of the Bankruptcy Code requires acceptance by equity interest holders that hold at least two-thirds in amount of the allowed equity interests of such class, counting only those equity interests that actually voted to accept or reject the plan. Thus, a class of equity interests will have voted to accept the plan only if two-thirds in amount actually voting cast their ballots in favor of acceptance.

Claims and Equity Interests in Classes A-2, A-4, B-2, B-4, C-2, C-3, C-4, D-2, D-3, D-4, E-2, E-3, E-4, F-2, F-3, F-4, G-2, G-4, H-2, H-3, H-4, I-2, I-4, J-2, J-3, J-4, K-2, K-3, K-4, L-2, L-4, M-2, M-3 and M-4 are not Impaired under the Plan, and, as a result, the Holders of such Claims or Equity Interests are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and their votes will not be solicited.

The Claims in Classes C-1, D-1, E-1, F-1, H-1, J-1, K-1 and M-1 are Impaired under the Plan. These Classes will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims of such Classes (other than any Claims of creditors designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

## C.    RISK FACTORS

Prior to deciding whether and how to vote on the Plan, each Holder of a Claim should consider carefully all of the information in this Disclosure Statement and should particularly consider the Risk Factors described in Section IX, "Plan-Related Risk Factors and Alternatives to Confirmation and Consummation of the Plan."

## D.    CONTACT FOR MORE INFORMATION

Any interested party desiring further information about the Plan should contact legal counsel to the Subject Borrowers, by writing to Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attention: Ross M. Kwasteniet and Arun Kurichety.

## VIII.    PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

THE IMPLEMENTATION OF THE PLAN IS SUBJECT TO A NUMBER OF RISKS, INCLUDING THOSE ENUMERATED BELOW.  PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS THAT ARE IMPAIRED AND ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT AND OTHER DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN.  THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION, OR ALTERNATIVES TO THE PLAN.

### A.    GENERAL BANKRUPTCY LAW AND PLAN - RELATED CONSIDERATIONS

#### 1.    General

The filing of bankruptcy petitions by the Subject Borrowers and the publicity attendant thereto may affect the Subject Borrowers' businesses adversely.  Any such adverse effects may worsen during the pendency of a protracted bankruptcy case if the Plan is not timely confirmed and consummated as expected.

#### 2.    Parties in Interest May Object to the Subject Borrowers' Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Subject Borrowers believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Subject Borrowers created certain Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

#### 3.    Failure to Satisfy Vote Requirement

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Subject Borrowers intend to seek, as promptly as practicable thereafter, Confirmation of the Plan.  In the event that sufficient votes are not received, the Subject Borrowers may seek to accomplish an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

#### 4.    The Subject Borrowers May Not Be Able to Secure Confirmation of the Plan or Confirmation May Be Delayed

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that:  (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the Solicitation Procedures and voting results satisfy the requirements of the Bankruptcy Code or

Bankruptcy Rules.   Even if the Bankruptcy Court determined that the Disclosure Statement, the Solicitation Procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

The Confirmation and Consummation of the Plan also are subject to certain other conditions.   No assurance can be given that these conditions will be satisfied.

If the Plan is not confirmed in a timely manner, it is unclear whether the transactions contemplated thereby could be implemented and what Holders of Claims and Equity Interests would ultimately receive in respect of their Claims and Equity Interests. It is possible that any alternative could provide Holders of Claims with less than they would have received pursuant to the Plan.   Moreover, nonconfirmation of the Plan could result in an extended chapter 11 proceeding.

The Subject Borrowers, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for Confirmation, provided that such modification is consistent in all respects with the Loan Modification Term Sheet and that the Holders of Secured Claims consent in writing.   Any such modifications could result in a less favorable treatment of any non-accepting Class, as well as of any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan.   Such a less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.

