**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LAUTH INVESTMENT PROPERTIES, LLC, et al.,[1] | ) | Case No. 09-06065-BHL-11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

**DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (WITH TECHNICAL MODIFICATIONS)**

---

James A. Stempel (admitted *pro hac vice*)
Ross M. Kwasteniet (admitted *pro hac vice*)
Arun K. Kurichety (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654-3406
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Jerald I. Ancel
Jeffrey J. Graham
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana  46204
Telephone:        (317) 713-3500
Facsimile:        (317) 713-3699

Co-Counsel to the Debtors

Dated:  ~~April 28,~~ **May 18,** 2011

---

[1]    The Debtors include:  Lauth Investment Properties, LLC (09-06065); LIP Development, LLC (09-06066); and LIP Investment, LLC (09-06067).

K&E 17822195.19

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
    AND GOVERNING LAW ................................................................................................ 1
    A.     Defined Terms ...................................................................................................... 1
    B.     Rules of Interpretation ....................................................................................... 8
    C.     Computation of Time .......................................................................................... 9
    D.     Governing Law .................................................................................................... 9
    E.     Reference to Monetary Figures ......................................................................... 9
    F.     Reference to the Debtors or the Reorganized Debtors .................................... 9

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS ............................................. 9
    A.     Administrative Claims ........................................................................................ 9
    B.     Priority Tax Claims ........................................................................................... 10

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............ 10
    A.     Summary of Classification ............................................................................... 10
    B.     Treatment of Claims and Equity Interests ..................................................... 11
    C.     Intercompany Claims ........................................................................................ 18
    D.     Special Provision Governing Unimpaired Claims ................................... ~~18~~19
    E.     Discharge of Claims .................................................................................. ~~18~~19
    F.     Acceptance or Rejection of the Plan ............................................................... 19
    G.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .......... 19
    H.     Controversy Concerning Impairment ..................................................... ~~19~~20

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............................... ~~19~~20
    A.     Sources of Consideration for Plan Distributions ................................... ~~19~~20
    B.     Exit Term Loan ........................................................................................ ~~19~~20
    C.     M&I Settlement Agreement .............................................................................. 20
    D.     New <u>LIP</u> Class A Preferred Units .................................................................... 20
    ~~E.~~     ~~New LIP I Class A Preferred Units~~ ................................................................ ~~21~~
    E.     Corporate Existence ................................................................................. ~~20~~21
    <u>F</u>~~G~~.     Vesting of Assets in the Reorganized Debtors ...................................... ~~20~~21
    <u>G</u>~~H~~.     Cancellation of Securities and Agreements ..................................................... 21
    <u>H</u>~~I~~.     Restructuring Transactions ..................................................................... ~~21~~22
    <u>I</u>~~J~~.     Effectuating Documents; Further Transactions ................................... ~~21~~22
    <u>J</u>~~K~~.     Exemption from Certain Taxes and Fees ............................................... ~~21~~22
    <u>K</u>~~L~~.     Indemnification Provisions ............................................................................... 22
    <u>L</u>~~M~~.     Guaranties ................................................................................................. ~~22~~23
    <u>M</u>~~N~~.     Preservation of Rights of Action ............................................................ ~~22~~23

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS ........................................... 23
    A.     Timing and Calculation of Amounts to Be Distributed ................................ 23
    B.     Disbursing Agent ...................................................................................... ~~23~~24
    C.     Rights and Powers of Disbursing Agent ................................................. ~~23~~24
    D.     Distributions on Account of Claims Allowed After the Effective Date ... ~~23~~24
    E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions ...... ~~24~~25
    F.     Compliance with Tax Requirements/Allocations ................................... ~~24~~25
    G.     Setoffs ....................................................................................................... ~~24~~25

ARTICLE VI. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
    DISPUTED CLAIMS .................................................................................................. ~~25~~26
    A.     Resolution of Disputed Claims ................................................................ ~~25~~26
    B.     Disallowance of Claims ............................................................................ ~~26~~27
    C.     Amendments to Claims ............................................................................ ~~26~~27

**ARTICLE VII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ................. 2627
    A.    **Compromise and Settlement** ............................................................... 2627
    B.    **Debtor Release** ...................................................................................... 2728
    C.    **Exculpation** ........................................................................................... 2829
    D.    **Injunction** ............................................................................................. 2930
    E.    **Setoffs**................................................................................................... 30
    F.    **Release of Liens** ................................................................................... 3031

**ARTICLE VIII. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS**........... 3031
    A.    **Professional Fee Escrow Account** ...................................................... 3031
    B.    **Professional Fee Reserve Amount** ..................................................... 3132
    C.    **Post-Confirmation Date Fees and Expenses** ..................................... 3132

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF**
    **THE PLAN** ........................................................................................................... 3132
    A.    **Conditions Precedent to Confirmation** ............................................ 3132
    B.    **Conditions Precedent to Consummation** .......................................... 3132
    C.    **Waiver of Conditions** ......................................................................... 3132
    D.    **Effective Date** ...................................................................................... 32
    E.    **Effect of Non-Occurrence of Conditions to Consummation** ........... 3233

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ........................ 3233
    A.    **Modification and Amendments** .......................................................... 3233
    B.    **Effect of Confirmation on Modifications** ......................................... 3233
    C.    **Revocation or Withdrawal of the Plan** ............................................. 3233

**ARTICLE XI. RETENTION OF JURISDICTION** ................................................................... 3233

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ................................................................... 3435
    A.    **Immediate Binding Effect** .................................................................. 3435
    B.    **Additional Documents** ........................................................................ 3435
    C.    **Payment of Statutory Fees** ................................................................. 3435
    D.    **Dissolution of Committees** ................................................................. 3435
    E.    **Reservation of Rights** ......................................................................... 3435
    F.    **Successors and Assigns** ....................................................................... 3536
    G.    **Service of Documents** ......................................................................... 3536
    H.    **Term of Injunctions or Stays** ............................................................ 3536
    I.    **Entire Agreement** ................................................................................ 3536
    J.    **Nonseverability of Plan Provisions** .................................................. 3536

## INTRODUCTION

Lauth Investment Properties, LLC, LIP Development, LLC, and LIP Investment, LLC, as debtors and debtors in possession, in the above-captioned Chapter 11 Cases respectfully propose the following joint plan of reorganization for the resolution of outstanding Claims against, and Equity Interests in, the Debtors pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101–1532.  Capitalized terms used in the Plan and not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A hereof.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, as well as a summary and description of the Plan and certain related matters.  The Debtors are the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.      Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "*Accrued Professional Compensation*" means, at any given moment, all accrued fees and expenses (including success fees) for services rendered by a Professional through and including the Confirmation Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Orders or other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall no longer constitute Accrued Professional Compensation.

2.      *"Administrative Claim"* means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for legal, financial advisory, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date; (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

3.      "*Administrative Claims Bar Date*" means the first Business Day that is 90 days following the Effective Date, except as otherwise provided herein.

4.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.      "*Allowed*" means with respect to Claims: (a) any Claim proof of which is timely Filed (or for which Claim under the Plan, the Bankruptcy Code, or Final Order of the Bankruptcy Court a Proof of Claim is or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; <u>provided</u>, <u>however</u>, that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed for voting purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

6.    "*Avoidance Actions*" means any and all Claims for relief of the Debtors under Chapter 5 of the Bankruptcy Code, but excluding any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

7.    "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

8.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as applicable to the Chapter 11 Cases.

9.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Indiana having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the order of the United States District Court for the Southern District of Indiana, the United States District Court for the Southern District of Indiana.

10.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

11.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

13.    "*Cash Collateral Orders*" means collectively the interim and final orders authorizing the Debtors' use of cash collateral held by M&I Marshall & Ilsley Bank to secure that certain Credit Agreement, dated as of November 27, 2007, by and between LIP Development, LLC and M&I Marshall & Ilsley Bank as successor in interest to First Indiana Bank, N.A [Docket Nos. 90, 340].

14.    "*Causes of Action*" means any Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; and (f) any claim listed in the Plan Supplement; but excluding any Avoidance Actions.

15.    "*Certificate*" means any instrument evidencing a Claim or an Equity Interest.

16.    "*Chapter 11 Case*s" means the chapter 11 cases pending for the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

17.    "*Claim*" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

18.    "*Claims Bar Date*" means, as applicable:  (a) the General Bar Date; (b) the Government Claims Bar Date; (c) the Administrative Claims Bar Date; or (d) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing such Claims.

19.    "*Claims Objection Bar Date*" means, as applicable, the later of:  (a) 180 days after the Effective Date; or (b) such later period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors.

20.    "*Claims Register*" means the official register of Claims.

21.    "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

22.    "*Committee*" or "*Committees*" means any official committee (and any and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

23.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been:  (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

24.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

25.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

26.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.    "*Consummation*" means the occurrence of the Effective Date.

**28.    "*Convenience Class Claims*" means any General Unsecured Claim not previously objected to that is $6,000 or less.**

**29.**    ~~28.~~ "*D&O Liability Insurance Policies*" means all insurance policies for directors', managers', and officers' liability maintained by the Debtors as of the Petition Date.

**30.**    ~~29.~~ "*Debtor*" means one of the Debtors, in its individual capacity as a debtor and as a debtor in possession in the Chapter 11 Cases.

**31.**    ~~30.~~ "*Debtor Release*" means the release given by the Debtors to the Debtor Releasees as set forth in Article VII.B hereof.