### 5.      The Subject Borrowers May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Plan, the Subject Borrowers and the Reorganized Subject Borrowers reserve the right to object to the amount or classification of any Claim under the Plan, other than the Allowed Lenders' Claims, which are deemed Allowed in the amounts set forth in the Loan Modification Term Sheet.   The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection.   Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

### 6.      Risk of Non-Occurrence of the Effective Date

Although the Subject Borrowers believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

### 7.      Risk Affecting Potential Recoveries of Holders of Claims in Voting Classes

The Subject Borrowers cannot state with any degree of certainty what recovery will be available to Holders of Claims in the Voting Classes.   Two unknown factors make certainty impossible.   First, the Subject Borrowers cannot know with any certainty, at this time, the number or size of Claims in Voting Classes which will ultimately be Allowed.   Third, the Subject Borrowers cannot know with certainty, at this time, the number or size of Claims in Classes senior to the Voting Classes, or Claims that are unclassified, which will ultimately be Allowed.

### 8.      Risk that the Subject Borrowers' Business Plans Will Not Be Realized

The Plan is predicated upon the Subject Borrowers having sufficient liquidity to operate until the economy and real estate markets improve.   There are many factors outside of the Subject Borrowers' controls that may prevent these macroeconomic factors from recovering.   At this time, the Subject Borrowers cannot be certain whether these conditions will or will not occur in the required time horizon.   Moreover, it is possible that the Subject Borrowers may not receive enough income through operations prior to a broader economic recovery.   This could cause the Subject Borrowers to run out of cash prior to implementing its long term business plan.   Consequently, the Subject Borrowers can provide no assurance that it will be successful in implementing its business plan.

**B.      RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS**

**The financial information contained in this Disclosure Statement has not been audited**.  In preparing this Disclosure Statement, the Subject Borrowers relied on financial data derived from its books and records that were available at the time of such preparation.  Although the Subject Borrowers have used their reasonable business judgments to ensure the accuracy of the financial information provided in this Disclosure Statement, and while the Subject Borrowers believe that such financial information fairly reflects the financial condition of the Subject Borrowers, the Subject Borrowers are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

**C.      DISCLOSURE STATEMENT DISCLAIMER**

**1.      Information Contained Herein Is for Soliciting Votes**

The information contained in this Disclosure Statement is for purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes.

**2.      This Disclosure Statement Was Not Reviewed or Approved by the Securities and Exchange Commission**

This Disclosure Statement was not filed with the Commission under the Securities Act or applicable state securities laws.  Neither the Commission nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

**3.      This Disclosure Statement May Contain Forward Looking Statements**

This Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements.  The liquidation analysis, distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted.  Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

**4.      No Legal or Tax Advice Is Provided to You by this Disclosure Statement**

**This Disclosure Statement is not legal advice to you**.  The contents of this Disclosure Statement should not be construed as legal, business or tax advice.  Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

**5.      No Admissions Made**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Subject Borrowers) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Subject Borrowers, the Reorganized Subject Borrowers, Holders of Allowed Claims or Equity Interests or any other parties in interest.

6.      **Failure to Identify Litigation Claims or Projected Objections**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement. The Subject Borrowers or the Reorganized Subject Borrowers may seek to investigate, file and prosecute Claims and Equity Interests and may object to Claims after the Confirmation or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such Claims or Objections to Claims.

**NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO CLAIM IS, OR IS NOT, IDENTIFIED IN THIS DISCLOSURE STATEMENT. MOREOVER, THE SUBJECT BORROWERS OR THE REORGANIZED SUBJECT BORROWERS, AS APPLICABLE, MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE LITIGATION CLAIMS AND PROJECTED OBJECTIONS TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.**

7.      **No Waiver of Right to Object or Right to Recover Transfers and Assets**

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Subject Borrowers or the Reorganized Subject Borrowers (or any party in interest, as the case may be) to object to that Holder's Allowed Claim, or recover any preferential, fraudulent or other voidable transfer or assets, regardless of whether any Claims or Causes of Action of the Subject Borrowers or its respective Estates are specifically or generally identified herein.