**32.**    ~~31.~~ "*Debtor Releasee*" means, collectively, (a) all current and former officers, directors, managers, and employees of the Debtors; (b) all attorneys, financial advisors, advisors, accountants, investment bankers, investment advisors, actuaries, professionals, and affiliates of the Debtors, their subsidiaries, and each of their respective predecessors and successors in interest, and all of their respective current and former members (including *ex officio* members), officers, directors, employees, partners, attorneys, financial advisors, accountants, managed funds, investment bankers, investment advisors, actuaries, professionals, and affiliates, each in their respective capacities as such; and (c) the DIP Lender; provided, however, that no Non-Released Party will be a Debtor Releasee.

**33.**    ~~32.~~ "*Debtors*" means, collectively, Lauth Investment Properties, LLC, LIP Development, LLC, and LIP Investment, LLC.

**34.**    ~~33.~~ "*Debtors in Possession*" means the Debtors, as debtors in possession in the Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**35.**    ~~34.~~ "*DIP Credit Agreement*s" means, collectively, (a) the Secured Debtor-In-Possession Credit and Security Agreement, dated as of August 25, 2009, by and between the DIP Lender and the Debtors, as the same may be amended, modified, ratified, extended, renewed, restated, or replaced and (b) the Second Secured

3

Debtor-In-Possession Credit and Security Agreement, dated as of June 3, 2010, by and between the DIP Lender and the Debtors, as the same may be amended, modified, ratified, extended, renewed, restated, or replaced.

**36.** 35. "*DIP Credit Agreement Claim*" means any Claim arising under or related to the DIP Credit Agreements.

**37.** 36. "*DIP Lender*" means LIP Lenders, LLC.

**38.** 37. "*Disbursing Agent*" means the Reorganized Debtors, or the Entity or Entities chosen by the Reorganized Debtors to make or facilitate distributions pursuant to the Plan.

**39.** 38. "*Disclosure Statement*" means the *Disclosure Statement for the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated March 14, 2011, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

**40.** 39. "*Disputed*" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

**41.** 40. "*Effective Date*" means the date selected by the Debtors that is a Business Day after the Confirmation Date on which the conditions as specified in the Plan, including Article IX.B hereof, have been satisfied or waived. Unless otherwise specifically provided in the Plan, any of the documents contained in the Plan Supplement, or the DIP Credit Agreements, anything required to be done by the Debtors on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

**42.** 41. "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

**43.** 42. "*Equity Interest*" means any share of common stock, preferred stock, or other instrument evidencing an ownership interest in the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest in the Debtors that existed immediately prior to the Effective Date, including any Claim subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising therefrom.

**44.** 43. "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**45.** 44. "*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Debtor Releasees; and (d) all of the current and former members (including *ex officio* members), officers, directors, managers, employees, partners, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives of each of the foregoing Entities (whether current or former, in each case in his, her or its capacity as such); provided, however, that no Non-Released Party will be an Exculpated Party.

**46.** 45. "*Exculpation*" means the exculpation provision set forth in Article VII.C hereof.

**47.** 46. "*Exit Term Loan*" means that certain secured term loan in an amount equal to the balance owed under the DIP Credit Agreements to be entered into by Reorganized LIP Investment, LLC pursuant to the agreement to be executed on or before and subject to the occurrence of the Effective Date, including any agreements, amendments, supplements or documents related thereto, on terms reasonably satisfactory to the Debtors and the DIP Lender and materially consistent with the Exit Term Loan Documents.

**48.** 47. "*Exit Term Loan Agreement*" means that certain credit agreement to be entered into as of and subject to the occurrence of the Effective Date by and among Reorganized LIP Investment, LLC, as borrower, and the

Exit Term Loan lenders named therein, and the parties thereto, as amended, supplemented or otherwise modified from time to time.

**49.** 48. "*Exit Term Loan Documents*" means, collectively, all related agreements, documents or instruments to be executed or delivered in connection with the Exit Term Loan, to be included as an exhibit to the Plan Supplement.

**50.** 49. "*Fee Claim*" means a Claim for Accrued Professional Compensation.

**51.** 50. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**52.** 51. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

**53.** 52. "*General Bar Date*" means January 29, 1010.

**54.** 53. "*General Unsecured Claim*" means any unsecured Claim against the Debtors that is not: (a) an Administrative Claim; (b) a Priority Tax Claim; (c) a Secured Claim; or (d) an Intercompany **Claim; (e) a LIP Guaranty Claim; (f) a LIP D Guaranty Claim; or (g) a LIP I Guaranty** Claim.

**55.** 54. "*Global Settlement Agreement*" means that certain Wells Fargo Settlement Term Sheet attached to the *Motion of the Debtors For Entry of an Order Approving Global Settlement Between (A) Debtors, (B) Wells Fargo Bank and (C) Certain Guarantors*, filed on February 28, 2011 [Docket No. 1736], as such may be amended from time to time, and as approved by the Bankruptcy Court on April 6, 2011 [Docket No. 1871], along with all documents executed pursuant thereto.

**56.** 55. "*Government Claims Bar Date*" means February 25, 2010.

**57.** 56. "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

**58.** 57. "*Guaranty*" means any guaranty issued by the Debtors in connection with any loan or credit agreement; provided, however, that notwithstanding the classification and treatment of the LIP Guaranty Claims, the LIP I Guaranty Claims, and the LIP D Guaranty Claims, none of the guaranty obligations of any or all of the Debtors, the DIP Lender or any other parties under the Global Settlement Agreement or under the LIP Guaranty Claims, LIP D Guaranty Claims, and the LIP I Guaranty Claims shall be affected, altered, released, discharged, or otherwise modified by the Plan or any document executed pursuant thereto, and all such guaranty obligations shall survive the Confirmation Order.

**59.** 58. "*Holder*" means any Entity holding a Claim or an Equity Interest.

**60.** 59. "*Impaired*" means any Claim or Equity Interest in an Impaired Class.

**61.** 60. "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

**62.** 61. "*Indemnification*" means the indemnification provision set forth in Article IV.K**L** hereof.

**63.** 62. "*Indemnification Provision*" means each of the Debtors' indemnification provisions currently in place whether in the bylaws, certificates of incorporation, other formation documents, board resolutions, employment

contracts, or other indemnification agreements for the current and former directors, officers, managers, employees, attorneys, other professionals and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates.

**64.** ~~63.~~ "*Indemnified Parties*" means, collectively, the Debtors and their respective current and former officers, directors, managers, and employees, each in their respective capacities as such.

**65.** ~~64.~~ "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor or any Claim held by an Affiliate against a Debtor.

**66.** ~~65.~~ "*Interim Compensation Orders*" means orders of the Bankruptcy Court allowing Professionals to seek interim compensation in accordance with the procedures approved therein, as the same may be modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

**67.** ~~66.~~ "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

**68.** ~~67.~~ "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

**69.** ~~68.~~ "*LIP Guaranty Claim*" means any Claim against Lauth Investment Properties, LLC arising from a Guaranty issued by Lauth Investment Properties, LLC.

**70.** ~~69.~~ "*LIP D Guaranty Claim*" means any Claim against LIP Development, LLC arising from a Guaranty issued by LIP Development, LLC.

**71.** ~~70.~~ "*LIP I Guaranty Claim*" means any Claim against LIP Investment, LLC arising from a Guaranty issued by LIP Investment, LLC.

**72.** ~~71.~~ "*LIP Mezz Lender*" means LIP Mezz Lender, LLC.

**73.** ~~72.~~ "*LIP Unsecured Claim Allocation*" means $10,000.

**74.** ~~73.~~ "*LIP D Unsecured Claim Allocation*" means $10,000.

**75.** ~~74.~~ "*LIP I Unsecured Claim Allocation*" means $1,000.

**76.** ~~75.~~ "*Mezzanine Loan Claims*" means any Claim arising out of that certain Mezzanine Loan Agreement by and between LIP Development, LLC and LIP Holdings, LLC and which Claim was subsequently transferred and assigned to LIP Mezz Lender pursuant to the *Order Approving Global Settlement Between the Debtors and LIP Holdings, LLC* [Docket No. 1416]; it being expressly understood that any Mezzanine Loan Claim shall be consistent with the Global Settlement Agreement.\

**77.** ~~76.~~ "*M&I Adequate Protection Claim*" means any claim against the Debtors arising out of the Cash Collateral Orders for adequate protection.

**78.** ~~77.~~ "*M&I Line of Credit*" means that certain credit agreement, dated as of November 27, 2007, by and between LIP Development, LLC, as borrower, and M&I Marshall & Ilsley Bank, as successor in interest to First Indiana Bank, N.A., as lender, in the aggregate principal amount of not less than $15,030,966.

**79.** ~~78.~~ "*M&I LOC Claim*" means any Claim against the Debtors arising out of the M&I Line of Credit.

**80.** ~~79.~~ "*M&I Settlement Agreement*" means that certain settlement agreement between the Debtors and M&I Marshall & Ilsley Bank resolving all claims of M&I Marshall & Ilsley Bank against the Debtors to be filed prior to the Confirmation Date.

6

**81.**    80. "*M&I Settlement Collateral*" means the land collateral securing the M&I Line of Credit and the land collateral securing the adequate protection obligations under the Cash Collateral Orders, which includes the land owned by Edgewater Park Partners, LLC, JC Medical Partners, LLC, Parcland Park Partners, LLC, Riverview Park Partners, LLC, Southgate Park Partners, LLC, and Whitestone Medical Partners Two, LP.

**82.**    81. "*New* **LIP Class A Preferred Units" means the Class A preferred units of equity in Reorganized Lauth Investment Properties, LLC to be authorized, issued, or reserved on the Effective Date pursuant to the Plan.**

**83.**    "***New LIP I*** *Class A Preferred Units*" means the Class A preferred units of equity in Reorganized LIP Investment, LLC to be authorized, issued, or reserved on the Effective Date pursuant to the Plan.