8.      **Information Was Provided by the Subject Borrowers and Was Relied Upon by the Subject Borrowers' Advisors**

Counsel to and other advisors retained by the Subject Borrowers have relied upon information provided by the Subject Borrowers in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Subject Borrowers have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

9.      **Potential Exists for Inaccuracies, and the Subject Borrowers Have No Duty to Update**

The statements contained in this Disclosure Statement are made by the Subject Borrowers as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Subject Borrowers have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Subject Borrowers nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Subject Borrowers may subsequently update the information in this Disclosure Statement, the Subject Borrowers have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

10.     **No Representations Outside the Disclosure Statement are Authorized**

No representations concerning or relating to the Subject Borrowers, the Chapter 11 Cases or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision.

### D.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed, the alternatives include (i) continuation of the Chapter 11 Cases and formulation of an alternative plan or plans of reorganization or (ii) liquidation of the Subject Borrowers under chapter 7 or chapter 11 of the Bankruptcy Code.[6]  Each of these possibilities is discussed in turn below.

### 1.    Continuation of the Chapter 11 Cases

If the Subject Borrowers remain in chapter 11, the Subject Borrowers could continue to operate their businesses and manage their properties as debtors in possession, but they would remain subject to the restrictions imposed by the Bankruptcy Code.  It is not clear whether the Subject Borrowers could continue as viable going concerns in a protracted chapter 11 case. The Subject Borrowers could have difficulty operating with high costs, operating financing and the eroding confidence of their lenders, if the Subject Borrowers remained in chapter 11.  It is highly unlikely that the Subject Borrowers would be able to find alternative financing if the DIP Credit Agreement were terminated.  If the Subject Borrowers were able to obtain financing and continue as viable going concerns, the Subject Borrowers (or other parties in interest) could ultimately propose another plan or attempt to liquidate the Subject Borrowers under chapter 7 or chapter 11.  Such plans might involve either a reorganization and continuation of the Subject Borrowers' businesses, or an orderly liquidation of its assets, or a combination of both.

### 2.    Liquidation Under Chapter 7 or Chapter 11

If the Plan is not confirmed, the Subject Borrowers' Chapter 11 Cases could be converted to liquidation cases under chapter 7 of the Bankruptcy Code.  In chapter 7, a trustee would be appointed to promptly liquidate the assets of the Subject Borrowers.

The Subject Borrowers believes that in a liquidation under chapter 7, before creditors received any distributions, additional administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee, along with an increase in expenses associated with an increase in the number of unsecured claims that would be expected, would cause a substantial diminution in the value of the Estates.  The assets available for distribution to creditors and equity holders would be reduced by such additional expenses and by Claims, some of which would be entitled to priority, which would arise by reason of the liquidation and the failure to realize the greater going concern value of the Subject Borrowers' assets.  A discussion of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims and the Subject Borrowers' liquidation analysis is set forth in the Liquidation Analysis attached hereto as **Exhibit C**.  The Subject Borrowers could also be liquidated pursuant to the provisions of a chapter 11 plan of reorganization.  In a liquidation under chapter 11, the Subject Borrowers' assets could be sold in a more orderly fashion over a longer period of time than in a liquidation under chapter 7.  Thus, chapter 11 liquidation might result in larger recoveries than in a chapter 7 liquidation, but the delay in distributions could result in lower present values being received and higher administrative costs.  Because a trustee is not required in a chapter 11 case, expenses for professional fees could be lower than in a chapter 7 case, in which a trustee must be appointed.  Any distributions to the Holders of Claims or Equity Interests under a chapter 11 liquidation plan probably would be delayed substantially.

### IX.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A.    GENERAL TAX CONSIDERATIONS

The following discussion is a summary of certain material federal income tax consequences expected to result from the Consummation of the Plan, is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular Holder of a Claim or Equity Interest.  This discussion does not purport to be a complete analysis or listing of all potential tax considerations.  This discussion does not address aspects of federal income taxation that may be relevant to a

---

[6]    Modification of this Plan, however, may be permitted only with the prior written approval of the Holders of Secured Claims

particular Holder of a Claim or Equity Interest subject to special treatment under federal income tax laws (such as foreign taxpayers, broker dealers, banks, thrifts, insurance companies, financial institutions, regulated investment companies, real estate investment trusts and pension plans and other tax exempt investors), and does not discuss any aspects of state, local or foreign tax laws.  Furthermore, this summary does not address all of the federal income tax consequences that may be relevant to a Holder of a Claim or Equity Interest, such as the potential application of the alternative minimum tax.