**84.**    82. "*Non-Released Parties*" means those Entities identified in the Plan Supplement as Non-Released Parties.

**85.**    83. "*Other Secured Claim*" means any secured Claim, other than (a) a DIP Agreement Claim and (b) a M&I LOC Claim.

**86.**    84. "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

**87.**    85. "*Petition Date*" means May 1, 2009, the date on which the Debtors Filed their voluntary petitions for relief commencing the Chapter 11 Cases in the Bankruptcy Court.

**88.**    86. "*Plan*" means this *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified from time to time, including the Plan Supplement, which is incorporated herein by reference.

**89.**    87. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including, (a) a schedule of Causes of Action to be retained by the Reorganized Debtors, (b) the Exit Term Loan Documents, and (c) the form of the New **LIP Class A Preferred Units, and (d) the form of the New LIP I** Class A Preferred Units.

**90.**    88. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

**91.**    89. "*Priority Tax Claims Bar Date*" means the first Business Day that is 180 days after the Effective Date.

**92.**    90. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

**93.**    91. "*Professional*" means an Entity: (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**94.**    92. "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Reorganized Debtors on and after the Effective Date solely for the purpose of paying all Allowed and unpaid Fee Claims.

**95.**    93. "*Professional Fee Reserve Amount*" means the aggregate Accrued Professional Compensation through the Confirmation Date as estimated by the Professionals in accordance with Article VIII.B hereof.

**96.**     94. "*Profits Interests*" means profits interests in Lauth Investment Properties, LLC.

**97.**     95. "*Project Entities*" means all indirect and direct subsidiaries of LIP Investment, LLC.

**98.**     96. "*Proof of Claim*" means a proof of Claim Filed against the Debtors in the Chapter 11 Cases.

**99.**     97. "*Record Date*" means the close of business on April 22, 2011.

**100.**     98. "*Releasing Parties*" means, collectively: (a) the DIP Lender; and (b) all Holders of Claims or Equity Interests except Holders of any Claims or Equity Interests: (x) who vote to reject the Plan; (y) who are in a Class that is deemed to accept the Plan; or (z) who are in a Class that is deemed to reject the Plan.

**101.**     99. "*Reorganized Debtors*" means the Debtors or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

**102.**     100. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

**103.**     101. "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estates, interest in such property, or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

**104.**     102. "*Secured Claim*" means a Claim that is Secured.

**105.**     103. "*Swap Agreements*" means interest rate swaps entered into under ISDA Master Agreements.

**106.**     104. "*Swap Agreements Claim*" means any Claim against Lauth Investment Properties, LLC by counterparties to Swap Agreements.

**107.**     105. "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**108.**     106. "*Voting Deadline*" means 5:00 p.m. (prevailing Eastern Time) on May 13, 2011.

**109.**     107. "*Wells Fargo*" means Wells Fargo Bank, National Association.

*B.     Rules of Interpretation*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the

Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be and _provided_, _further_, that in the event of any inconsistency between the Plan and the Global Settlement Agreement, the terms of the Global Settlement Agreement shall prevail; _provided_, _further_, that in the event of any inconsistency between the Plan and the M&I Settlement Agreement, the terms of the M&I Settlement Agreement shall prevail.

C.      *Computation of Time*

        The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.      *Governing Law*

        Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Indiana, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; _provided_, _however_, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in Indiana shall be governed by the laws of the state of incorporation of the applicable Debtors or Reorganized Debtors, as applicable.

E.      *Reference to Monetary Figures*

        All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors or the Reorganized Debtors*

        Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

A.      *Administrative Claims*

        1.      Administrative Claims Other Than Fee Claims

        Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Administrative Claim, each Holder of such Allowed Administrative Claim shall be paid in full in Cash the unpaid portion of such Allowed Administrative Claim in accordance with the terms of the applicable contract or agreement governing such Claim, if any, or otherwise in the ordinary course of business.

        Except as otherwise provided in this Article II.A hereof, unless previously Filed, requests for payment of Administrative Claims (other than Fee Claims) must be Filed and served pursuant to the procedures specified in the Confirmation Order and prior to the Administrative Claims Bar Date.  Holders of Administrative Claims (other than Fee Claims) that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, stopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or the Reorganized Debtors, and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, and the requesting party by the later of (x) 180 days after the Effective Date and (y) 180 days after the Filing of the applicable request for payment of such Administrative Claims.

9

2.      Fee Claims

Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 60 days after the Effective Date. Objections to any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party by the later of (x) 60 days after the Effective Date and (y) 45 days after the Filing of the applicable request for payment of the Fee Claim. To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.

B.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by the Debtors prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive on account of such Claim, payment in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, regular installment payments in Cash: (1) of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (2) which total value shall include simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code; and (3) over a period ending not later than five (5) years after the Petition Date.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in this Article III.

A.      *Summary of Classification*

All Claims and Equity Interests, other than Administrative Claims, Fee Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. Notwithstanding anything to the contrary set forth herein, the claims, obligations and rights of (i) Wells Fargo under the Global Settlement Agreement, including, but not limited to, any guaranty obligations issued by the Debtors to or for the benefit of Wells Fargo and (ii) the Holders of Class A-2 LIP Guaranty Claims, Class B-6 LIP D Guaranty Claims and Class C-5 LIP I Guaranty Claims, shall be expressly preserved and shall survive the Confirmation Order without offset, recoupment, defense, counterclaim, reduction, disallowance, and avoidance under any section of the Bankruptcy Code, including, but not limited to, sections 544, 547, and 548 of the Bankruptcy Code; provided, further, that notwithstanding anything to the contrary herein, in the event of any inconsistency between the Plan and the Global Settlement Agreement, the terms of the Global Settlement Agreement shall prevail; provided, further, that that notwithstanding anything to the contrary herein, in the event of any inconsistency between the Plan and the M&I Settlement Agreement, the terms of the M&I Settlement Agreement shall prevail.

1.      Class Identification

The classification of Claims and Equity Interests against the Debtors pursuant to the Plan is as follows:

(a)      Lauth Investment Properties, LLC

10

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| A-1 | DIP Agreement Claims | Impaired | Entitled to Vote |
| A-2 | LIP Guaranty Claims | Unimpaired | Deemed to Accept |
| A-3 | M&I LOC Claims | Impaired | Entitled to Vote |
| A-4 | M&I Adequate Protection Claims | Impaired | Entitled to Vote |
| A-5 | Swap Agreements Claims | Impaired | Entitled to Vote |
| A-6 | General Unsecured Claims | Impaired | Entitled to Vote |
| A-7 | Equity Interests | Unimpaired | Deemed to Accept |
| A-8 | Profits Interests | Impaired | Deemed to Reject |

(b)    LIP Development, LLC

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| B-1 | DIP Agreement Claims | Impaired | Entitled to Vote |
| B-2 | Mezzanine Loan Claims | Impaired | Entitled to Vote |
| B-3 | M&I LOC Claims | Impaired | Entitled to Vote |
| B-4 | M&I Adequate Protection Claims | Impaired | Entitled to Vote |
| B-5 | Other Secured Claims | Unimpaired | Deemed to Accept |
| B-6 | LIP D Guaranty Claims | Unimpaired | Deemed to Accept |
| B-7 | General Unsecured Claims | Impaired | Entitled to Vote |
| B-8 | Equity Interests | Unimpaired | Deemed to Accept |
| **B-9** | **Convenience Class Claims** | **Unimpaired** | **Deemed to Accept** |

(c)    LIP Investment, LLC

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| C-1 | DIP Agreement Claims | Impaired | Entitled to Vote |
| C-2 | M&I LOC Claims | Impaired | Entitled to Vote |
| C-3 | M&I Adequate Protection Claims | Impaired | Entitled to Vote |
| C-4 | Secured Claims | Unimpaired | Deemed to Accept |
| C-5 | LIP I Guaranty Claims | Unimpaired | Deemed to Accept |
| C-6 | General Unsecured Claims | Impaired | Entitled to Vote |
| C-7 | Equity Interests | Unimpaired | Deemed to Accept |
| **C-8** | **Convenience Class Claims** | **Unimpaired** | **Deemed to Accept** |

B.    *Treatment of Claims and Equity Interests*

To the extent a Class contains Allowed Claims or Allowed Equity Interests with respect to the Debtors, the treatment provided to each Class for distribution purposes is specified below:

Lauth Investment Properties, LLC

1.    Class A-1 - DIP Agreement Claims

   (a)    *Classification*:  Class A-1 consists of all DIP Agreement Claims that may exist against Lauth Investment Properties, LLC.

   (b)    *Treatment*:  Holders of Class A-1 DIP Agreement Claims held against Lauth Investment Properties, LLC (or their assignee) will receive, in full and final satisfaction, settlement, release and discharge and in exchange for each Allowed Class A-1 DIP Agreement Claim held against Lauth Investment Properties, LLC, (a) their Pro Rata share of the Exit Term Loan and (b) all Equity Interests in the Debtors shall be reinstated.

11

(c)     *Voting*:  Class A-1 is Impaired, and Holders of Class A-1 DIP Agreement Claims are entitled to vote to accept or reject the Plan.

2.     Class A-2 - LIP Guaranty Claims

(a)     *Classification*:  Class A-2 consists of all LIP Guaranty Claims that may exist against Lauth Investment Properties, LLC.