This discussion is based on existing provisions of the Internal Revenue Code of 1986, as amended (the "IRC"), existing and proposed Treasury Regulations promulgated thereunder, and current administrative rulings and court decisions.  Legislative, judicial, or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the federal income tax consequences of the Plan.  Any such changes or interpretations may be retroactive and could significantly affect the federal income tax consequences of the Plan.

No ruling has been requested or obtained from the Internal Revenue Service (the "IRS") with respect to any tax aspects of the Plan and no opinion of counsel has been sought or obtained with respect thereto. No representations or assurances are being made to the Holders of Claims or Equity Interests with respect to the federal income tax consequences described herein.

Accordingly, the following summary of certain federal income tax consequences of the plan is for informational purposes only and is not a substitute for careful tax planning or advice based upon the individual circumstances pertaining to a particular Holder of a claim or interest.  Each Holder of a claim or interest is strongly urged to consult with its own tax advisors regarding the federal, state, local and other tax consequences of the Plan.

<p style="text-align:center">*    *    *    *    *</p>

**INTERNAL REVENUE SERVICE CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE UNITED STATES INTERNAL REVENUE SERVICE, ANY TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX RELATED PENALTIES UNDER THE TAX CODE.  TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT WRITTEN TO SUPPORT THE PROMOTION, MARKETING OR PROMOTION OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE DISCLOSURE STATEMENT.  EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

<p style="text-align:center">*    *    *    *    *</p>

1.	**Information Reporting and Backup Withholding**

Under the backup withholding rules, a Holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan unless that Holder:  (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact, or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income.  Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax.

The Subject Borrowers will withhold all amounts required by law to be withheld from payments of interest and dividends. The Subject Borrowers will comply with all applicable reporting requirements of the Internal Revenue Code.

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING

<p style="text-align:center">63</p>

WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES.   ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

**B.      RESERVATION OF RIGHTS**

        This tax section is subject to change (possibly substantially) based on subsequent changes to other provisions of the Plan.  The Subject Borrowers and their advisors reserve the right to further modify, revise or supplement this Section IX and the other tax related sections of the Plan prior to the date by which objections to Confirmation of the Plan must be filed and served.

# X.    GLOSSARY OF DEFINED TERMS

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (e) unless otherwise stated, the words ''herein,'' "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (i) the terms of the Plan are not intended to alter the terms of the DIP Credit Agreement in any way and, further, that in the event of any inconsistency between the terms of the Plan and the DIP Credit Agreement shall control.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the state of New York, without giving effect to the principles of conflict of laws thereof.

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the petition date and through the Effective Date of preserving the Estate and operating the businesses of the Subject Borrowers; (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the petition date; (c) all fees and charges assessed against the Estate pursuant to chapter 123 of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

2.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

3.      "*Allowed*" means with respect to Claims: (a) any Claim proof of which is timely Filed (or for which Claim under the Plan, the Bankruptcy Code, or Final Order of the Bankruptcy Court a Proof of Claim is or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed for voting purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Subject Borrowers and without further notice to any party or action, approval, or order of the Bankruptcy Court.

4.    "*Allowed Lenders' Claims*" shall mean the claim or claims, individually or in the aggregate, of each or all of the Holder of Secured Claims, for that amount set forth in the Loan Modification Term Sheet, plus any additional amounts, charges or fees permitted under the respective loan documents between the Holders of Secured Claims and the Subject Borrowers or applicable law, and which Allowed Lenders' Claims shall be deemed Allowed for all purposes, including but not limited to voting, distribution and credit bidding, and shall be Allowed without offset, deduction, avoidance, recoupment, recharacterization or subordination and without any requirement to file a Proof of Claim.

5.    "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

6.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as applicable to the Chapter 11 Cases.

7.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Indiana having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the order of the United States District Court for the Southern District of Indiana, the United States District Court for the Southern District of Indiana.