(b)     *Treatment*:  Except to the extent a Holder of a Class A-2 LIP Guaranty Claim agrees to different treatment, on the Effective Date:  (a) each Guaranty of Lauth Investment Properties, LLC shall be assumed by and reinstated against Lauth Investment Properties, LLC and Reorganized Lauth Investment Properties, LLC, shall survive the Confirmation Order and shall not be amended, altered, released, discharged or otherwise modified by any term of the Plan; and (b) each Guaranty of Lauth Investment Properties, LLC shall constitute the legal, valid and binding obligations of Lauth Investment Properties, LLC and Reorganized Lauth Investment Properties, LLC and shall be enforceable in accordance with its terms.  Notwithstanding any other provision of the Plan to the contrary and except to the extent a Holder of a Class A-2 LIP Guaranty Claim agrees to different treatment, the Plan shall leave unaltered all of the legal, equitable and contractual rights of each Holder of a Class A-2 LIP Guaranty Claim under its Guaranty of Lauth Investment Properties, LLC.  Subject to the occurrence of the Effective Date, each Holder of a Class A-2 LIP Guaranty Claim shall be deemed to hold an Allowed Claim that is not subject to estimation under the Bankruptcy Code or this Plan.

(c)     *Voting*:  Class A-2 is Unimpaired, and Holders of Class A-2 LIP Guaranty Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class A-2 LIP Guaranty Claims are not entitled to vote to accept or reject the Plan.

3.     Class A-3 - M&I LOC Claims

(a)     *Classification*:  Class A-3 consists of all M&I LOC Claims that may exist against Lauth Investment Properties, LLC.

(b)     *Treatment*:  Pursuant to the M&I Settlement Agreement, the Holders, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class A-3 M&I LOC Claim, shall receive the M&I Settlement Collateral on the Effective Date or as soon as reasonably practicable thereafter.

(c)     *Voting*:  Class A-3 is Impaired, and Holders of Class A-3 M&I LOC Claims are entitled to vote to accept or reject the Plan.

4.     Class A-4 - M&I Adequate Protection Claims

(a)     *Classification*:  Class A-4 consists of all M&I Adequate Protection Claims that may exist against Lauth Investment Properties, LLC.

(b)     *Treatment*:  Pursuant to the M&I Settlement Agreement, the Holders, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class A-4 M&I Adequate Protection Claim, shall receive the M&I Settlement Collateral on the Effective Date or as soon as reasonably practicable thereafter.

(c)     *Voting*:  Class A-4 is Impaired, and Holders of Class A-4 M&I Adequate Protection Claims are entitled to vote to accept or reject the Plan.

5.     <u>Class A-5 - Swap Agreement Claims</u>

(a)     *Classification*:  Class A-5 consists of all Swap Agreement Claims that may exist against Lauth Investment Properties, LLC.

(b)     *Treatment*:  Except to the extent a Holder of an Allowed Class A-5 Swap Agreement Claim agrees to a less favorable treatment, ~~each such Holder~~**Holders of** *Allowed Class A-5 Swap Agreement* **Claims will receive**, in full and final satisfaction, settlement, release and discharge ~~of~~ and in exchange for each ~~Allowed Class A-5~~ Swap Agreement Claim, ~~shall receive its Pro Rata share of the LIP Unsecured Claim Allocation in Cash on the later of the Effective Date or the date on which~~**New LIP Preferred Class A Units in an amount equal to** such Swap Agreement Claim ~~becomes an~~ *Allowed Class A-5 Swap Agreement Claim or as soon as reasonably practicable thereafter*.

(c)     *Voting*:  Class A-5 is Impaired, and Holders of Class A-5 Swap Agreement Claims are entitled to vote to accept or reject the Plan.

6.     <u>Class A-6 - General Unsecured Claims</u>

(a)     *Classification*:  Class A-6 consists of all General Unsecured Claims that may exist against Lauth Investment Properties, LLC.

(b)     *Treatment*:  Except to the extent a Holder of an Allowed Class A-6 General Unsecured Claim agrees to a less favorable treatment, each such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class A-6 General Unsecured Claim, shall receive its Pro Rata share of the LIP Unsecured Claim Allocation in Cash on the later of the Effective Date or the date on which such **General** Unsecured Claim becomes an Allowed Class A-6 **General** Unsecured Claim or as soon as reasonably practicable thereafter**.**

(c)     *Voting*:  Class A-6 is Impaired, and Holders of Class A-6 General Unsecured Claims are entitled to vote to accept or reject the Plan.

7.     <u>Class A-7 - Equity Interests</u>

*(a)*     *Classification*:  Class A-7 consists of all Equity Interests (other than Profits Interests) in Lauth Investment Properties, LLC.

*(b)*     *Treatment*:  On the Effective Date, all Class A-7 Equity Interests shall be reinstated as provided in the treatment of Class A-1 Claims.

*(c)*     *Voting*:  Class A-7 is Unimpaired, and Holders of Class A-7 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class A-7 Equity Interests are not entitled to vote to accept or reject the Plan.

8.     <u>Class A-8 - Profits Interests</u>

(a)     *Classification*:  Class A-8 consists of all Profits Interests in Lauth Investment Properties, LLC.

(b)     *Treatment*:  On the Effective Date, all Class A-8 Profits Interests shall be deemed canceled and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no distribution.

13

(c)     *Voting*:  Class A-8 is Impaired, and Holders of Class A-8 Profits Interests are not entitled to receive or retain any property under the Plan on account of Class A-8 Profits Interests. Therefore, Holders of Class A-8 Profits Interests are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code, and Holders of Class A-8 Profits Interests are not entitled to vote to accept or reject the Plan.

## LIP Development, LLC

1.      Class B-1 - DIP Agreement Claims

(a)     *Classification*:  Class B-1 consists of all DIP Agreement Claims that may exist against LIP Development, LLC.

(b)     *Treatment*:  Holders of Class B-1 DIP Agreement Claims will receive the treatment specified in Class A-1.

(c)     *Voting*:  Class B-1 is Impaired, and Holders of Class B-1 DIP Agreement Claims are entitled to vote to accept or reject the Plan.

2.      Class B-2 - Mezzanine Loan Claims

(a)     *Classification*:  Class B-2 consists of all Mezzanine Loan Claims that may exist against LIP Development, LLC.

(b)     *Treatment*:  Except to the extent a Holder of an Allowed Class B-2 Mezzanine Loan Claim agrees to a less favorable treatment, Holders of Allowed Class B-2 Mezzanine Loan Claims will receive, in full and final satisfaction, settlement, release and discharge and in exchange for each Mezzanine Loan Claims, their Pro Rata share of the New **LIP I** Preferred Class A Units.

(c)     *Voting*:  Class B-2 is Impaired, and Holders of Class B-2 Mezzanine Loan Claims are entitled to vote on the Plan.

3.      Class B-3 - M&I LOC Claims

(a)     *Classification*:  Class B-3 consists of all M&I LOC Claims that may exist against LIP Development, LLC.

(b)     *Treatment*:  Pursuant to the M&I Settlement Agreement, the Holders, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class B-3 M&I LOC Claim, shall receive the M&I Settlement Collateral on the Effective Date or as soon as reasonably practicable thereafter.

(c)     *Voting*:  Class B-3 is Impaired, and Holders of Class B-3 M&I LOC Claims are entitled to vote on the Plan.

4.      Class B-4 - M&I Adequate Protection Claims

(a)     *Classification*:  Class B-4 consists of all M&I Adequate Protection Claims that may exist against LIP Development, LLC.

(b)     *Treatment*:  Pursuant to the M&I Settlement Agreement, the Holders, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class B-4 M&I Adequate Protection Claim, shall receive the M&I Settlement Collateral on the Effective Date or as soon as reasonably practicable thereafter.

(c)     *Voting*:  Class B-4 is Impaired, and Holders of Class B-4 M&I Adequate Protection Claims are entitled to vote to accept or reject the Plan.

5.     Class B-5 - Other Secured Claims

(a)     *Classification*:  Class B-5 consists of all Other Secured Claims that may exist against LIP Development, LLC.

(b)     *Treatment*:  Except to the extent a Holder of an Allowed Class B-5 Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class B-5 Other Secured Claim, each Allowed Class B-5 Other Secured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such Other Secured Claim becomes an Allowed Class B-5 Other Secured Claim or as soon as reasonably practicable thereafter.

(c)     *Voting*:  Class B-5 is Unimpaired, and Holders of Class B-5 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class B-5 Other Secured Claims are not entitled to vote to accept or reject the Plan.

6.     Class B-6 - LIP D Guaranty Claims

(a)     *Classification*:  Class B-6 consists of all LIP D Guaranty Claims that may exist against LIP Development, LLC.

(b)     *Treatment*:  Except to the extent a Holder of a Class B-6 LIP D Guaranty Claim agrees to different treatment, on the Effective Date:  (a) each Guaranty of LIP Development, LLC shall be assumed by and reinstated against LIP Development, LLC and Reorganized LIP Development, LLC, shall survive the Confirmation Order and shall not be amended, altered, released, discharged or otherwise modified by any term of the Plan; and (b) each Guaranty of LIP Development, LLC shall constitute the legal, valid and binding obligations of LIP Development, LLC and Reorganized LIP Development, LLC and shall be enforceable in accordance with its terms.  Notwithstanding any other provision of the Plan to the contrary and except to the extent a Holder of a Class B-6 LIP D Guaranty Claim agrees to different treatment, the Plan shall leave unaltered all of the legal, equitable and contractual rights of each Holder of a Class B-6 LIP D Guaranty Claim under its Guaranty of LIP Development, LLC.  Subject to the occurrence of the Effective Date, each Holder of a Class B-6 LIP D Guaranty Claim shall be deemed to hold an Allowed Claim that is not subject to estimation under the Bankruptcy Code or the Plan.