8.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

9.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

10.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

11.    "*Causes of Action*" means any claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the petition date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.   Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

12.    "*Certificate"* means any instrument evidencing a Claim or an Equity Interest.

13.    "*Chapter 11 Cases*" means the chapter 11 cases pending for the Subject Borrowers under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

14.    "*Claim*" means any claim against a Subject Borrower as defined in section 101(5) of the Bankruptcy Code.

15.    "*Claims Bar Date*" means, as applicable:  (a) the General Bar Date; (b) the Government Claims Bar Date; or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing such claims.

16.    "*Claims Objection Bar Date*" means, as applicable, the latest of:  (a) 180 days after the Effective Date; (b) 180 days after the relevant Proof of Claim is Filed; or (c) such later period of limitation as may be

specifically fixed by the Subject Borrowers or the Reorganized Subject Borrowers.

17.    "*Claims Register*" means the official register of Claims.

18.    "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

19.    "*Committee*" or "*Committees*" means any official committee (and any and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

20.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A of the Plan having been:  (a) satisfied; or (b) waived pursuant to Article IX.C of the Plan.

21.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

22.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

23.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

24.    "*Consummation*" means the occurrence of the Effective Date.

25.    "*D&O Liability Insurance Policies*" means all insurance policies for directors', managers', and officers' liability maintained by the Subject Borrowers as of the petition date.

26.    "*Debtor*s" means the debtors whose Chapter 11 Cases are being jointly administered under Chapter 11 Case No.  09-06065-BHL-11 by the Bankruptcy Court (including the Subject Borrowers and the Original Debtors).

27.    "*Debtors in Possession*" means the Subject Borrowers, as debtors in possession in the Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

28.    "*Disbursing Agent*" means the Reorganized Subject Borrowers, or the Entity or Entities chosen by the Reorganized Subject Borrowers to make or facilitate distributions pursuant to the Plan.

29.    "*Disclosure Statement*" means the *Disclosure Statement for the Subject Borrowers' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated [TO COME], as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

30.    "*Disputed*" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

31.    "*Effective Date*" means the date selected by the Subject Borrowers that is a Business Day after the Confirmation Date on which the conditions as specified in the Plan, including Article IX.B of the Plan, have been satisfied or waived.

32.    "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

33.    "*Equity Interest*" means any share of common stock, preferred stock or other instrument evidencing an ownership interest in the Subject Borrowers, whether or not transferable, and any option, warrant or

right, contractual or otherwise, to acquire any such interest in the Subject Borrowers that existed immediately prior to the Effective Date, including any Claim subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising therefrom.

34.    "*Estate*" means, as to each Subject Borrower, the estate created for the Subject Borrower in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

35.    "*Exculpated Parties*" means, collectively: (a) the Subject Borrowers; (b) the Reorganized Subject Borrowers; and (c) all of the current and former members (including *ex officio* members), officers, directors, managers, employees, partners, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives of each of the foregoing Entities (whether current or former, in each case in his, her or its capacity as such).

36.    "*Exculpation*" means the exculpation provision set forth in Article VII.B of the Plan.

37.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

38.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

39.    "*General Bar Date*" means February 1, 2010.

40.    "*General Unsecured Claim*" means any unsecured Claim against the Subject Borrowers that is not:  (a) an Administrative Claim; (b) a Priority Tax Claim; (c) a Secured Claim; or (d) an Intercompany Claim.

41.    "*Government Claims Bar Date*" means the first Business Day that is 180 days after the Effective Date.

42.    "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

43.    "*Holder*" means any Entity holding a Claim or an Equity Interest.

44.    "*Holder of Secured Claims*" shall refer to each of the Holders set forth in the Loan Modification Term Sheet, each of whom shall be deemed to be a Holder of Secured Claims, for all purpose in these Chapter 11 Cases, in those amounts identified in the "Existing Outstanding" column in the chart in the "Facility Amount" section of the Loan Modification Term Sheet, plus any other amounts set forth in the Loan Modification Term Sheet, plus all other sums due and owing under such Holders' applicable loan documents and applicable state or federal law.