(c)     *Voting*:  Class B-6 is Unimpaired, and Holders of Class B-6 LIP D Guaranty Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class B-6 LIP D Guaranty Claims are not entitled to vote to accept or reject the Plan.

7.     Class B-7 - General Unsecured Claims

(a)     *Classification*:  Class B-7 consists of all General Unsecured Claims that may exist against LIP Development, LLC.

(b)     *Treatment*:  Except to the extent a Holder of an Allowed Class B-7 General Unsecured Claim agrees to a less favorable treatment ~~for~~**, each** such Holder, **in full and final satisfaction, settlement, release and discharge of and in exchange for** each Allowed Class B-7 General Unsecured Claim**,** shall receive its Pro Rata share of the LIP D Unsecured Claim Allocation in Cash on the later of the Effective Date or the date on which

15

such **General** Unsecured Claim becomes an Allowed Class B-7 Unsecured Claim or as soon as reasonably practicable thereafter.

    (c)    *Voting*:  Class B-7 is Impaired, and Holders of Class B-7 General Unsecured Claims are entitled to vote to accept or reject the Plan.

8.    Class B-8 - Equity Interests

    (a)    *Classification*:  Class B-8 consists of all Equity Interests in LIP Development, LLC.

    (b)    *Treatment*:  On the Effective Date, all Class B-8 Equity Interests shall be reinstated as provided in the treatment of Class A-1 Claims.

    (c)    *Voting*:  Class B-8 is Unimpaired, and Holders of Class B-8 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class B-8 Equity Interests are not entitled to vote to accept or reject the Plan.

**9.**    **Class B-9 - Convenience Class Claims**

    **(a)**    ***Classification*:  Class B-9 consists of all Convenience Class Claims against LIP Development, LLC.**

    **(b)**    ***Treatment*:  All Convenience Class Claims against LIP Development, LLC (that have not otherwise been objected to) shall be deemed Allowed in the amount asserted in the Holder's Proof of Claim, subject to a cap equal to $6,000, and each such Holder shall receive Cash in such amount on the Effective Date or as soon as reasonably practicable thereafter.**

    **(c)**    ***Voting*:  Class B-9 is Unimpaired, and Holders of Class B-9 Convenience Class Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class B-9 Convenience Class Claims are not entitled to vote to accept or reject the Plan.**

LIP Investment, LLC

**18.**    ~~17.~~ Class C-1 -  DIP Agreement Claims

    (a)    *Classification*:  Class C-1 consists of all DIP Agreement Claims that may exist against LIP Investment, LLC.

    (b)    *Treatment*:  Holders of Class C-1 DIP Agreement Claims will receive the treatment specified in Class A-1.

    (c)    Voting:  Class C-1 is Impaired, and Holders of Class C-1 DIP Agreement Claims are entitled to vote to accept or reject the Plan.

**19.**    ~~18.~~ Class C-2 - M&I LOC Claims

    (a)    *Classification*:  Class C-2 consists of all M&I LOC Claims that may exist against LIP Investment, LLC.

    (b)    *Treatment*:  Pursuant to the M&I Settlement Agreement, the Holders, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class

C-2 M&I LOC Claim, shall receive the M&I Settlement Collateral on the Effective Date or as soon as reasonably practicable thereafter.

(c)    *Voting*: Class C-2 is Impaired, and Holders of Class C-2 M&I LOC Claims are entitled to vote on the Plan.

**20.**    19. Class C-3 - M&I Adequate Protection Claims

(a)    *Classification*:  Class C-3 consists of all M&I Adequate Protection Claims that may exist against LIP Investment, LLC.

(b)    *Treatment*:  Pursuant to the M&I Settlement Agreement, the Holders, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class C-3 M&I Adequate Protection Claim, shall receive the M&I Settlement Collateral on the Effective Date or as soon as reasonably practicable thereafter.

(c)    *Voting*: Class C-3 is Impaired, and Holders of Class C-3 M&I Adequate Protection Claims are entitled to vote to accept or reject the Plan.

**21.**    20. Class C-4 - Secured Claims

(a)    *Classification*:  Class C-4 consists of all Secured Claims that may exist against LIP Investment, LLC.

(b)    *Treatment*:  Except to the extent a Holder of an Allowed Class C-4 Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class C-4 Secured Claim, each Allowed Class C-2 Secured Claim shall be paid in full in Cash or reinstated on the later of the Effective Date or the date on which such Secured Claim becomes an Allowed Class C-4 Secured Claim or as soon as reasonably practicable thereafter.

(c)    *Voting*:  Class C-4 is Unimpaired, and Holders of Class C-4 Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class C-2 Secured Claims are not entitled to vote to accept or reject the Plan.

**22.**    21. Class C-5 - LIP I Guaranty Claims

(a)    *Classification*:  Class C-5 consists of all LIP I Guaranty Claims that may exist against LIP Investment, LLC.

(b)    *Treatment*: Except to the extent a Holder of a Class C-5 LIP I Guaranty Claim agrees to different treatment, on the Effective Date:  (a) each Guaranty of LIP Investment, LLC shall be assumed by and reinstated against LIP Investment LLC and Reorganized LIP Investment, LLC, shall survive the Confirmation Order and shall not be amended, altered, released, discharged or otherwise modified by any term of the Plan; and (b) each Guaranty of LIP Investment, LLC shall constitute the legal, valid and binding obligations of LIP Investment, LLC and Reorganized LIP Investment, LLC and shall be enforceable in accordance with its terms.  Notwithstanding any other provision of the Plan to the contrary and except to the extent a Holder of a Class C-5 LIP I Guaranty Claim agrees to  different treatment, the Plan shall leave unaltered all of the legal, equitable and contractual rights of each Holder of a Class C-5 LIP I Guaranty Claim under its Guaranty of LIP Investment, LLC.  Subject to the occurrence of the Effective Date, each Holder of a Class C-5 LIP I Guaranty Claim shall be deemed to hold an Allowed Claim that is not subject to estimation under the Bankruptcy Code or the Plan.

(c)     *Voting*:  Class C-5 is Unimpaired, and Holders of Class C-5 LIP I Guaranty Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class C-5 LIP I Guaranty Claims are not entitled to vote to accept or reject the Plan.

**23.**   ~~22.~~ Class C-6 - General Unsecured Claims

(a)     *Classification:*  Class C-6 consists of all General Unsecured Claims that may exist against LIP Development, LLC.

(b)     *Treatment*:  Except to the extent a Holder of an Allowed Class C-6 General Unsecured Claim agrees to a less favorable treatment, each such Holder, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Class C-6 General Unsecured Claim, shall receive its Pro Rata share of the LIP I Unsecured Claim Allocation in Cash on the later of the Effective Date or the date on which such **General** Unsecured Claim becomes an Allowed Class C-6 **General** Unsecured Claim or as soon as reasonably practicable thereafter.

(c)     *Voting*:  Class C-6 is Impaired, and Holders of Class C-6 General Unsecured Claims are entitled to vote to accept or reject the Plan.

**24.**   ~~23.~~ Class C-7 - Equity Interests

(a)     *Classification*:  Class C-7 consists of all Equity Interests in LIP Investment, LLC.

(b)     *Treatment*:  On the Effective Date, all Class C-7 Equity Interests shall be reinstated as provided in the treatment of Class A-1 Claims.

(c)     *Voting:*  Class C-7 is Unimpaired, and Holders of Class C-7 Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class C-7 Equity Interests are not entitled to vote to accept or reject the Plan.

**25.**   **Class C-8 - Convenience Class Claims**

**(a)     *Classification*:  Class C-8 consists of all Convenience Class Claims against LIP Investment, LLC.**

**(b)     *Treatment*:  All Convenience Class Claims against LIP Investment, LLC (that have not otherwise been objected to) shall be deemed Allowed in the amount asserted in the Holder's Proof of Claim, subject to a cap equal to $6,000, and each such Holder shall receive Cash in such amount on the Effective Date or as soon as reasonably practicable thereafter.**

**(c)     *Voting*:  Class C-8 is Unimpaired, and Holders of Class C-8 Convenience Class Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class C-8 Convenience Class Claims are not entitled to vote to accept or reject the Plan**

C.      *Intercompany Claims*

Notwithstanding anything to the contrary herein, all Intercompany Claims on the Effective Date or as soon thereafter as is reasonably practicable, will be eliminated or waived based on accounting entries in the Debtors' or the Reorganized Debtors' books and records and other corporate activities by the Debtors or the Reorganized Debtors.  No distribution will be made to Holders of Intercompany Claims.

D.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

E.    *Discharge of Claims*

Pursuant to section 1141(c) of the Bankruptcy Code, all Claims and Equity Interests that are not expressly provided for and preserved in the Plan shall be extinguished upon the Effective Date.  Upon the Effective Date, the Debtors and all property dealt with in the Plan shall be free and clear of all such claims and interests, including, without limitation, Liens, security interests, and any and all other encumbrances; provided, however, that notwithstanding section 1141(c) or 1141(d) of the Bankruptcy Code, no provision of the Plan or any document executed pursuant to the Plan, shall either extinguish, alter, amend, modify, discharge or release any Claim, debt, obligation or duty of (i) any party as set forth in the Global Settlement Agreement, or any document executed pursuant thereto, (ii) any party as set forth in the Global Settlement Agreement, or any document executed pursuant thereto, (iii) any party to a Guaranty, and all rights, Claims and debts and obligations under the Global Settlement Agreement, the M&I Settlement Agreement, and under any Guaranty are expressly preserved and shall survive intact and without change notwithstanding the Confirmation Order; and that Wells Fargo, M&I Marshall & Ilsley Bank, and the Holders of Class A-2 LIP Guaranty Claims, Class B-6 LIP D Guaranty Claims, and Class C-5 LIP I Guaranty Claims shall not be required to file a Proof of Claim or motion in order for any such obligation to survive Confirmation of the Plan.  The Confirmation Order shall so expressly provide for the preservation of all such rights under the Global Settlement Agreement, the M&I Settlement Agreement, and under any Guaranty; and provided further, that notwithstanding the classification and treatment of the LIP I Guaranty Claims, the LIP D Guaranty Claims, and the LIP Guaranty Claims, none of the guaranty obligations issued under the Global Settlement Agreement, the M&I Settlement Agreement, or under any Guaranty shall be affected, altered, released, discharged, or otherwise modified by the Plan or any document executed pursuant thereto, and all such guaranty obligations shall survive the Confirmation Order.