45.    "*Impaired*" means any Claim or Equity Interest in an Impaired Class.

46.    "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

47.    "*Intercompany Claim*" means any Claim held by a Subject Borrower against another Subject Borrower or any Claim held by an Affiliate against a Subject Borrower.

48.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

49.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

50.     "*Loan Modification Term Sheet*" means that certain Summary of Terms and Conditions attached hereto as **Exhibit D**.

51.     "*New Board*" means the initial board of directors of the Reorganized Subject Borrowers.

52.     "*Original Debtors*" means the Debtors other than the Subject Borrowers.

53.     "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code.

54.     "*Plan*" means this *Subject Borrowers' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified from time to time.

55.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

56.     "*Priority Tax Claims Bar Date*" means the first Business Day that is 180 days after the Effective Date.

57.     "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

58.     "*Professional*" means an Entity:  (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

59.     "*Proof of Claim*" means a proof of Claim Filed against the Subject Borrowers in the Chapter 11 Cases.

60.     "*Record Date*" means the close of business on February 22, 2010.

61.     "*Reorganized Subject Borrowers*" means the Subject Borrowers or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

62.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs Filed by the Subject Borrowers pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time

63.     "*Section 510(b) Claims*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; provided that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Equity Interest.

64.     "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.  For purposes of this Plan, the Allowed Lenders' Claims are deemed Allowed for the full amounts shown in the "Existing Outstanding" column in the chart in the "Facility Amount" section of the Loan Modification Term Sheet, plus any other amounts set forth in the Loan Modification Term

Sheet, plus other charges, expenses, fees and other amounts permitted under applicable law, all as set forth in the Loan Modification Term Sheet.

65.    "*Secured Claim*" means a Claim that is Secured.

66.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state or local law.

67.    "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as amended.

68.    "*Subject Borrower*" means a Debtor listed on **Exhibit A** to the Plan, and, from, and after the Effective Date, to the extent a Subject Borrower is not dissolved, consolidated, or merged into another Subject Borrower pursuant to the Plan, such Subject Borrower, as reorganized, and to the extent a Subject Borrower is dissolved, consolidated, or merged into another Subject Borrower pursuant to the Plan, the applicable Subject Borrower that succeeds to the interests of the Subject Borrower as a result of such dissolution, consolidation, or merger.

69.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

70.    "*Voting Deadline*" means 5:00 p.m. (prevailing Eastern Time) on March 22, 2010.

**XI.**
**CONCLUSION AND RECOMMENDATION**

We believe that confirmation of the Plan is preferable to the alternatives described above because it provides the greatest distributions and opportunity for distributions to certain Holders of Claims against the Subject Borrowers. In addition, any alternative to confirmation of the Plan could result in extensive delays and increased administrative expenses.

Accordingly, we urge all Holders of Claims entitled to vote on the Plan to vote to accept the Plan and to evidence such acceptance by returning their Ballots so that they are received no later than March 22, 2010 at 5:00 p.m. prevailing Eastern Time.

Dated:  February 22, 2010

Respectfully submitted,

LAUTH INVESTMENT PROPERTIES, LLC et al.

*/s/ Robert L. Lauth, Jr.*

Name:        Robert L. Lauth, Jr.

Its:             Chairman & Chief Executive Officer

Prepared By:

James A. Stempel (admitted *pro hac vice*)            Jerald I. Ancel
Ross M. Kwasteniet (admitted *pro hac vice*)         Jeffrey J. Graham
Arun K. Kurichety (admitted *pro hac vice*)           TAFT STETTINIUS & HOLLISTER LLP
KIRKLAND & ELLIS LLP                                           One Indiana Square, Suite 3500
300 North LaSalle Drive                                           Indianapolis, Indiana  46204
Chicago, Illinois  60654-3406                                    Telephone:       (317) 713-3500
Telephone:   (312) 862-2000                                     Facsimile:        (317) 713-3699
Facsimile:    (312) 862-2200

Co-Counsel to the Subject Borrowers