F.    *Acceptance or Rejection of the Plan*

1.    Presumed Acceptance of the Plan

Class A-2, A-7, B-5, B-6, B-8, **B-9,** C-4, C-5, **C-7,** and C-7**8** are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

2.    Presumed Rejection of the Plan

Class A-8 is Impaired under the Plan and shall receive no distribution and is therefore presumed to rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

3.    Voting Class

Class A-1, A-3, A-4, A-5, A-6, B-1, B-2, B-3, B-4, B-7, C-1, C-2, C-3, and C-6 are Impaired under the Plan, and Holders of **Class** A-1, A-3, A-4, A-5, A-6, B-1, B-2, B-3, B-4, B-7, C-1, C-2, C-3, and C-6 Claims as of the Record Date are entitled to vote to accept or reject the Plan.

G.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

H.       *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.       *Sources of Consideration for Plan Distributions*

Cash distributions under the Plan shall be funded from operations.  In addition, the Debtors intend to draw down the full commitment under the DIP Credit Agreements prior to the Effective Date to fund cash distributions under the Plan to the extent funds from operations are insufficient.

B.       *Exit Term Loan*

Confirmation shall be deemed approval of the Exit Term Loan (including the transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Term Loan, and all actions to be taken, undertakings to be made, and obligations to be incurred by Reorganized LIP Investment, LLC in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) and authorization for Reorganized LIP Investment, LLC to enter into and execute the Exit Term Loan Documents and such other documents as may be required to effectuate the treatment afforded to the lenders under the Exit Term Loan pursuant to the Exit Term Loan Documents.  Reorganized LIP Investment, LLC may use the Exit Term Loan for any purpose permitted thereunder, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs.

Upon the Confirmation Date, (1) Reorganized LIP Investment, LLC is authorized to execute and deliver the Exit Term Loan Documents and perform its obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities, and (2) subject to the occurrence of the Effective Date, the Exit Term Loan Documents shall constitute the legal, valid, and binding obligations of Reorganized LIP Investment, LLC and be enforceable in accordance with their respective terms; provided, however, the terms of the Exit Term Loan shall be consistent with the terms of the Global Settlement Agreement **and in the event of any inconsistency, the Global Settlement Agreement shall control**.

C.       *M&I Settlement Agreement*

To the extent not previously approved by the Bankruptcy Court, Confirmation shall be deemed approval of the M&I Settlement Agreement (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Debtors or the Reorganized Debtors, as applicable, in connection therewith) and authorization for the Debtors or the Reorganized Debtors, as applicable, to enter into and execute the M&I Settlement Agreement and such other documents as may be required to effectuate such settlement.

**D.       *New LIP Class A Preferred Units***

**On the Effective Date, and pursuant to the terms set forth herein, Reorganized Lauth Investment Properties, LLC shall issue the New LIP Class A Preferred Units to Holders of Allowed Claims in Class A-5 and certain other unsecured creditors of Lauth Investment Properties, LLC.  The Reorganized Debtors shall not be obligated to list the New LIP Class A Preferred Units on a national securities exchange.**

**The New LIP Class A Preferred Units issued under the Plan are issued under section 1145 of the Bankruptcy Code.  All of the New LIP Class A Preferred Units issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable.  Each distribution and issuance referred to in Article V hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such**

**distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.**

     **In connection with the distribution of New LIP Class A Preferred Units, the Reorganized Debtors may take whatever actions are necessary to comply with applicable federal, state, local, and international tax withholding obligations, including withholding from distributions a portion of the New LIP Class A Preferred Units and selling such securities to satisfy tax withholding obligations including, without limitation, income, social security, and Medicare taxes.**

**E.**    ~~D.~~ *New **LIP I** Class A Preferred Units*

On the Effective Date, and pursuant to the terms set forth herein, Reorganized LIP Investment, LLC shall issue the New **LIP I** Class A Preferred Units to Holders of Allowed Claims in Class B-2. The New **LIP I** Class A Preferred Units shall represent all of the preferred equity interests in Reorganized LIP Investment, LLC as of the Effective Date. The Reorganized Debtors shall not be obligated to list the New **LIP I** Class A Preferred Units on a national securities exchange.

The New **LIP I** Class A Preferred Units issued under the Plan are issued under section 1145 of the Bankruptcy Code. All of the New **LIP I** Class A Preferred Units issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable. Each distribution and issuance referred to in Article V hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

In connection with the distribution of New **LIP I** Class A Preferred Units, the Reorganized Debtors may take whatever actions are necessary to comply with applicable federal, state, local, and international tax withholding obligations, including withholding from distributions a portion of the New **LIP I** Class A Preferred Units and selling such securities to satisfy tax withholding obligations including, without limitation, income, social security, and Medicare taxes.

**F.**    ~~E.~~ *Corporate Existence*

The Debtors shall continue to exist after the Effective Date as a separate corporate entity or limited liability company, with all the powers of a corporation or limited liability company pursuant to the applicable law in the jurisdiction in which the Debtors are incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents in the case of a limited liability company) in effect prior to the Effective Date. In addition, the Debtors shall remain member managed in the same form and manner in effect prior to the Effective Date.

**G.**    ~~F.~~ *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided herein or in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of each Estate (including, without limitation, Causes of Action) shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. Except as may be provided herein, on and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**H.**    ~~G.~~ *Cancellation of Securities and Agreements*

On the Effective Date, except as provided in Article III hereof with respect to the treatment of the Class A-2 LIP Guaranty Claims, the Class B-6 LIP D Guaranty Claims, and the Class C-5 LIP I Guaranty Claims, and except as otherwise specifically provided for herein: (1) the obligations of the Debtors under any Certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or

creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan), shall be cancelled as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; <u>provided, however</u>, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Equity Interest shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan.

**I.**      ~~H.~~ Restructuring Transactions

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, certificates of incorporation, operating agreements, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; and (3) all other actions that the Reorganized Debtors determine are necessary or appropriate; <u>provided, however</u>, that notwithstanding anything to the contrary herein, in the event of any inconsistency between the Plan and the Global Settlement Agreement, the terms of the Global Settlement Agreement shall prevail; <u>provided, further</u>, that notwithstanding anything to the contrary herein, in the event of any inconsistency between the Plan and the M&I Settlement Agreement, the terms of the M&I Settlement Agreement shall prevail<u>; **provided, further, that the operating agreements for the Reorganized Debtors shall prohibit the issuance of any non-voting common units**</u>.

**J.**      ~~I.~~ Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtors and the managers, officers, and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**K.**      ~~J.~~ Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, Lien, or other security interest; (2) any restructuring transaction authorized by Article IV.~~H~~I hereof; or (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

**L.**      ~~K.~~ Indemnification Provisions

Notwithstanding anything herein to the contrary the Reorganized Debtors (if necessary to continue all Indemnification Provisions in full force), as of the Effective Date, shall assume all Indemnification Provisions,

including, but not limited to, LIP Investment, LLC's obligation to indemnify any personal guarantors of the indebtedness of the Project Entities. All Indemnification Provisions in place on and prior to the Effective Date for current and former officers, directors, managers, and employees of the Debtors and their subsidiaries and such current and former officers', directors', managers', and employees' respective Affiliates shall survive the Effective Date for all Claims related to or in connection with, without limitation, any actions, omissions, or transactions occurring prior to the Effective Date; provided, however, that notwithstanding anything herein to the contrary, the Debtors shall not indemnify or assume any Indemnification Provision as to any of the Non-Released Parties for any matter; provided, further, that any Indemnification Provision shall be subject to and consistent with the Global Settlement Agreement and the M&I Settlement Agreement.

**M.**        ~~L.~~ *Guaranties*

Notwithstanding anything herein to the contrary, and unless the Holder of a LIP Guaranty Claim, LIP D Guaranty Claim or LIP I Guaranty Claim, respectively, agrees to different treatment, the Reorganized Debtors (if necessary to continue any Guaranty in full force), as of the Effective Date, shall assume all obligations and liabilities under any Guaranty. Any Guaranty in place on and prior to the Effective Date shall survive the Effective Date for all LIP Guaranty Claims, LIP D Guaranty Claims and LIP I Guaranty Claims, including without limitation, any such Claims arising or occurring prior to the Effective Date. Subject to the occurrence of the Effective Date, (a) the Reorganized Debtors are authorized to perform their obligations under any Guaranty including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities, and (a) each Guaranty shall constitute the legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with its respective terms.

**N.**        ~~M.~~ *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Debtor Release provided by Article VII.B hereof), the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtors or Reorganized Debtors have released any Person or Entity on or prior to the Effective Date (pursuant to the Debtor Release or otherwise), the Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Notwithstanding anything to the contrary herein, the Debtors waive and release all Avoidance Actions; provided, however, the Debtors shall have preserved no rights of action whatsoever against Wells Fargo except as otherwise set forth in the Global Settlement Agreement; provided, further, the Debtors shall have preserved no rights of action whatsoever against M&I Marshall & Ilsley Bank except as otherwise set forth in the M&I Settlement Agreement.

**ARTICLE V.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

*A.        Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the

full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VI hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Disbursing Agent*

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other Entity designated by the Reorganized Debtors as a Disbursing Agent on or as soon as practicable after the Effective Date.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.    *Distributions on Account of Claims Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Reorganized Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

E.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Delivery of Distributions in General

Except as otherwise provided herein, the Reorganized Debtors shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' books and records as of the date of

24

any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; and provided, further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

　　　2.　　Minimum Distributions

The Reorganized Debtors shall not be required to make partial distributions or payments of fractions of shares of New **LIP Class A Preferred Units or New LIP I** Class A Preferred Units and such fractions shall be deemed to be zero.

　　　3.　　Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Equity Interest in property shall be discharged and forever barred.

F.　　*Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G.　　*Setoffs*

The Debtors and the Reorganized Debtors may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim (other than DIP Agreement Claims, LIP Guaranty Claims, LIP D Guaranty Claims, LIP I Guaranty Claims, in the case of Wells Fargo as set forth in the Global Settlement Agreement, or in the case of M&I Marshall & Ilsley Bank as set forth in the M&I Settlement Agreement) an amount equal to any Claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. In the event that any such Claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights, and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

**ARTICLE VI.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Resolution of Disputed Claims*

      1.      <u>Allowance of Claims</u>

      After the Effective Date, the Reorganized Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.  All settled claims approved before the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties; <u>provided</u>, <u>however</u>, notwithstanding anything to the contrary set forth herein, the rights of Wells Fargo under the Global Settlement Agreement, M&I Marshall & Ilsley Bank under the M&I Settlement Agreement, and the rights of Holders of LIP Guaranty Claims, LIP D Guaranty Claims, and LIP I Guaranty Claims under any Guaranty shall be expressly preserved and shall survive any order of confirmation without offset, recoupment, defense, counterclaim, reduction, disallowance, and avoidance under any section of the Bankruptcy Code including, but not limited to, sections 544, 547, and 548 of the Bankruptcy Code.

      2.      <u>Prosecution of Objections to Claims</u>

      After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date until the Claims Objection Bar Date, the Reorganized Debtors, shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw, or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; <u>provided</u>, <u>however</u>, this provision shall not apply to (i) Fee Claims, (ii) any right, Claim, or duty owing to Wells Fargo under the Global Settlement Agreement, (iii) any right, Claim, or duty owing to M&I Marshall & Ilsley Bank under the M&I Settlement Agreement, nor to (iv) any right, Claim, or duty owing to the Holders of LIP Guaranty Claims, LIP D Guaranty Claims, and LIP I Guaranty Claims under any Guaranty.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court.  The Reorganized Debtors shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

      3.      <u>Claims Estimation</u>

      Before the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4.        Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtors, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtors, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

5.        Deadline to File Objections to Claims

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

B.        Disallowance of Claims

All Claims of any Entity from which property is sought by the Debtors or the Reorganized Debtors under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (i) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (ii) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED FOR PURPOSES OF DISTRIBUTION OR ANY OTHER TREATMENT UNDER THE PLAN AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS, ON OR BEFORE THE DATE OF THE CONFIRMATION HEARING, SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER.**

C.        Amendments to Claims

On or after the Effective Date, except as otherwise provided herein, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE VII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.        Compromise and Settlement

Notwithstanding anything contained herein to the contrary, the allowance, classification, and treatment of all Allowed Claims and their respective distributions and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code, or otherwise.  As of the Effective Date, any and all contractual, legal, and equitable subordination rights, whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code, or otherwise, relating to the allowance, classification, and treatment of all Allowed Claims and their respective distributions and treatments hereunder are settled, compromised, terminated, and released pursuant hereto.

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all Holders of Claims, (2) fair, equitable, and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to section

363 of the Bankruptcy Code and Bankruptcy Rule 9019. **In addition, the allowance, classification, and treatment of Allowed Claims take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable nonbankruptcy law, that may exist: (1) between the Debtors, on the one hand, and the Debtor Releasees, on the other hand; and (2) between the Releasing Parties, on the one hand, and the Debtor Releasees, on the other hand; and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released pursuant hereto.** The Confirmation Order shall approve the releases by all Entities of all such contractual, legal, and equitable subordination rights or Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in this Article VIII.A shall compromise or settle in any way, any Causes of Action that the Debtors or the Reorganized Debtors may have against the Non-Released Parties or provide for the indemnity of the Non-Released Parties; provided, however, that notwithstanding such compromise and settlement, or release, as provided above, or in any other provision of the Plan, no provision of the Plan or any document executed pursuant to the Plan, shall either extinguish, alter, amend, impair, discharge, or release any Claim, debt, obligation, or duty of any Entity as set forth in the Global Settlement Agreement or the M&I Settlement Agreement, in any Guaranty, or any document whereby any Entity has guaranteed the obligations of any Affiliates or subsidiaries of the Debtors or the Reorganized Debtors under a loan or credit agreement, or any documents executed pursuant thereto and the Confirmation Order shall so expressly provide..

In accordance with the provisions of this Plan, including Article VI hereof, and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtors may, in their respective sole and absolute discretion, compromise and settle Causes of Action against other Entities.

B.    *Debtor Release*

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE (SUCH THAT THE REORGANIZED DEBTORS WILL NOT RECEIVE ANY CLAIM OR CAUSE OF ACTION RELEASED HEREUNDER), FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE DEBTOR RELEASEES, INCLUDING: (1) THE DISCHARGE OF DEBT AND ALL OTHER GOOD AND VALUABLE CONSIDERATION PAID PURSUANT HERETO; AND (2) THE SERVICES OF THE DEBTORS' PRESENT AND FORMER OFFICERS, DIRECTORS, MANAGERS, ATTORNEYS, FINANCIAL ADVISORS, AND PROFESSIONALS IN FACILITATING THE EXPEDITIOUS IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED HEREBY, THE DEBTORS DISCHARGE AND RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH DEBTOR RELEASEE (AND EACH SUCH DEBTOR RELEASEE SO RELEASED SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY THE DEBTORS) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING THOSE THAT THE DEBTORS OR THE REORGANIZED DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT OR THAT ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF THE DEBTORS OR THEIR ESTATES, INCLUDING THE AVOIDANCE ACTIONS; PROVIDED, HOWEVER, THAT THE FOREGOING "DEBTOR RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CAUSES OF ACTION OF ANY DEBTOR: (1) AGAINST A DEBTOR RELEASEE ARISING FROM ANY CONTRACTUAL OBLIGATIONS OWED TO THE DEBTORS; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE PLAN DOES NOT RELEASE ANY CAUSES OF ACTION THAT THE DEBTORS OR THE REORGANIZED DEBTORS HAVE OR MAY HAVE NOW OR IN THE FUTURE AGAINST THE NON-RELEASED PARTIES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN,

AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE DEBTORS OR THE REORGANIZED DEBTORS ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE; PROVIDED, HOWEVER, THAT NOTWITHSTANDING THIS PROVISION NOR ANY OTHER RELEASE, NO PROVISION OF THE PLAN OR ANY DOCUMENT EXECUTED PURSUANT TO THE PLAN, SHALL EITHER EXTINGUISH, ALTER, AMEND, MODIFY, DISCHARGE, OR RELEASE ANY CLAIM, DEBT, OBLIGATION, OR DUTY OF ANY PARTY AS SET FORTH IN THE GLOBAL SETTLEMENT AGREEMENT OR THE M&I SETTLEMENT AGREEMENT, ANY GUARANTY, OR ANY DOCUMENT EXECUTED PURSUANT THERETO, AND THE CONFIRMATION ORDER SHALL SO EXPRESSLY PROVIDE.  NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE PLAN DOES NOT (1) RELEASE OR DISCHARGE ANY CLAIMS, CAUSES OF ACTION OR LIABILITIES THAT ANY ENTITY HAS OR MAY HAVE NOW OR IN THE FUTURE AGAINST THE DEBTORS AND THE REORGANIZED DEBTORS ARISING UNDER ANY GUARANTY; (2) RELEASE OR DISCHARGE ANY CLAIMS, CAUSES OF ACTION, LIABILITIES, OR LIENS THAT ANY ENTITY HAS OR MAY HAVE NOW OR IN THE FUTURE AGAINST ANY AFFILIATES OR SUBSIDIARIES OF THE DEBTORS AND THE REORGANIZED DEBTORS UNDER ANY LOAN OR CREDIT AGREEMENT; OR (3) RELEASE OR DISCHARGE ANY CLAIMS, CAUSES OF ACTION, LIABILITIES, OR LIENS THAT ANY ENTITY HAS OR MAY HAVE IN THE FUTURE AGAINST ANY ENTITY THAT HAS GUARANTEED THE OBLIGATIONS OF ANY AFFILIATES OR SUBSIDIARIES OF THE DEBTORS AND THE REORGANIZED DEBTORS ARISING UNDER ANY LOAN OR CREDIT AGREEMENT.

**C.      Exculpation**

**The Exculpated Parties shall neither have, nor incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Consummation of the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, including, but not limited to, the Chapter 11 Cases; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; provided, further, that the forgoing "Exculpation" shall have no effect on the liability of (1) any Entity arising under any Guaranty; (2) any affiliate or subsidiary of the Debtors or the Reorganized Debtors arising under any loan or credit agreement; or (3) any Entity arising under any guaranty of obligations of any Affiliates or subsidiaries of the Debtors or the Reorganized Debtors arising under any loan or credit agreement; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; provided, however, that notwithstanding this provision nor any other exculpation or release, no provision of the Plan or any document executed pursuant to the Plan, shall either extinguish, alter, amend, impair, discharge, or release any Claim, debt, obligation, or duty of any party as set forth in the Global Settlement Agreement the M&I Settlement Agreement, any Guaranty, or any document executed pursuant thereto and the Confirmation Order shall so expressly provide.**

**D.      Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES THAT: (1) HAVE BEEN DISCHARGED PURSUANT TO ARTICLE III.E HEREOF; (2) HAVE BEEN RELEASED PURSUANT TO ARTICLE VII.B HEREOF; (3) HAVE BEEN RELEASED PURSUANT TO ARTICLE VII.D HEREOF; OR (4) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VII.C HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN ARTICLE VII.C), ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (1) COMMENCING OR CONTINUING IN

ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (3) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR EQUITY INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED OR SETTLED PURSUANT TO THE PLAN.  NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE PLAN DOES NOT (1) RELEASE OR DISCHARGE ANY CLAIMS, CAUSES OF ACTION OR LIABILITIES THAT ANY ENTITY HAS OR MAY HAVE NOW OR IN THE FUTURE AGAINST THE DEBTORS AND THE REORGANIZED DEBTORS ARISING UNDER ANY GUARANTY; (2) RELEASE OR DISCHARGE ANY CLAIMS, CAUSES OF ACTION, LIABILITIES OR LIENS THAT ANY ENTITY HAS OR MAY HAVE NOW OR IN THE FUTURE AGAINST ANY AFFILIATES OR SUBSIDIARIES OF THE DEBTORS AND THE REORGANIZED DEBTORS ARISING UNDER ANY LOAN OR CREDIT AGREEMENT; OR (3) RELEASE OR DISCHARGE ANY CLAIMS, CAUSES OF ACTION, LIABILITIES, OR LIENS THAT ANY ENTITY HAS OR MAY HAVE IN THE FUTURE AGAINST ANY PARTY THAT HAS GUARANTEED THE OBLIGATIONS OF ANY AFFILIATES OR SUBSIDIARIES OF THE DEBTORS AND THE REORGANIZED DEBTORS ARISING UNDER ANY LOAN OR CREDIT AGREEMENT.

*E.*      *Setoffs*

Except as otherwise provided herein, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may set off against any Allowed Claim (other than DIP Agreement Claims, other than against any right, claim, or obligation due to Wells Fargo under the Global Settlement Agreement, other than against any right, claim, or obligation due to M&I Marshall & Ilsley Bank under the M&I Settlement Agreement, and other than against any right, claim, or obligation due to Holders of Class A-2 LIP Guaranty Claims, Class B-6 LIP D Guaranty Claims, and Class C-5 LIP I Guaranty Claims under any Guaranty) or Equity Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any distribution is made on account of such Allowed Claim or Equity Interest), any Claims, rights, and Causes of Action of any nature that such Debtors or Reorganized Debtors, as applicable, may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a

waiver or release by such Reorganized Debtors of any such Claims, rights, and Causes of Action that such Reorganized Debtors may possess against such Holder.  Except as provided under orders approving the DIP Credit Agreements, in no event shall any Holder of Claims or Equity Interests be entitled to setoff any Claim or Equity Interest against any Claim, right, or Cause of Action of the Debtors or Reorganized Debtors, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise; provided, however, that (i) any right of set off in favor of Wells Fargo, pertaining to any obligation, right, duty, or lien created or arising under or in connection with the Global Settlement Agreement or any document executed pursuant thereto shall be expressly preserved, (ii) any right of set off in favor of M&I Marshall & Ilsley Bank, pertaining to any obligation, right, duty, or lien created or arising under or in connection with the M&I Settlement Agreement or any document executed pursuant thereto shall be expressly preserved, and (ii) any right of set off in favor of Holders of Class A-2 LIP Guaranty Claims, Class B-6 LIP D Guaranty Claims, and Class C-5 LIP I Guaranty Claims, pertaining to any obligation, right, duty, or lien created or arising under or in connection with any Guaranty or any document executed pursuant thereto shall be expressly preserved.

F.    *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns; provided, however, that no such release of liens shall pertain to any obligation, right, duty, or lien created or arising under or in connection with the Global Settlement Agreement or the M&I Settlement Agreement or any document executed pursuant thereto

## ARTICLE VIII.
## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

A.    *Professional Fee Escrow Account*

On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount for all Professionals.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals with respect to unpaid fees or expenses or for whom fees or expenses have been held back pursuant to the Interim Compensation Order.  Such funds shall not property or be deemed property of the Reorganized Debtors.  The Reorganized Debtors shall cause Accrued Professional Compensation to be paid in Cash to such Professionals from the Professional Fee Escrow Account when such Claims are Allowed by a Bankruptcy Court order; provided that the Debtors' or the Reorganized Debtors' liability for Accrued Professional Compensation shall not be limited nor be deemed to be limited to the funds available from the Professional Fee Escrow Account.  When all Allowed Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

B.    *Professional Fee Reserve Amount*

On or before the Effective Date, the Professionals shall estimate their Accrued Professional Compensation prior to and as of the Confirmation Date and shall deliver such estimate to the Debtors.  If a Professional does not provide an estimate, the Reorganized Debtors may estimate the unpaid fees and expenses of such Professional.  The total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount; provided, however, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional.

C.      *Post-Confirmation Date Fees and Expenses*

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash (a) the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtors and (b) the reasonable legal, professional, or other fees and expenses related to the Project Entities, including, but not limited to, any Project Entities that have filed or may file petitions for relief under Chapter 11 of the Bankruptcy Code.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action, order, or approval of the Bankruptcy Court.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved or waived pursuant to the provisions of Article IX.C.

B.      *Conditions Precedent to Consummation*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

**110.**      ~~108.~~ The Confirmation Order shall be a Final Order in form and substance acceptable to the Debtors.

**111.**      ~~109.~~ The Plan and Plan Supplement, including any amendments, modifications, or supplements thereto shall be acceptable to the Debtors.

**112.**      ~~110.~~ All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

C.      *Waiver of Conditions*

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived only by consent of the Debtors.

D.      *Effective Date*

The Effective Date shall be the first Business Day upon which all of the conditions specified in Article IX.B hereof have been satisfied or waived.

E.      *Effect of Non-Occurrence of Conditions to Consummation*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

A.      *Modification and Amendments*

Except as otherwise specifically provided herein, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserves their rights to alter, amend, or modify materially the Plan with respect to such Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests) and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of such Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtors or any other Entity.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan including jurisdiction to:

**113.**      ~~111.~~ allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

**114.**      ~~112.~~ decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

**115.**      ~~113.~~ ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

**116.**      ~~114.~~ adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

**117.** ~~115.~~ adjudicate, decide, or resolve any and all matters related to Causes of Action;

**118.** ~~116.~~ adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

**119.** ~~117.~~ enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

**120.** ~~118.~~ enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

**121.** ~~119.~~ resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

**122.** ~~120.~~ issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

**123.** ~~121.~~ resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the discharge, releases, injunctions, exculpations, and other provisions contained in Article VII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

**124.** ~~122.~~ resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid pursuant to Article III;

**125.** ~~123.~~ enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**126.** ~~124.~~ determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

**127.** ~~125.~~ adjudicate any and all disputes arising from or relating to distributions under the Plan;

**128.** ~~126.~~ consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

**129.** ~~127.~~ determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

**130.** ~~128.~~ hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

**131.** ~~129.~~ hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

**132.** ~~130.~~ hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

**133.** ~~131.~~ enforce all orders previously entered by the Bankruptcy Court;

34

**134.** ~~132.~~ hear any other matter not inconsistent with the Bankruptcy Code; and

**135.** ~~133.~~ enter an order concluding or closing the Chapter 11 Cases.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect*

Subject to Article IX.B and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, and each Entity acquiring property under the Plan.

B. *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D. *Dissolution of Committees*

On the Effective Date, the Committees, if any, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

E. *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

F. *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G. *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

Lauth Investment Properties, LLC                                    Kirkland & Ellis LLP

35

<table>
<tr><td>Attn:  Vernon C. Back</td><td>Attn:  Ross Kwasteniet and Arun Kurichety</td></tr>
<tr><td>11595 North Meridian Street, Suite 250</td><td>300 North LaSalle Drive</td></tr>
<tr><td>Carmel, Indiana  46032</td><td>Chicago, Illinois  60654-3406</td></tr>
</table>

After the Effective Date, the Debtors may, in their sole discretion, notify Entities that, in order to continue to receiving documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

## H.    Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## I.    Entire Agreement

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## J.    Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

Dated:  ~~April 28,~~**May 18,** 2011

Respectfully submitted,

LAUTH INVESTMENT PROPERTIES, LLC, et al.

/s/ Robert L. Lauth, Jr.

Name:    Robert L. Lauth, Jr.
Its:        Chairman & Chief Executive Officer

Prepared By:

James A. Stempel (admitted *pro hac vice*)          Jerald I. Ancel
Ross M. Kwasteniet (admitted *pro hac vice*)          Jeffrey J. Graham
Arun K. Kurichety (admitted *pro hac vice*)          TAFT STETTINIUS & HOLLISTER LLP
KIRKLAND & ELLIS LLP                                        One Indiana Square, Suite 3500
300 North LaSalle Drive                                        Indianapolis, Indiana  46204
Chicago, Illinois  60654-3406                                Telephone:        (317) 713-3500
Telephone:   (312) 862-2000                                Facsimile:        (317) 713-3699
Facsimile:   (312) 862-2200

Co-Counsel to the Debtors